James I. Stang (CA State Bar #94435
Kenneth H. Brown (CA State Bar #100396)
Ilan D. Scharf (NY State Bar #4042107)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Phone: (310) 277-6910
Fax: (310) 201-0760
Email: jstang@pszjlaw.com
       kbrown@pszjlaw.com
       ischarf@pszjlaw.com

Attorneys to Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporation Sole (Diocese of Great Falls - Billings), | ) ) ) Bankruptcy Case No. 17-60271-JDP ) ) |
| Debtor in Possession. | ) ) ) ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR EXCLUSIVE AND IRREVOCABLE AUTHORITY TO COMMENCE, PROSECUTE, AND SETTLE LITIGATION ON BEHALF OF BANKRUPTCY ESTATE AGAINST DIOCESE AFFILIATED ENTITIES

MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES
DOCS_SF:95283.4 18488/002

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

III.    JURISDICTION .................................................................................................... 5

IV.     RELIEF REQUESTED.......................................................................................... 5

V.      THE ESTATE'S AVOIDANCE ACTIONS ......................................................... 5

VI.     BASIS FOR RELIEF ............................................................................................ 6

      A.      Demand on the DGFM........................................................................... 9

      B.      The Avoidance Actions Are Colorable.................................................. 9

            1.      Fraudulent Conveyances: Intentional Fraud. .......................... 11

            2.      Fraudulent Conveyances: Constructive Fraud. ....................... 12

            3.      The Unrecorded Beneficial Interests of the Parishes Are
                 Avoidable by Virtue of the Estate's Rights as a BFP. ............. 13

            4.      A BFP Would Have Had No Record or Constructive Notice of
                 Parishes' or Parishioners' Purported Equitable Interests; Thus, Any
                 Such Interests Are Avoidable Under Section 544(a)(3). ......... 15

            5.      Prosecution of the Avoidance Actions Will Benefit the Estate
                 and the Debtor's Refusal to Prosecute the Claims Is Unjustified............ 20

VII.    CONCLUSION..................................................................................................... 21

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

DOCS_SF:95283.4 18488/002                                    i

## TABLE OF AUTHORITIES

**Cases**

*Adelphia Comm. Corp. v. Bank of America (In re Adelphia Comm. Corp.)*,
  330 B.R. 364 (Bankr. S.D.N.Y. 2005) ............................................................ 7, 14, 29

*Adler v. Manor Healthcare Corp.*,
  7 Cal. App. 4th 1110 (1992) ...................................................................................... 21

*Avalanche Maritime Ltd. v. Parekh (In re Parmetex, Inc)*,
  199 F.3d 1029 (9th Cir. 1999) ................................................................................. 7, 8

*Belisle v. Plunkett*,
  877 F.2d 512 (7th Cir. 1989) ...................................................................................... 27

*Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group)*,
  66 F.3d 1436 (6th Cir. 1995) ........................................................................................ 6

*Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.*,
  66 F.3d 1436 (6th Cir. 1995) ...................................................................................... 11

*Chbat v. Tleel (In re Tleel)*,
  876 F.2d 769 (9th Cir. 1989) ...................................................................................... 20

*Committee of Tort Litigants v. Catholic Diocese (In re Catholic Bishop of Spokane)*,
  329 B.R. 304 (Bankr. E.D. Wa. 2006) ...................................................................... 18

*Committee of Tort Litigants v. Catholic Diocese of Spokane*,
  2006 U.S. Dist. LEXIS 6025 at *5 (E.D. Wash. Jan. 24, 2006) ................................ 1

*Committee of Tort Litigants v. Catholic Diocese of Spokane*,
  364 B.R. 81 (E.D. Wash. 2006) ................................................................................. 19

*Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*,
  262 F.3d 96 (2d Cir. 2001) .......................................................................................... 10

*Dilts v. Brooks*,
  66 Mont. 346 P. 600 (1923) ........................................................................................ 16

*Elstner-Bailey v. Fannie Mae (In re Elstner-Bailey)*,
  2011 Bankr. LEXIS 4802, at **9-10 (BAP 9th Cir. Oct. 4, 2011) ........................... 13

*Estate of Spirtos v. Superior Court Case*,
  443 F.3d 1172, 1175 (9th Cir. 2006) ........................................................................... 8

*Fair v. Stevenot*,
  29 Cal. 486 (1866) ...................................................................................................... 24

*Fjeldsted v. Lien (In re Fjeldsted)*,
  293 B.R. 12 (BAP 9th Cir. 2003) ............................................................................... 20

*Fogel v. Zell*,
  221 F.3d 955 (7th Cir. 2000) ...................................................................................... 11

*G-I Holdings v. Those Parties (In re G-I Holdings)*,
  313 B.R. 612 (Bankr. D.N.J. 2004) ........................................................................... 14

*Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*,
  555 F.3d 231 (6th Cir. 2009) ...................................................................................... 10

*In re Curry & Sorenson, Inc.*,
  57 B.R. 824 (BAP 9th Cir. 1986) ................................................................................. 9

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

ii

DOCS_SF:95283.4 18488/002

*In re Estate of Bolinger*,
  284 Mont. 114 P.2d 981 (1997) ........................................................ 16
*In re LTV Steel Co.*,
  333 B.R. 397 (Bankr. N.D. Ohio 2005) ........................................... 13
*In re STN Enterprises*,
  779 F.2d 901 (2d Cir. 1985) ....................................................... 11, 14
*In re Torrez*,
  63 B.R. 751 (BAP 9th Cir. 1986), *aff'd*, 827 F.2d 1299 (9th Cir. 1987) ................................. 19
*In re Valley Park*,
  217 B.R. 864 (Bankr. D. Mont. 1998) ............................................ 12
*In re Yellowstone Mountain Club, LLC*,
  2009 Bankr. LEXIS 4443 *16 (Bankr. D. Mont. Jan. 16, 2009) ............................................ 12
*In re Yellowstone Mountain Club, LLC*,
  2009 Bankr. LEXIS 4443, at *16 (Bankr. D. Mont. Jan. 16, 2009) ......................................... 29
*Liberty Mut. Ins. Co. v. Official Creditors' Comm. (In re Spaulding Composites Co.)*,
  207 B.R. 899 (BAP 9th Cir. 1997) .................................................. 9
*Louisisana. World Exp. v. Federal Ins. Co.*,
  858 F.2d 233 (5th Cir. 1988) ....................................................... 11
*McClure v. McClure (In re Estate of McClure)*,
  385 Mont. 130, 139, 381 P.3d 566 (2016) ...................................... 28
*Moultrie v. Wright*, 154 Cal. 520, 98 P. 257 (1908) ............................ 21
*Official Comm. v. Chinery (In re Cybergenics Corp.)*,
  330 F.3d 548 (3d Cir. 2003) ........................................................ 11
*Official Comm. v. Hudson United Bank (In re America's Hobby Ctr.)*,
  223 B.R. 275 (Bankr. S.D.N.Y. 1998) ............................................ 14
*PW Enters. v. N.D. Racing Comm'n (In re Racing Servs.)*,
  540 F.3d 892 (8th Cir. 2008) ....................................................... 10
*Rase v. Castle Mountain Ranch*,
  193 Mont. 209, 631 P.2d 680 (1981) ............................................. 23
*Riley v. Martinelli*,
  97 Cal. 580, 32 Pac. 579 (1893) ................................................... 22
*Sheldon v. Powell*,
  31 Mont. 249 (1904) ................................................................ 24
*Taxel v. Chase Manhattan Bank (In re Deuel)*,
  361 B.R. 509 (BAP 9th Cir. 2006) ................................................. 27
*Tort Claimants' Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbdshop of
  Portland in Oregon)*,
  335 B.R. 868 (Bankr. D. Or. 2005) ................................................ 26
*Tort Claimants' Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of
  Portland in Oregon)*,
  335 B.R. 868 (Bankr. D. Or. 2005) ............................................ passim
*Zier v. Osten*,
  135 Mont. 484 P.2d 1076 (1959) .................................................. 21

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

DOCS_SF:95283.4 18488/002                        iii

**Statutes**

28 U.S.C. § 105 ................................................................................................. 5
28 U.S.C. § 1334 ............................................................................................... 5
28 U.S.C. § 1408 ............................................................................................... 5
28 U.S.C. § 1409 ............................................................................................... 5
28 U.S.C. § 157 ................................................................................................. 5
28 U.S.C. § 363 ................................................................................................. 5
28 U.S.C. § 544 ........................................................................................... passim
28 U.S.C. § 548 ..................................................................................... 15, 16, 17
28 U.S.C. §§ 157 ............................................................................................... 5
Mont. Code § 35-3-205(5) .............................................................................. 27
Mont. Code § 72-38-402 ........................................................................... 16, 28
Mont. Code §§ 31-2-326 to 31-2-342 ....................................................... 15, 17
Mont. Code §70-21-304 ............................................................................. 15, 22

**Other Authorities**

1 *Patton & Palomar on Land Titles* § 12 (3d ed. 2002) ................................. 25
3 *Patton & Palomar on Land Titles* § 674 .................................................... 26
*Bogert's Trusts and Trustees* § 466 ............................................................. 21
*Occupancy of Premises by Both Record Owner and Another as Notice of Title or Interest of Latter*, 2 A.L.R. 2d 857, § 2 (1948) ........................................................... 25

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

The Official Committee of Unsecured Creditors ("**Committee**") for the Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporation Sole ("**DGFM**" or "**Debtor**"), moves ("**Motion**") for the exclusive and irrevocable authority to commence, prosecute, and settle adversary proceedings under Bankruptcy Code sections 544, 547, 548, 549 and 550 ("**Avoidance Actions**") against the parishes ("**Parishes**") and other entities and affiliates of the DGFM ("**Diocese Affiliated Entities**").[1]

# I.

# INTRODUCTION

Determining what property is properly part of the estate is the lynchpin issue in the Debtor's reorganization.  In a blatant derogation of its fiduciary duties, the Debtor has disclaimed any beneficial interest in tens of millions of dollars' worth of real and personal property and liquid investments (which it both controls and holds legal title to) in favor the Parishes and Diocese Affiliated Entities.  Similarly, the Debtor has refused to prosecute claims to avoid transfers of over $16 million made without consideration and just prior to filing bankruptcy as part of an asset protection scheme to put its liquid assets outside the reach of its creditors.  The Debtor is intertwined with the interests of the Parishes and Diocese Affiliated Entities that will

---

[1]  The Committee's proposed adversary proceeding includes claims for relief seeking a declaratory judgment that certain assets are property of the estate.  While Court approval of derivative standing is required to pursue an action pursuant to Bankruptcy Code sections 544, 547 and 548, permission is not required to determine property of the estate under section 541.  *See, e.g., Committee of Tort Litigants v. Catholic Diocese of Spokane*, 2006 U.S. Dist. LEXIS 6025 at *5 (E.D. Wash. Jan. 24, 2006), (stating that committee did not have to receive "specific permission . . . to bring an adversary action to determine the assets of the estate"), *rev'd in part on other grounds*, 364 B.R. 81 (E.D. Wash. 2006).

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

be the defendants in litigation and is unable and unwilling to faithfully exercise its fiduciary duty to creditors in assessing and prosecuting that litigation.[2]  The Debtor's profound conflict of interest precludes it from acting as an "honest broker" with respect to the property claims and Avoidance Actions.  The Committee is the only party that can legitimately represent the creditors' interests on this issue.  Therefore, the Committee seeks the right to exclusively and irrevocably commence, prosecute, and settle (subject to Court approval) litigation to enforce all the estate's rights under Bankruptcy Code sections 544, 547, 548, 549 and 550 ("***Claims for Relief***").

## II.

## BACKGROUND[3]

On March 31, 2017 ("***Petition Date***"), the Debtor filed a petition for relief under chapter 11 of Title 11 of the United States Code.  The Debtor continues in possession of its assets pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Office of the United States Trustee appointed the Committee on May 1, 2017.

Until late 2016, DGFM owned legal title to, and operated and maintained the Diocese of Great Falls-Billings Deposit and Loan Fund ("***DLF***").  DGFM, its Parishes, and Diocese Affiliated Entities used the DLF as a pooled investment vehicle.

---

[2]  For example, Richard Moog, the Diocese's finance officer, is the executive director of The Diocese of Great Falls-Billings Juridic Persons Community Asset Support Corporation, the transferee of more than $15 million in cash and investments in a fraudulent transfer.

[3] The relevant facts supporting the Motion are set forth in detail in the draft complaint attached hereto as **Exhibit A** and are incorporated herein by reference.

**MOPA ISO MOTION RE FOR EXCLUSIVE AND IRREVOCABLE AUTHORITY TO COMMENCE, PROSECUTE, AND SETTLE LITIGATION ON BEHALF OF BANKRUPTCY ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

The DLF consisted of both operating accounts containing cash and investment accounts containing stocks, bonds, and other financial assets. In late 2016 and early 2017 and just prior to filing its bankruptcy petition, DGFM transferred the assets of the DLF worth in excess of $16,000,000 to a separate corporation called the Diocese of Great Falls Billings Juridic Persons Capital Assets Support Corporation ("*CASC*") without consideration[4] as part of an asset protection scheme to shield these assets from the claims of its creditors, including the survivors of sex abuse. The CASC is controlled by DGFM. For example, Richard P. Moog is the executive director of the CASC and the finance officer for DGFM. Declaration of Richard P. Moog of October 2, 2017, attached as Exhibit A to the Declaration of Kenneth H. Brown.

The Debtor holds legal title to real property with a tax assessed value of approximately $71,000,000, which it alleges it holds "for the benefit of its Parishes and other institutions of the Diocese"[5]. This real property is referred to in this Motion as the "***Disputed Real Property.***" The Committee believes that the purported beneficial interests of the Parishes and other institutions of DGFM have not been recorded in the real estate records maintained in any county of the state of Montana.

The Roman Catholic Bishop of Great Falls ("***Bishop***") is incorporated under Montana law as a corporation sole. The Bishop holds legal title to all real and personal property of DGFM, including the property of the Parishes. DGFM acknowledges that its Parishes do not

---

[4] Statement of Financial Affairs, Part 2, 4.1 and Exhibit 13 thereto [Dkt. No. 1].

[5] Schedule A/B, Part 9, 55.1 and Exhibit 7 thereto [Dkt. No. 1].

**MOPA ISO MOTION RE FOR EXCLUSIVE**
**AND IRREVOCABLE AUTHORITY TO**
**COMMENCE, PROSECUTE, AND SETTLE**
**LITIGATION ON BEHALF OF BANKRUPTCY**
**ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

hold title to real property in its "Policies Relation to Temporal Matters-Diocese of Great Falls-Billings" ("**Policies**") at 1.  True copies of relevant Portions of DGFM's Policies are attached to the Brown Declaration as Exhibit B.  The Parishes may not enter into contracts, leases, or other legal instruments because they are not separate legal entities or persons and have no separate legal existence from DGFM.  (Policies at 31).  Rather, DGFM characterizes its Parishes as mere "operating divisions."  Central Administrative Office of the Roman Catholic Bishop of Great Falls of Montana, a Corporation Sole, Financial Statements as of June 30, 2016, and 2015, n.1.  A true copy of relevant portions of the financial statements are attached to the Brown Declaration as Exhibit C.

     The Committee and the Debtor engaged in mediation to resolve the Avoidance Actions and the property claims, but those efforts failed (including a mediation that preceded the filing of the case but that involved all plaintiffs' attorneys representing substantially all abuse survivors).  On September 22, 2017, the Committee demanded in writing that the Debtor commence certain litigation against the Diocese Affiliated Entities.  A true copy of the demand letter is attached as Exhibit D to the Declaration of Kenneth H. Brown filed herewith.  After a one-week extension of the demand's deadline, the Debtor did not timely respond; thus, the Committee deemed that nonresponse a rejection of the demand.  The Debtor subsequently proposed onerous conditions to its consent for standing that the Committee could not accept.  The Debtor unreasonably rejected the Committee's demand to prosecute the Avoidance Actions by attaching unreasonable

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**
DOCS_SF:95283.4 18488/002                                                 4

conditions to its consent.  A true copy of the Debtor's response to the demand is attached to the

Brown Declaration as Exhibit E.

### III.

### JURISDICTION

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The

Motion is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2) over which the Court has

authority to enter a final order.  The statutory predicates for the relief requested in this Motion

include Bankruptcy Code sections 105 and 363.  Venue in this Court is proper under 28 U.S.C.

§§ 1408 and 1409.

### IV.

### RELIEF REQUESTED

Pursuant to sections 105, 363, 1103 and 1109 of the Bankruptcy Code, the Committee

requests standing to commence prosecution of the estate's Claims for Relief  as set forth in the

draft complaint attached hereto as **Exhibit A** and as may be subsequently amended.

### V.

### THE ESTATE'S AVOIDANCE ACTIONS

The Debtor's estate has two major categories of Avoidance Actions.  First, the estate may

avoid the purported unrecorded beneficial interests in real property that it contends are held by

its "Parishes and other institutions of the Diocese."  Second, the estate may avoid the transfers of

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**
DOCS_SF:95283.4 18488/002                              5

over $15 million in cash and liquid investments to the CASC made in late 2016 and early 2017 just prior to DGFM's bankruptcy filing.

The Bishop holds legal title to all real and personal property of DGFM, including the property of the Parishes.  DGFM acknowledges that its Parishes do not hold title to real property. Policies at 2.  The Committee can easily defeat the surviving unrecorded trusts under Montana law based on the rights of a bona fide purchaser of real property ("*BFP*"), which rights can be asserted by the estate under Bankruptcy Code section 544(a)(3).

## VI.

## BASIS FOR RELIEF

It has long been acknowledged that the debtor in possession "often acts under the influence of conflicts of interest" which prevents it from pursuing potentially viable claims that would result in a benefit to unsecured creditors.  *See, e.g., Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group)*, 66 F.3d 1436, 1441 (6th Cir. 1995).  To address the problem that arises where (as here) the debtor is unwilling or unable to fulfill its obligation to maximize the value of the estate, "[t]he practice of authorizing the prosecution of actions on behalf of an estate by committees . . . upon a showing that such is in the interests of the estate, is one of long standing, and nearly universally recognized."  *Adelphia Comm. Corp. v. Bank of America (In re Adelphia Comm. Corp.)*, 330 B.R. 364, 373 (Bankr. S.D.N.Y. 2005).

While the Ninth Circuit has not established specific procedures for determining when a committee should be granted derivative standing, it has unequivocally recognized that the

**MOPA ISO MOTION RE FOR EXCLUSIVE**
**AND IRREVOCABLE AUTHORITY TO**
**COMMENCE, PROSECUTE, AND SETTLE**
**LITIGATION ON BEHALF OF BANKRUPTCY**
**ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

granting of derivative standing to allow someone other than the trustee or debtor in possession to prosecute litigation is appropriate. *Avalanche Maritime Ltd. v. Parekh (In re Parmetex, Inc),* 199 F.3d 1029, 1031 (9th Cir. 1999). In *Parmetex,* creditors in a chapter 7 case filed a complaint to avoid fraudulent and preferential transfers and two months later executed a stipulation with the chapter 7 trustee for authority to pursue such claims. *Id.* at 1030. The Ninth Circuit held that the creditors had standing to bring the action. *Parmetex* was cited with approval in *Estate of Spirtos v. Superior Court Case,* 443 F.3d 1172, 1175-76 (9th Cir. 2006), which held that a creditor of the estate who did not receive authorization from either the chapter 7 trustee or the bankruptcy court lacked standing to assert a RICO claim on behalf of the estate. Common sense dictates the result: If the Committee does not prosecute the Avoidance Actions, who will?[6] In *Liberty Mut. Ins. Co. v. Official Creditors' Comm. (In re Spaulding Composites Co.),* 207 B.R. 899, 903-04 (BAP 9th Cir. 1997), the Bankruptcy Appellate Panel for the Ninth Circuit held that a committee can assert a derivative claim on behalf of the estate after obtaining court approval. *See also In re Curry & Sorenson, Inc.,* 57 B.R. 824, 828 (BAP 9th Cir. 1986) ( "If a creditor is dissatisfied with lack of action on the part of the debtor-in-possession, the creditor may . . . petition the court . . . to gain court permission to institute the action itself. Thus, if an aggrieved creditor believes that the debtor-in-possession has failed to fulfill its duty to prosecute actions, then the creditor must

---

[6] Other bankruptcy courts in the Ninth Circuit have allowed a committee standing in Catholic Church-related cases. In the Portland Archdiocese, San Diego Diocese and Fairbanks Diocese chapter 11 cases, the bankruptcy courts vested the creditors' committees with the avoidance actions and the committees asserted those rights against the parishes and other entities affiliated with the debtor in a successful summary judgment motion (Committee counsel in this case was committee counsel in the San Diego Diocese and Fairbanks Diocese chapter 11 cases).

**MOPA ISO MOTION RE FOR EXCLUSIVE AND IRREVOCABLE AUTHORITY TO COMMENCE, PROSECUTE, AND SETTLE LITIGATION ON BEHALF OF BANKRUPTCY ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

bring this to the attention of the court by an appropriate motion."). The court must balance interests and determine, among other things, "whether or not the debtor-in-possession's failure to bring the action is unjustifiable." *Id.* In *Curry & Sorenson*, the BAP agreed with the debtor that the creditor lacked standing because it made no attempt to bring the matter to the attention of the Bankruptcy Court before commencing this action.

The federal courts of appeal that have considered the issue have uniformly held that committees should be granted derivative standing to prosecute the estate' claims when: (1) a demand is made on the debtor to pursue the claims, (2) the debtor refuses to pursue the claims and such refusal is unjustified, and (3) a colorable claim exists against the prospective defendants that would benefit the estate. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 244-45 (6th Cir. 2009); *PW Enters. v. N.D. Racing Comm'n (In re Racing Servs.),* 540 F.3d 892, 899 (8th Cir. 2008); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001); *Fogel v. Zell*, 221 F.3d 955,966 (7th Cir. 2000); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.,* 66 F.3d 1436, 1446 (6th Cir. 1995); *Louisisana. World Exp. v. Federal Ins. Co*., 858 F.2d 233 (5th Cir. 1988); *In re STN Enterprises*, 779 F.2d 901, 905 (2d Cir. 1985). *See also Official Comm. v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548, 566 (3d Cir. 2003) (committee can pursue fraudulent transfer action under section 544(b) when debtor in possession refused to do so and bankruptcy court authorized committee to proceed derivatively).

**MOPA ISO MOTION RE FOR EXCLUSIVE**
**AND IRREVOCABLE AUTHORITY TO**
**COMMENCE, PROSECUTE, AND SETTLE**
**LITIGATION ON BEHALF OF BANKRUPTCY**
**ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

Bankruptcy courts in Montana have adopted these well-settled standards in granting committees derivative standing to pursue the estate's claims. *In re Yellowstone Mountain Club, LLC,* 2009 Bankr. LEXIS 4443 *16 (Bankr. D. Mont. Jan. 16, 2009) (granting derivative standing to committee to pursue note collection action over debtor's opposition; citing *In re Valley Park*, 217 B.R. 864 (Bankr. D. Mont. 1998), and other authorities; using the four-factor test: (i) demand has been made on statutorily authorized party to take action, (ii) demand is declined, (iii) colorable claim that would benefit estate exists based on cost-benefit analysis, and (iv) inaction is unjustified in light of duties of debtor in possession).

In the present case, the Committee meets all of the elements for derivative standing.

## A.        Demand on the DGFM.

The Committee made a demand upon the Debtor to prosecute the Avoidance Actions and claims to determine property of the estate or to consent to the Committee's standing. The Debtor failed to respond on a timely basis and when it did respond, it conditioned its consent on onerous concessions by the Committee unrelated to the prospective litigation and unacceptable to the Committee.

## B.        The Avoidance Actions Are Colorable.

The Committee is not required to prove that it will succeed in avoiding the transfers to prevail on this Motion. Rather, the Committee is required only to make a colorable claim. A colorable claim need only by "plausible." *See*, e.*g., In re LTV Steel Co.*, 333 B.R. 397, 406 (Bankr. N.D. Ohio 2005) ("A colorable claim is defined as one which is plausible or 'not

**MOPA ISO MOTION RE FOR EXCLUSIVE**
**AND IRREVOCABLE AUTHORITY TO**
**COMMENCE, PROSECUTE, AND SETTLE**
**LITIGATION ON BEHALF OF BANKRUPTCY**
**ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

without merit'"); *see also, e.g., Elstner-Bailey v. Fannie Mae (In re Elstner-Bailey)*, 2011 Bankr. LEXIS 4802, at **9-10 (BAP 9th Cir. Oct. 4, 2011) (in relief-from-stay context; quoting Cornell University Law School's Legal Information Institute's definition as: "A plausible legal claim. In other words, a claim strong enough to have a reasonable chance of being valid if the legal basis is generally correct and the facts can be proven in court.  The claim need not actually result in a win.").  Thus, the standard to establish whether an underlying claim is colorable is not onerous; it merely requires, as with defeating a Rule 12(b)(6) motion to dismiss, assertion of claims "that on appropriate proof would support a recovery."  *G-I Holdings v. Those Parties (In re G-I Holdings)*, 313 B.R. 612, 631 (Bankr. D.N.J. 2004); *see also In re STN Enterprises*, 779 F.2d 901, 905-06 (2d Cir. 1985) (court need not conduct a mini-trial to determine whether "colorable" claim has been presented); *Official Comm. v. Hudson United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998) (observing that standing should be denied only if the claim is "facially defective); *Adelphia Comm.*, 330 B.R. at (Bankr. S.D.N.Y. 2005) ) (claims are colorable where they are not a "hopeless fling.").

The Avoidance Actions will seek to set aside: (a) the asserted unrecorded beneficial interests of the Parishes in real property and (b) transfers made by DGFM without consideration just prior to filing bankruptcy of over $15 million of cash and liquid investments.   Once the Committee has standing to assert the Avoidance Actions, it will seek to avoid the unrecorded beneficial interests in the real property and to avoid the transfers to the CASC as fraudulent transfers under Montana law (applicable pursuant to Bankruptcy Code section 544) and

**MOPA ISO MOTION RE FOR EXCLUSIVE**
**AND IRREVOCABLE AUTHORITY TO**
**COMMENCE, PROSECUTE, AND SETTLE**
**LITIGATION ON BEHALF OF BANKRUPTCY**
**ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

Bankruptcy Code section 548.[7]  *See* Mont. Code §§ 31-2-326 to 31-2-342 (Montana's fraudulent transfer statute) and Mont. Code §70-21-304 (conveyance void as against other earlier recorded conveyances).

      **1.**      **Fraudulent Conveyances: Intentional Fraud.**

The transfers to the CASC within the year prior to the Petition Date are fraudulent transfers under Montana law (a four-year reach back; Mont. Code § 31-2-341) and section 548 of the Bankruptcy Code (two-year reach back for transfers to third parties; ten-year reach back for transfers to self-settled trusts).  Montana Code section 31-2-333 and Bankruptcy Code section 548(a)(1)(A) and 548(e)(1) invalidate transfers made with the intent to hinder, delay, or defraud creditors.

The Committee anticipates that DGFM will contend that the assets transferred to CASC are not avoidable because the assets were not property of the estate but were held in trust for its Parishes and Diocese Affiliated Entities.  However, DGFM will not be able to meet its burden of showing that the assets were held in trust.  *In re Estate of Bolinger*, 284 Mont. 114, 943 P.2d 981 (1997) (party asserting existence of trust has burden of establishing existence of trust by clear and convincing evidence).

The Parishes are not legal persons and have no separate legal existence from DGFM. Under Montana law, no valid trust can exist where, as here, the legal and beneficial interests

---

[7] The Committee also will attack the transfers on the basis that the Diocese Affiliated Entities are unincorporated divisions of the Debtor and that their property is actually property of the estate.

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

merge because the same person (DGFM) is both the sole trustee and the sole beneficiary of the purported trust.  Mont. Code § 72-38-402(1)(e); *Dilts v. Brooks,* 66 Mont. 346, 350, 213 P. 600, 602 (1923) ("'A merger at law is defined to be where a greater estate and a less coincide and meet in one and the same person, in one and the same right, without any intermediate estate.  The less estate is immediately annihilated, or in the law phrase it is said to be merged—that is, sunk or drowned—in the greater.'"; quoting 5 *Words & Phrases* at 4492).

The transfers to the CASC all exhibit many of the traditional badges of fraud that will support a finding of actual intent to hinder, delay, or defraud creditors (i.e., transfers to insiders in light of litigation that would financially overwhelm the transferor).  Mont. Code § 31-2-333(2).

### 2.    Fraudulent Conveyances: Constructive Fraud.

DGFM's transfers to CASC are void as fraudulent transfers regardless of the intent of the transferor.  Bankruptcy Code section 548(a)(1)(B) and Montana Code section 31-2-333 (1)(b) permit the avoidance of transfers where the transferor received less than reasonably equivalent value in exchange for the transfer and was insolvent or rendered insolvent on the date of the transfer or was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.  DGFM received nothing in exchange for the transfers to the CASC.  It simply transferred millions of dollars in the face of massive liability to the survivors of sex abuse and obvious insolvency.

MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES
DOCS_SF:95283.4 18488/002                              12

3.    **The Unrecorded Beneficial Interests of the Parishes Are Avoidable by Virtue of the Estate's Rights as a BFP.**

Once standing is granted, section 544(a)(3) gives the Committee the rights of a hypothetical BFP and allows it to avoid any interests in property that could be avoided by a BFP. 11 U.S.C. § 544 (a)(3).  DGFM contends that its holds the real property in trust for the Parishes. Montana law provides that an unrecorded trust interest is subordinate to the rights of a BFP of real property. *See* Mont. Code §§ 70-20-304.[8]  *See also Tort Claimants' Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of Portland in Oregon)*, 335 B.R. 868 (Bankr. D. Or. 2005) ("**Portland**").

The Parishes may argue that the district court in the *Spokane Diocese* case ruled that resulting trusts cannot be avoided under section 544(a)(3).  That is inaccurate and, if it were accurate, the decision would clearly be erroneous.  The district court held that the parishes had submitted sufficient evidence to support a finding that the properties were subject to a resulting trust, and it therefore reversed the bankruptcy court's award of summary judgment to the committee.  *See Committee of Tort Litigants v. Catholic Diocese of Spokane*, 364 B.R. 81 (E.D. Wash. 2006).  The committee had *not* been given standing to pursue avoidance claims in that case.[9]  The district court did cite *In re Torrez*, 63 B.R. 751 (BAP 9th Cir. 1986), *aff'd*, 827 F.2d

___

[8] In the Spokane Diocese chapter 11 case, the bankruptcy court acknowledged that the committee would prevail under section 544 against the parish unrecorded interests.  *Committee of Tort Litigants v. Catholic Diocese (In re Catholic Bishop of Spokane)*, 329 B.R. 304, 332 (Bankr. E.D. Wa. 2006).  The bankruptcy court, although opining on the avoidability of the unrecorded interests, had not granted standing to the committee to bring the avoidance action.

[9] "In this case, of course, the parties represented by the Tort Litigants Committee or the Tort Claimant Committees, are not in the posture of a bona fide purchaser nor are they in the posture of judgment creditors of the Diocese or any individual Parish, since none of the underlying claims have been litigated or reduced to judgment." 364 B.R. at 95.

1299 (9th Cir. 1987), and stated that *Torrez* "held that the 'strong arm' power of section 544 of the Bankruptcy Code could not make the corpus of a valid resulting trust property of the bankruptcy debtor." 364 B.R. at 93). What *Torrez* actually held is that (a) a lien creditor cannot overcome a resulting trust and (b) "only a bona fide purchaser without notice can upset a resulting trust." *Torrez,* 63 B.R. at 754.

The Ninth Circuit confirmed that the holding of *Torrez* was limited: "*Torrez* did not hold that § 544 was inapplicable in general to resulting trusts or any other kind of trust." *Chbat v. Tleel* (*In re Tleel*), 876 F.2d 769, 772 (9th Cir. 1989); *see also Portland*, 335 B.R. at 878 (it is "not the character of the trust that determined whether the interest was avoidable, but where there was constructive notice of that interest at the time of bankruptcy"); *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12 (BAP 9th Cir. 2003) (priority over unrecorded equitable interests under section 544(a)(3) turns on whether purchaser would have had constructive notice of those interests at time of bankruptcy filing). In *Portland,* Judge Perris granted summary judgment to the committee, holding that there was no issue of fact that the estate would not be charged with constructive notice of any trust interest of the parishes. As addressed below, the same result should obtain here.

Resulting trusts are subordinate to the rights of a BFP. *Zier v. Osten*, 135 Mont. 484, 342 P.2d 1076 (1959). *See Bogert's Trusts and Trustees* § 466 ("Resulting trusts of the purchase money type are subject to the bona fide purchaser rule, as are all other trusts, express or implied. If the trustee as legal title holder conveys, pledges or mortgages the subject matter of the trust to

MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES

DOCS_SF:95283.4 18488/002                           14

a purchaser for value who has no notice of the existence of the trust, the equitable interest of the resulting beneficiary will be cut off."); *Adler v. Manor Healthcare Corp.*, 7 Cal. App. 4th 1110, 1116 (1992)("Where the existence of the trust and the trustee's status are undisclosed and unrecorded, third parties who acquire real property from trustees or have any dealings with trustees concerning real property are deemed bona fide."); *Moultrie v. Wright*, 154 Cal. 520, 523, 98 P. 257, 259 (1908) ("If Doane had no notice when he took the mortgage, nor prior to his death, and the administratrix bought for the benefit of the estate, without notice, she would hold as an innocent purchaser free from the trust."; citing *Riley v. Martinelli*, 97 Cal. 580, 32 Pac. 579 (1893)).

**4.     A BFP Would Have Had No Record or Constructive Notice of Parishes' or Parishioners' Purported Equitable Interests; Thus, Any Such Interests Are Avoidable Under Section 544(a)(3).**

        a.      <u>Record Notice</u>

There is no record notice of the Parishes' equitable interest in the Disputed Real Property because the DGFM holds fee simple title to all of the substantial Disputed Real Property.  *See* Mont. Code § 70-20-304 (providing that a warranty deed conveys real property with covenants that the grantor has a fee simple interest that is free from encumbrances and that the grantor will defend the title of the grantee).

        b.      <u>Occupancy of the Properties Does Not Confer Inquiry Notice</u>

The Committee will be able to demonstrate that a BFP would not be charged with inquiry notice of others alleged interests in the Disputed Real Property.  *Portland,* 335 B.R. at 888 ("I

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**
DOCS_SF:95283.4 18488/002                                    15

conclude that there is no genuine issue of material fact that the TCC is entitled under § 544(a)(3) to avoid any unrecorded interests in the test properties.").

A hypothetical BFP would not have had constructive notice of any equitable interest of any entity other than the DGFM in the Disputed Real Property. A purchaser is not always under a duty to make inquiries; the duty arises when suspicious facts suggest outstanding equities in a third party. *Rase v. Castle Mountain Ranch*, 193 Mont. 209, 218, 631 P.2d 680, 685 (1981) ("It is generally conceded that when someone purchases land under circumstances which suggest outstanding equities in third parties, there is imposed on the purchaser a duty to make a reasonable investigation as to the existence of outstanding claims against the property, and one who fails to use due diligence to ascertain the facts within his reach is not an innocent purchaser."). The legal standard for determining whether occupancy gives rise to a duty of inquiry is well established in Montana and elsewhere. The possession required to impart notice to a subsequent purchaser must be open, notorious, exclusive, and visible, and not consistent with the record title. "'Open and notorious and exclusive possession of a prior grantee in an unrecorded deed is sufficient to put a subsequent purchaser whose deed is first recorded upon inquiry, and such possession is sufficient evidence of notice unless a subsequent purchaser make due inquiry and fails to attain knowledge of the unrecorded deed.'" *Sheldon v. Powell*, 31 Mont. 249, 252, 78 P. 491, 491 (1904) (quoting *Fair v. Stevenot*, 29 Cal. 486 (1866)).

Under this exacting standard, the occupancy of the Disputed Real Property could not create inquiry notice as to purported equitable interests adverse to those of DGFM. A purchaser

MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES
DOCS_SF:95283.4 18488/002                    16

viewing the Disputed Real Property would see nothing inconsistent with DGFM's exclusive

ownership and plenary power to convey property.  All of the Disputed Real Property is being

used as Catholic churches or Catholic schools.  A prudent purchaser would expect to see

parishioners and parish-level employees on the Disputed Real Property.  Certainly, any purchaser

would expect to see property owned DGFM being used by Catholics as a Catholic facility for the

purposes of the Catholic Church.  It would be unreasonable to require such a purchaser to inquire

into whether these individuals claim equitable interests in the property.  Otherwise, no purchaser

could obtain good title from a nonprofit organization with donors, program participants, or

administrative subdivisions.

DGFM's own conduct and representations would lead a prudent purchaser to conclude

that DGFM is a unitary entity encompassing parishes and schools with unfettered title to the

Disputed Real Property.  None of the Parishes or schools is organized under Montana law.  All

of this information is consistent with DGFM's ownership of the Disputed Real Property and

belies any claim by the Parishes that their occupancy is evidence of their purported interests

giving rise to inquiry notice.

c.       The Parishes' Occupancy of the Properties Is Not Exclusive

When two or more persons jointly occupy property, one of whom is the record owner, a

purchaser is under no duty to inquire into the rights of others.  The rationale for this rule is that

"where a prospective purchaser or encumbrancer of property finds the record owner in

occupancy thereof, there is normally nothing in the mere circumstance that there are other

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

DOCS_SF:95283.4 18488/002                                          17

occupants of the property to arouse any suspicion that such others are claiming an interest inconsistent with the record title."  Annotation, *Occupancy of Premises by Both Record Owner and Another as Notice of Title or Interest of Latter*, 2 A.L.R. 2d 857, § 2 (1948); *see also* 1 *Patton & Palomar on Land Titles* § 12 (3d ed. 2002).

The law in Montana is the same:  Possession must be, among other things, exclusive. Any Parish or parishioner that could conceivably claim occupancy of any of the Disputed Real Property would at best be in a cooperatively appearing joint occupancy with the pastor and DFGM personnel.  Such occupancy would not put a reasonable prospective purchaser on inquiry notice.  Judge Perris also ruled on this issue.  *Portland*, 335 B.R. at 886 ("Possession of property by agents of the record owner does not excite inquiry into whether other unrecorded interests exist in the property.").

> d.      <u>Parishioners' Occupancy of the Properties Is Temporary and Occasional</u>

A purchaser is not put on inquiry notice by an occupancy that is only temporary or occasional.  *See* 3 *Patton & Palomar on Land Titles* § 674 (intermittent or occasional use of land is insufficient to operate as notice to a purchaser).  An individual parishioner's or student's occupancy of the Disputed Real Property is temporary and occasional, and would be recognized as such by a reasonable purchaser.  Nothing about their presence would prompt a purchaser to inquire about potential equitable interests.

> e.      <u>Statements and Schedules Do Not Provide Inquiry Notice</u>

Nor do the Debtor's schedules of assets and liabilities and/or statement of financial affairs provide sufficient notice to a BFP of the existence of equitable interests in the Disputed Real Property.  Judge Perris sensibly rejected such arguments to the contrary.  *Portland,* 335

**MOPA ISO MOTION RE FOR EXCLUSIVE**
**AND IRREVOCABLE AUTHORITY TO**
**COMMENCE, PROSECUTE, AND SETTLE**
**LITIGATION ON BEHALF OF BANKRUPTCY**
**ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

DOCS_SF:95283.4 18488/002                                    18

B.R. at 881-82; *see also Taxel v. Chase Manhattan Bank* (*In re Deuel*), 361 B.R. 509, 514-15

(BAP 9th Cir. 2006) (such documents filed with petition are filed *after* the commencement of the

case), *aff'd*, 594 F.3d 1073 (9th Cir. 2010).

The consequence of section 544(a)(3) is that "[t]he estate gets what the debtor could

*convey* under local law . . . ." *Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir. 1989). Montana

law unambiguously grants a corporation sole the power to acquire, hold, sell, convey and dispose

of property. *See* Mont. Code § 35-3-205(5). Nothing in the applicable statutes provides that a

corporation sole must obtain the approval of any other person to sell assets, unless required by its

articles of incorporation. The Committee believes that the DGFM's articles of incorporation do

not assert that the DGFM holds property in trust for parishes and laity, the articles do not state

any restriction on the right of DGFM to sell it, and a BFP has no duty to ask. *See Portland*, 335

B.R. at 887 ("Although someone inquiring about purchasing property titled in the name of the

Archdiocese of Portland and occupied by Catholic churches, schools and cemeteries might be

told that the parish or school needed to agree to the sale, that fact does not give rise to a duty to

make the inquiry in the first place."). Finally, even if beneficiary consent were required,

Montana law provides that the trust evidenced by the amended articles is revocable. *See* Mont.

Code § 72-38-602; *see also McClure v. McClure (In re Estate of McClure)*, 385 Mont. 130, 139,

381 P.3d 566, 573 (2016).

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

In short, nothing in the DGFM's articles of incorporation would give constructive notice of any restriction on the DGFM's ability to convey good title to the Disputed Real Property because, in the final analysis, no such restriction exists.

**5.      Prosecution of the Avoidance Actions Will Benefit the Estate and the Debtor's Refusal to Prosecute the Claims Is Unjustified.**

The prosecution of the Avoidance Actions will clearly be a sensible expenditure of estate resources.  The Committee, as a practical matter, has provided the Court with a predicate for concluding that the claims provide a sound basis for recovery and the prospective rewards can reasonably be expected to far exceed the litigation's foreseeable cost.  Indeed, under the facts and law set forth above, not only is the proposed litigation consistent with maximizing the value of the estate, it is necessary to achieve that goal.

> [N]o more than that is required, and the Court must be mindful of the purposes for its inquiry. It is not for the protection of defendants sued or to be sued by a committee on behalf of an estate, whose defenses can be fully and fairly considered in the plenary litigation to be prosecuted-just as they would if the defendants had been sued by a debtor (or a non-debtor) directly. Rather, the purpose of the bankruptcy court's gatekeeper role is to protect the estate, to ensure that the litigation reasonably can be expected to be a sensible expenditure of estate resources, and will not impair reorganization.

*Adelphia Comm.,* 330 B.R. at 386.

Because the Avoidance Actions clearly have value to the estate, DGFM's refusal to prosecute the claims or unconditionally consent to the Committee's standing to prosecute the claims is unjustified and driven by its profound conflict of interest rather than a faithful exercise of its fiduciary duty to maximize the value of the estate.  Moreover, when the debtor fails to

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

DOCS_SF:95283.4 18488/002                                20

prosecute litigation because of a conflict, the need for strict adherence to this factor is obviated.

*In re Yellowstone Mountain Club, LLC,* 2009 Bankr. LEXIS 4443, at *16 (Bankr. D. Mont. Jan.

16, 2009).

# VII.

# CONCLUSION

The property of the bankruptcy estate will be significantly augmented by the exercise of

the Avoidance Actions.  For the reasons set forth above, the Committee requests that it be

authorized to exclusively and irrevocably file, prosecute, and settle the Avoidance Actions that

are set forth in the complaint, attached hereto as **Exhibit A.**


Dated:    November 2,  2017                    PACHULSKI STANG ZIEHL & JONES LLP


                                               By      */s/ James I. Stang*
                                                       James I. Stang (CA Bar No. 94435)
                                                       Kenneth H. Brown (CA Bar No. 100396)
                                                       Ilan D. Scharf (NY State Bar #4042107)


**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

DOCS_SF:95283.4 18488/002                      21

# EXHIBIT A

**MOPA ISO MOTION RE FOR EXCLUSIVE
AND IRREVOCABLE AUTHORITY TO
COMMENCE, PROSECUTE, AND SETTLE
LITIGATION ON BEHALF OF BANKRUPTCY
ESTATE AGAINST DIOCESE AFFILIATED ENTITIES**

DOCS_SF:95283.4 18488/002

James I. Stang (CA State Bar #94435
Kenneth H. Brown (CA Bar #100396)
Ilan D. Scharf (NY State Bar #4042107)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Phone: (310) 277-6910
Fax: (310) 201-0760
Email: jstang@pszjlaw.com
        kbrown@pszjlaw.com
        ischarf@pszjlaw.com

Attorneys to Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

|  |  |
|---|---|
| In re: | Chapter 11 |
| Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporation Sole (Diocese of Great Falls - Billings), | Bankruptcy Case No. 17-60271-JDP |
| Debtor-in-Possession | |
| Official Committee of Unsecured Creditors | Adv. Proc. No. _____ |
| Plaintiff, | |
| v. | |
| Roman Catholic Bishop of Great Falls, Montana, A Montana Religious Corporation Sole, Diocese of Great Falls-Billings Juridic Persons Capital Assets Support Corporation, Blessed Kateri Tekakwitha (Wyola), Blessed Sacrament (Lame Deer), Christ the King (Busby), Corpus Christi (Great Falls), Holy Family (Glentana), Holy Family (Winifred), Holy Spirit (Great Falls), Holy Trinity (Centerville), Immaculate Conception (Forsyth), Immaculate Conception (Fort Benton), Immaculate Conception (Wolf Point), Mary Queen of Peace (Billings), Our Lady of Guadalupe (Malmstrom AFB), Our Lady of Lorett (Lodge Grass), Our Lady of Lourdes (Great Falls), Our Lady of Lourdes (Poplar), Our Lady of Mercy (Melstone), Our Lady of Ransom (Hingham), | |

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

Queen of Angels (Nashua), Sacred Heart (Bainville),
Sacred Heart (Bridger), Sacred Heart (Cascade),
Sacred Heart (Dodson), Sacred Heart (Fort Belknap),
Sacred Heart (Hobson), Sacred Heart (Inverness),
Sacred Heart (Miles City), Sacred Heart (Terry),
Sacred Heart Church (Glendive), St Agnes (Red
Lodge), St Albert (Hinsdale), St Aloysius (Winnett),
St Ann (Fort Shaw), St Ann (Vida), St Ann Cathedral
(Great Falls), St Anthony (Denton), St Anthony
(Laurel), St Anthony (Plevna), St Anthony Church
(Box Elder), St Anthony Church (Culbertson), St
Benedict (Roundup), St Bernard (Billings), St
Bernard Church (Charlie Creek), St Catherine
(Fairview), St Charles Borromeo (Pryor), St
Clement-Diocesan Chapel of Worship (Monarch), St
Cyril (Geyser), St David (Broadus), St Dennis (Crow
Agency), St Francis Assisi (Saco), St Francis de
Sales (Richey), St Francis Xavier ( Circle), St Francis
Xavier (St Xavier), St Gabriel (Chinook), St Joan of
Arc (Ekalaka), St John (Joliet), St John the Baptist
(Jordan), St John The Evangelist Church (Baker), St
Joseph (Big Timber), St Joseph (Frazer), St Joseph
(Fromberg), St Joseph (Hardin), St Joseph (Hysham),
St Joseph (Plentywood), St Joseph (Zortman), St
Jude Thaddeus (Havre), St Labre (Ashland), St Leo
(Lewistown), St Margaret (Clyde Park), St Margaret
(Geraldine), St Margaret Mary (Big Sandy), St
Margaret Mary (Colstrip), St Mark Church (Belt), St
Mary (Chester), St Mary (Columbus), St Mary
(Custer), St Mary (Livingston), St Mary (Malta), St
Mary (Raynesford), St Mary (Rocky Boy), St
Mathias (Moore), St Mathias (Ryegate), St Matthew
(Sidney), St Michael (Savage), St Michael Church
(Absarokee), St Patrick (Medicine Lake), St Patrick
Co-Cathedral (Billings), St Paul Mission (Hays), St
Peter (Wibaux), St Philip Bonitus (Scobey), St Philip
Church (Wibaux), St Pius X (Billings), St Raphael
(Glasgow), St Rose of Lima (Stanford), St Theresa
(Lambert), St Theresa of the Little Flower Church
(Broadview), St Thomas (Brockton), St Thomas
(Lodgepole), St Thomas Aquinas (Hogeland), St
Thomas the Apostle (Billings), St Thomas the
Apostle (Harlem), St William (Gardiner), Sts Cyril &
Methodius Church (Ballantine), and Trinitas Chapel
(Great Falls)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Defendants.

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

**COMPLAINT FOR DECLARATORY RELIEF REGARDING PROPERTY OF THE ESTATE; AVOIDANCE OF UNRECORDED INTERESTS IN REAL PROPERTY; QUITE TITLE AND AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**

The Official Committee of Unsecured Creditors (the ***"Committee"***) of the Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporation Sole, Diocese of Great Falls-Billings (***"DGFM"***) brings this adversary proceeding against the defendants named herein pursuant to the authority granted to the Committee by the *Order Granting the Motion of the Official Committee of Unsecured Creditors for Exclusive and Irrevocable Authority to Commence, Prosecute and Settle Litigation on Behalf of Bankruptcy Estate Against Diocese Affiliated Entities* entered on [__] [Docket No. __] (the ***"Order Conferring Standing"***). The Committee alleges as follows:

## INTRODUCTION

1.      By this complaint the Committee seeks, *inter alia*, a determination from the Court regarding the ownership of approximately $70,000,000 in real estate assets and $19,000,000 in checking and investment accounts.

2.      DGFM contends that the assets are held in trust or otherwise for the benefit of its Parishes or other parts of itself and/or that the assets have been transferred to third parties. As a result, DGFM contends the assets are not part of its estate and thus cannot be reached by creditors of DGFM, including the survivors of sex abuse comprising the Committee's constituency.

3.      As set forth below, the Parishes are not separate legal persons or entities but are part of DGFM akin to divisions of a for-profit-corporation and may not hold title to

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

property or be the beneficiaries of a trust. Even if they were separate from DGFM, the defendants cannot establish that valid trusts exist or that the funds allegedly held in trust can be adequately identified or traced by the defendants after they were commingled with other non-trust funds of DGFM.

4.      As part of an asset protection scheme to shield its assets from its creditors, including the survivors of sex abuse, while still maintaining control over the assets, shortly before filing its bankruptcy petition, DGFM transferred over $16 million of financial assets and cash from its Deposit and Loan Fund to the Diocese of Great Falls-Billings Juridic Persons Capital Assets Support Corporation (***"CASC"***).

5.      By this adversary proceeding, the Committee, on behalf of DGFM's chapter 11 estate, seeks a determination that that the purported trusts are not valid or enforceable and/or that the assets in the purported trusts constitute property of DGFM bankruptcy estate. The Committee also seeks to avoid all unrecorded interests in real property owned by DGFM and to avoid and recover as fraudulent, the transfers made by DGFM to CASC as part of DGFM's asset protection scheme to put its assets out of the reach of its creditors.

6.      The resolution of this litigation is critical to DGFM's chapter 11 estate because it will determine the magnitude of distributions to its creditors, including the survivors of the childhood sex abuse enabled by DGFM or whether DGFM can continue to avoid being held accountable to the survivors.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## JURISDICTION

7.      This Court has jurisdiction over the instant adversary proceeding,

including the Counterclaims, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334; 11 U.S.C. § 105; and

Federal Rules of Bankruptcy Procedure 7001 and 7013.

8.      Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1409.

9.      This adversary proceeding, including the Counterclaims, constitutes a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PARTIES

10.      On or about May 1, 2017, the United States Trustee appointed, the

Committee, to represent DGFM's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).

11.      The Roman Catholic Bishop of Great Falls Montana, a Montana

Corporation Sole, is doing business as the Diocese of Great Falls Montana (***"DGFM"***).

12.      Diocese of Great Falls-Billings Juridic Persons Capital Assets Support

Corporation (***"CASC"***) is a non-profit corporation organized under the laws of the State of

Montana and an insider of DGFM.

13.      The following defendants are parishes (the "Parishes") of DGFM located

in the State of Montana:   Roman Catholic Bishop of Great Falls, Montana, A Montana Religious

Corporation Sole; Diocese of Great Falls-Billings Juridic Persons Capital Assets Support

Corporation; Blessed Kateri Tekakwitha (Wyola); Blessed Sacrament (Lame Deer); Christ the

King (Busby); Corpus Christi (Great Falls); Holy Family (Glentana); Holy Family (Winifred);

Holy Spirit (Great Falls); Holy Trinity (Centerville); Immaculate Conception (Forsyth);

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

Immaculate Conception (Fort Benton); Immaculate Conception (Wolf Point); Mary Queen of

Peace (Billings); Our Lady of Guadalupe (Malmstrom AFB); Our Lady of Lorett (Lodge Grass);

Our Lady of Lourdes (Great Falls); Our Lady of Lourdes (Poplar); Our Lady of Mercy

(Melstone); Our Lady of Ransom (Hingham); Queen of Angels (Nashua); Sacred Heart

(Bainville); Sacred Heart (Bridger); Sacred Heart (Cascade); Sacred Heart (Dodson); Sacred

Heart (Fort Belknap); Sacred Heart (Hobson); Sacred Heart (Inverness); Sacred Heart (Miles

City); Sacred Heart (Terry); Sacred Heart Church (Glendive); St Agnes (Red Lodge); St Albert

(Hinsdale); St Aloysius (Winnett); St Ann (Fort Shaw); St Ann (Vida); St Ann Cathedral (Great

Falls); St Anthony (Denton); St Anthony (Laurel); St Anthony (Plevna); St Anthony Church

(Box Elder); St Anthony Church (Culbertson); St Benedict (Roundup); St Bernard (Billings); St

Bernard Church (Charlie Creek); St Catherine (Fairview); St Charles Borromeo (Pryor); St

Clement-Diocesan Chapel of Worship (Monarch); St Cyril (Geyser); St David (Broadus); St

Dennis (Crow Agency); St Francis Assisi (Saco); St Francis de Sales (Richey); St Francis Xavier

( Circle); St Francis Xavier (St Xavier); St Gabriel (Chinook); St Joan of Arc (Ekalaka); St John

(Joliet); St John the Baptist (Jordan); St John The Evangelist Church (Baker); St Joseph (Big

Timber); St Joseph (Frazer); St Joseph (Fromberg); St Joseph (Hardin); St Joseph (Hysham); St

Joseph (Plentywood); St Joseph (Zortman); St Jude Thaddeus (Havre); St Labre (Ashland); St

Leo (Lewistown); St Margaret (Clyde Park); St Margaret (Geraldine); St Margaret Mary (Big

Sandy); St Margaret Mary (Colstrip); St Mark Church (Belt); St Mary (Chester); St Mary

(Columbus); St Mary (Custer); St Mary (Livingston); St Mary (Malta); St Mary (Raynesford); St

Mary (Rocky Boy); St Mathias (Moore); St Mathias (Ryegate); St Matthew (Sidney); St Michael

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

(Savage); St Michael Church (Absarokee); St Patrick (Medicine Lake); St Patrick Co-Cathedral

(Billings); St Paul Mission (Hays); St Peter (Wibaux); St Philip Bonitus (Scobey); St Philip

Church (Wibaux); St Pius X (Billings); St Raphael (Glasgow); St Rose of Lima (Stanford); St

Theresa (Lambert); St Theresa of the Little Flower Church (Broadview); St Thomas (Brockton);

St Thomas (Lodgepole); St Thomas Aquinas (Hogeland); St Thomas the Apostle (Billings); St

Thomas the Apostle (Harlem); St William (Gardiner); Sts Cyril & Methodius Church

(Ballantine); and Trinitas Chapel (Great Falls).

### THE DGFM BANKRUPTCY CASE

14.     On March 31, 2017 (the *"Petition Date"*), DGFM filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the

*"Bankruptcy Code"*).  DGFM continues to operate its business as a debtor in possession.

15.     DGFM's commencement of the above-captioned bankruptcy case as of the

Petition Date created an "estate" as defined in 11 U.S.C. § 541(a).

### PROPERTY OWNED BY DGFM WHICH IT CLAIMS
### IS NOT PROPERTY OF THE ESTATE

16.     On March 31, 2017, pursuant to 11 U.S.C. § 521 and Bankruptcy Rule

1007(b), DGFM filed its Statement of Financial Affairs and its Schedules of Assets and

liabilities.  On June 9, 2017, DGFM filed an Amended Statement of Financial Affairs and

Schedules A and B.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

17.     **Parish Property.**  Certain real property is legally titled to DGFM which it contends is not property of the estate because it is held in trust for the benefit of its Parishes and other institutions.  Schedule A/B:Assets-Real and Personal. Part 9, 55.1 Property [Dkt. No. 1].

18.     The property DGFM contends it holds in trust for its Parishes and other institutions is listed on Exhibit 7 to DGFM's Schedules of Assets.  A true copy of Exhibit 7 is attached hereto as **Exhibit A** and incorporated herein by reference.  The real property listed on Exhibit A is referred to herein as the ***"Disputed Real Property"*** and the trust or trusts that DGFM alleges it holds the Disputed Real Property in are referred to herein as the ***"Disputed Real Property Trusts"***.

19.     In Exhibit A, DGFM contends the tax assessed value of the Disputed Real Property exceeds $70,000,000.

20.     **The Gergen Trust.**  Prior to this death, Father Gergen created a testamentary trust (the ***"Gergen Trust"***) consisting of, among other things, an investment portfolio and mineral rights.  A true copy of the Gergen Trust is attached hereto as **Exhibit B** and incorporated herein by reference.  Pursuant to the express language of the Gergen Trust, Father Gergen made an absolute and unrestricted transfer of the residual assets of the Gergen Trust to DGFM.

21.     Notwithstanding the absolute transfer of the assets of the Gergen Trust, DGFM purports to hold the assets transferred to it from the Gergen Trust, in trust for the "Gergen Beneficiaries".  The Committee is informed and believes that the Gergen Beneficiaries include the following unincorporated parishes: (i) Holy Rosary Parish, Billings, Montana; (ii);

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

Our Lady of Lourdes Parish, Great Falls, Montana; and (iii) Holy Family Parish Great Falls

Montana.

         22.    Schedule B, Personal Property, to DGFM's Schedules of Assets and

Liabilities, indicates that DGFM holds legal title to certain cash and investment accounts relating

to the Gergen Trust which it holds for the benefit of others and therefore does not constitute

property of the estate (**"*Disputed Gergen Trust Property*"**).  The Disputed Gergen Trust

Property is listed on exhibits 1 and 3 to the Schedules and includes the following personal

property:

> RBC Wealth Management – Gergen Estate Trust Fund - Stocks
> Held in Trust fbo Gergen Beneficiaries
> Approx Value: $1,086,467.45
>
> Federal Farm Credit Bank
> RBC Wealth Management – Gergen Estate Trust Fund - Bonds
> Held in Trust fbo Gergen Beneficiaries
> Approx Value: $368,763.35
>
> Checking – Msgr E. Gergen Estate Account
> FBO Gergen Beneficiaries
> U.S. Bank
> Approx Value: $16,221.09

         23.    **<u>The Deposit and Loan Fund.</u>**  Schedule B, Personal Property, to

DGFM's Schedules of Assets and Liabilities, indicates that CASC owns certain cash and

investment accounts for the "benefit of D&L Fund" and which does not constitute property of

the estate.  This personal property is listed on exhibits 1 and 3 to the Schedules and includes the

following personal property which the Committee is informed and believes is commonly referred

to as the Deposit and Loan Fund:

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

U.S. Bank Trust Stocks
Diocese of Great Falls-Billings Capital Asset Support Corporation ("CASC") Fund
Owned by CASC for Benefit of D&L Fund-- Approx Value: $7,334,487.50.

CASC - Catholic United Investment Trust International Equity Fund
Approx Value: $1,221,685.87

CASC – Catholic Extension Mission Diocese Fund
Mission Diocese Fund, LLC
Approximate Value: $667,577.92

U.S. Bank Trust Bonds and Notes
Diocese of Great Falls-Billings CASC
Owned by CASC for Benefit of D&L Fund
Approx Value: $4,325,726.50

Checking – CASC
Juridic Persons Deposit and Loan Account Owned by a Separate Incorporated Entity U.S. Bank
Approx Value: $2,489,507.44

24.     In response to Question 21 on its Statement of Financial Affairs, DGFM contends that cash accounts valued at $2,508,089.29 (listed on Exhibit 1) and investment accounts valued at $15,004,708 (listed on Exhibit 3) are held or controlled by DGFM but owned by other entities.

25.     **Restricted Funds.**  DGFM contends that that "U.S. Bank Stock" valued at $2,096,258.06  and "U.S. Bank-Bonds valued at $1,001,048.20 are "Permanently Restricted Funds" which it refers to as the Seminary Burse Fund and the Cemetery Care Funds. Schedule A/B Part 4, 14.1 and 16.1.

26.     The Committee is informed and believes that the original source of funding for the Cemetery Care Funds and the Seminary Burse Fund (and potentially the Seminary Exigency Fund which appears to be related to the Seminary Burse Fund) may not have been restricted to the uses DGFM contends (collectively the ***"Purported Restricted Funds"***).

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

27.     The Committee is informed and believes that these funds were not consistently segregated from unrestricted funds, but instead were commingled in bank and brokerage accounts with unrestricted cash and financial assets of DGFM.

### DGFM'S FRAUDULENT TRANSFERS
### FROM ITS DEPOSIT AND LOAN FUND TO CASC

28.     Until late 2016, DGFM owned legal title to, and operated and maintained the Diocese of Great Falls-Billings Deposit and Loan Fund (the **"DLF"**).

29.     The DLF consisted of both operating accounts containing cash and investment accounts containing stocks, bonds and other financial assets.

30.     The Committee is informed and believes that of the funds in the DLF were initially deposited into the operating accounts (by Parishes and others affiliated with DGFM and that purport to have an interest in the DLF) where the funds were immediately commingled with DGFM's unrestricted cash before any transfers were made from the operating accounts into the investment accounts purportedly on behalf of the Parishes.

31.     The Committee is informed and believes that the timing of these periodic transfers from the operating accounts into the investment accounts were unrelated to when cash was deposited into the operating accounts but rather were entirely driven by liquidity and cash management needs of DGFM.

32.     In the fall or summer of 2016, DGFM transferred cash and investment assets from its DLF valued at $11,381,733 to CASC without receiving consideration.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

33.     On December 12, 2016, DGFM transferred $500,000 from its DLF checking account to the CASC without receiving consideration.

34.     In the early part of 2017, DGFM transferred assets valued at $642,665.59 from its DLF to CASC without receiving consideration.

35.     In the early part of 2017, DGFM transferred assets valued at $1,164, 871.90 from its DLF to CASC without receiving consideration.

36.     In the early part of 2017, DGFM transferred assets valued at $1,808,057 from its DLF to CASC without receiving consideration.

37.     The transfers identified in paragraphs 29 to 33 herein are hereafter referred to as the *"CASC Transfers"*.

38.     DFMG was insolvent at the time the CASC Transfers were made or became insolvent as a result of the transfers.

39.     DGFM owned all legal and beneficial interests in all assets in the DLF at the time the assets were transferred to CASC.

## DGFM'S CORPORATE STRUCTURE

40.     The Roman Catholic Bishop of Great Falls is incorporated under Montana law as a "Corporation Sole". The Bishop holds legal title to all real and personal property of DGFM, including the property of the Parishes. DGFM acknowledges that its Parishes do not hold title to real property in its Policies Relation to Temporal Matters-Diocese of Great Falls-Billings ("*Policies*") at 2. True copies of relevant Portions of DGFM's Policies are attached hereto as **Exhibit C** and incorporated hereto by reference.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

41.     No parish may enter into contracts, leases or other legal instruments. (Policies at 31).

42.     The Disputed Real Property is owned by the Roman Catholic Bishop of Great Falls Montana. (Policies at 21).

43.     The Parishes are not legal persons or entities and have no separate legal existence from DGFM.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief: The Parishes are not separate legal persons or entities and cannot hold title to property or be the beneficiaries of a trust)**

44.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 43 above as if fully set forth here.

45.     The Committee contends that the Parishes cannot hold legal title to property or be the beneficiaries of a trust and that all of the Disputed Real Property is property of the estate under section 541(a) of the Bankruptcy Code.

46.     Defendants claim, or may claim, that each of the Parishes may hold title to property or be the beneficiary of a trust and that the Disputed Real Property is not property of the estate under section 541(a) of the Bankruptcy Code.

47.     An actual controversy exists with respect to whether the Parishes may hold title to property or be the beneficiaries of a trust and whether the Disputed Real Property is property of the estate.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## SECOND CLAIM FOR RELIEF

### (Recovery of Disputed Real Property pursuant to 11 U.S.C. §§541(a)(1), 542, and 544(a) and MCA § 72-38-505(1)(b))

48.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 47 above as if fully set forth here.

49.     The Committee is informed and believes that DGFM is the settlor of the Disputed Real Estate Trusts in which DGFM contends the Parishes are beneficiaries.

50.     DGFM is a beneficiary of the Disputed Real Estate Trusts it allegedly created for the benefit of the Parishes because, among other things, the assets in the Disputed Real Estate Trusts are held for and may be distributed for the benefit of DGFM and the purpose of the trusts are to fulfill DGFM's corporate purpose, programs and administration.

51.     Under Montana law (MCA section 72-38-505(1)(b)) the property of a trust is subject to the claims of the settlor's creditors to the extent the assets of the trust can be distributed for the settlor's benefit.

52.     Section 544 (a) of the Bankruptcy Code and the Order Conferring Standing give the Committee, on behalf of DGFM's estate, all of the rights and powers of a judgment creditor of DGFM and/or a creditor that extends credit to DGFM on the Petition Date, and obtains on the Petition Date, an execution against DGFM that is returned unsatisfied.

53.     Pursuant to section 544(a) and the Order Conferring Standing, the Committee has all of the rights and powers of the creditor referred in MCA section 72-38-505(1)(b).  Therefore, all of the Disputed Real Property purportedly held in the Disputed Real Property Trusts is subject to the claims of the Committee on behalf of the DGFM estate.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

54. All of the Disputed Real Property constitutes property of the estate under section 541(a) of the Bankruptcy Code.

55. DGFM, as trustee of the Disputed Real Estate Trusts must turn over the Disputed Assets to DGFM's estate under section 542(a) of the Bankruptcy Code.

## THIRD CLAIM FOR RELIEF

**(Declaratory Relief: The Disputed Real Property Trusts are void under the doctrine of merger and the Disputed Real Property is property of DGFM's estate pursuant to 11 U.S.C § 541(a)(1))**

56. The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 55 above as if set forth here.

57. Under the doctrine of merger, a valid trust cannot exist where, as here, the same person (DGFM) is both the sole trustee and beneficiary of the Disputed Real Property Trusts. (MCA section 72-38-402(1)(e)).

58. The Committee contends that the Disputed Real Property Trusts purportedly created by DGFM for the benefit of its Parishes are void under the doctrine of merger and that all Disputed Real Property is property of the estate.

59. Defendants claim, or may claim, that the Disputed Property Property Trusts DGFM purportedly created are valid and the Disputed Real Property is held in trust for the Parishes.

60. An actual controversy exists with respect to the whether the Disputed Property Trusts are void under the doctrine of merger and whether the Disputed Property is property of the estate.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## FOURTH CLAIM FOR RELIEF

**(Declaratory Relief: Disputed Real Property, Disputed Gergen Trust Property and assets of CASC are property of the estate)**

61.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 60 above as if set forth here.

62.     The Committee contends that the Disputed Real Property, the Disputed Gergen Trust Property and the assets of the CASC are, in fact, property of DGFM's estate free and clear of the interests of any other person.

63.     Defendants claim, or may claim, an interest in certain of the Disputed Real Property, the Disputed Gergen Trust Property and the assets of CASC.

64.     An actual controversy exists with respect to the interests of the estate in the Disputed Real Property, the Disputed Gergen Trust Property and assets of CASC.

## FIFTH CLAIM FOR RELIEF

**(Declaratory Relief: The Purported Restricted Funds are unrestricted property of the estate)**

65.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 64 above as if set forth here.

66.     The Committee contends that the Purported Restricted Funds are, in fact, unrestricted assets of DGFM's estate which may be used to pay the claims of its creditors.

67.     Defendants claim that the Purported Restricted Funds are permanently restricted assets of the DFGM estate and are not subject to the claims of general creditors.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

68.     An actual controversy exists with respect to the interests of the estate and

its creditors in the Purported Restricted Funds.

### SIXTH CLAIM FOR RELIEF

**(Avoidance pursuant to 11 U.S.C. § 544(a)(3))**

69.     The Committee repeats and realleges each of the allegations contained in

paragraphs 1 through 68 above as if set forth here.

70.     All unrecorded interests in the Disputed Real Property would be voidable

by a bona fide purchaser of such real property who properly perfected such purchase at the time

of the commencement of this bankruptcy case.

71.     Pursuant to 11 U.S.C. section 544(a)(3) and the Order Conferring

Standing, the Committee has the rights and powers of a bona fide purchaser of real property as of

the Petition Date and therefore, the estate may void all unrecorded interests in the Disputed Real

Property, including any unrecorded interests that beneficiaries of the Disputed Real Property

Trusts may assert.

72.     All unrecorded interests in the Disputed Real Property are voidable

pursuant to 11 U.S.C. section  544(a)(3).

### SEVENTH CLAIM FOR RELIEF

**(Quiet Title)**

73.     The Committee repeats and realleges each of the allegations contained in

paragraphs 1 through 72 above as if set forth here.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

74.     The Committee is informed and believes that none of the alleged beneficial interests of Parishes, or any of them, in the Disputed Real Property were identified in the vesting deeds granted to DGFM.

75.     None of the alleged beneficial or equitable interests of the Parishes, or any of them, in the Disputed Real Property were created, transferred or declared by an instrument in writing and subscribed by the party creating, transferring or declaring the interest.

76.     The Committee is informed and believes that no notice of the alleged beneficial or equitable interests of the Parishes, or any of them, in the Disputed Real Property is recorded in the real estate records maintained in any county of the State of Montana.

## EIGHTH CLAIM FOR RELIEF

### (Declaratory Relief: The Disputed Gergen Trust Property is property of DGFM's estate under 11 U.S.C. § 541(a)(1))

77.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 76 above as if set forth here.

78.     Pursuant to the express language of the Gergen Trust, Father Gergen made an absolute and unrestricted transfer of assets to DGFM.

79.     The Committee contends that the Disputed Gergen Trust Property is property of DGFM's estate free and clear of the interests of any other person.

80.     Defendants, including the Gergen Beneficiaries, claim, or may claim, an interest in the Disputed Gergen Trust Property.

81.     An actual controversy exists with respect to the interests of the estate in the Disputed Gergen Trust Property.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

DOCS_SF:94981.4 18488/002

## NINTH CLAIM FOR RELIEF

### (Avoidance and Recovery of CASC Transfers Pursuant to
### 11 U.S.C. §§ 544(b) and 550, and Montana Code § 31-2-333 (1)(a))

82.     The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1 through 81 above as if fully set forth here.

83.     DGFM made the CASC Transfers with the intent to hinder, delay, or

defraud DGFM's creditors, including, but not limited to,  the plaintiffs who filed the Sex Abuse

Cases (the "*Sex Abuse Plaintiffs*") and other sex abuse survivors who had (and still have) claims

against ADOM for sexual abuse.

84.     DGFM's creditors' claims arose either before or after the CASC Transfers

were made, including, but not limited to, Sex Abuse Plaintiffs that were pending against DGFM

in 2016 when DGFM made the CASC Transfers to CASC.

85.     The Sex Abuse Plaintiffs hold unsecured claims that are allowable under

11 U.S.C. section 502.

86.     The CASC Transfers are avoidable pursuant to 11 U.S.C. section 544(b)

and Montana Code section 31-2-333(1)(a).

87.     CASC was the initial transferee of the CASC Transfers.

88.     DGFM's estate is entitled to recover the CASC Transfers, or the value

thereof, pursuant to 11 U.S.C. section 550.

## TENTH CLAIM FOR RELIEF

### (Avoidance and Recovery of CASC Transfers Pursuant to 11 U.S.C. §§ 544(b)
### and 550, and Montana Code §§ 31-2-333(1)(b) and 31-2-334(1))

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

89.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 88 above as if set forth here.

90.    DGFM did not receive reasonably equivalent value in exchange for making the CASC Transfers to CASC  because the CASC did not provide DGFM with any consideration whatsoever for the CASC Transfers.

91.    At the time of the CASC Transfers, DGFM (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of DGFM were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that DGFM would incur debts beyond its ability to pay as they became due.  Among other things, DGFM's liabilities were greater than its assets due to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs at the time the CASC Transfers were made by DGFM.

92.    DGFM's creditors' claims arose before the CASC Transfers were made, including, but not limited to, the Sex Abuse Plaintiffs.  The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C.  section 502.

93.    The CASC Transfers are avoidable pursuant to 11 U.S.C. section 544(b) and Montana Code sections 31-2-333(1)(b) and 31-2-334(1))).

94.    CASC was the initial transferee of the CASC Transfers.

95.    DGFM's estate is entitled to recover the CASC Transfers, or the value thereof, pursuant to 11 U.S.C. section 550.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## ELEVENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Subsequent Transfers
Prior to the Petition Date Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)**

96.     The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1 through 95 above as if fully set forth here.

97.     DGFM did not receive reasonably equivalent value in exchange for the

CASC Transfers to CASC  because CASC did not provide DGFM with any consideration

whatsoever for the CASC Transfers.

98.     DGFM: (a) was insolvent, or became insolvent as a result of the CASC

Transfers; (b) was engaged in or was about to engage in a business or a transaction for which its

remaining assets were unreasonably small in relation to the business or transaction; or (c)

intended to incur, or believed or reasonably should have believed that it would incur, debts

beyond its ability to pay as they became due.

99.     DGFM was insolvent because its liabilities were greater than its assets.

This insolvency was due in part, to the claims of sex abuse survivors including, but not limited

to, the Sex Abuse Plaintiffs.

100.    The CASC Transfers are avoidable pursuant to 11 U.S.C. section

548(a)(1)(B).

101.    CASC was the initial transferee of the CASC Transfers.

102.    DGFM's estate is entitled to recover the CASC Transfers, or the value

thereof, pursuant to 11 U.S.C. section 550.

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

## TWELVTH CLAIM FOR RELIEF

### (Avoidance and Recovery of CASC Transfers
### Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)

103.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1through 102 above as if fully set forth here.

104.    DGFM made the CASC Transfers with the intent to hinder, delay, or defraud DGFM's creditors, including, but not limited to, the Sex Abuse Plaintiffs and other sex abuse survivors who had (and still have) claims against ADOM for sexual abuse.

105.    The CASC Transfers are avoidable pursuant to 11 U.S.C. section 548(a)(1)(A).

106.    CASC was the initial transferee of the Subsequent Transfers.

107.    DGFM's estate is entitled to recover the Subsequent Transfers made within the two years prior to the Petition Date, or the value thereof, pursuant to 11 U.S.C. section 550.

**WHEREFORE**, the Committee prays for judgment as follows:

1.    Declaring that the Parishes may not hold title to property or be the beneficiaries of a trust; and that the Disputed Real Property is property of the estate;

2.    For turnover of the Disputed Real Property to the DGFM chapter 11 estate;

3.    Declaring that the Disputed Real Property Trust is void and unenforceable under the doctrine of merger and the Disputed Real Property is property of DGFM's estate;

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

4.      Declaring that the Disputed Real Property, the Disputed Gergen Trust Property and the assets of the CASC are property of the estate;

5.      Declaring that the Purported Restricted Funds are unrestricted assets of the estate available to satisfy the claims of general creditors;

6.      Declaring that the unrecorded interests of the Parishes in the Disputed Real Property are void pursuant to 11 U.S.C. § 544(a) (3);

7.      Declaring that any interests in the Disputed Real Property that were not created, transferred or declared in the deed or instrument transferring the Disputed Real Property to DGFM  or recorded in the appropriate county real estate records are void and DGFM may transfer the Disputed Real Property free of any such interests;

8.      That the CASC Transfers are avoidable and recoverable by the estate as fraudulent transfers pursuant to Sections 544, 548 and 550, of the Bankruptcy Code, and Montana Code sections 31-2-333 and 31-2-334;

9.      That the DGFM bankruptcy estate is entitled to recover the CASC Transfers or the value thereof, in an amount to be determined, pursuant to Section 550 of the Bankruptcy Code;

10.     For prejudgment interest; and

11.     For such other and further relief as the Court may deem just and proper.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

Dated: _____, 2017

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By _____

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Ilan D. Scharf (NY Bar No. 4042107)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Facsimile:   (310) 201-0760
E-mail:    jstang@pszjlaw.com
              kbrown@pszjlaw.com
              ischarf@pszjlaw.com

Attorneys for the Official Committee of
Unsecured Creditors

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**