**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| **In re**<br><br>**ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA, A MONTANA RELIGIOUS CORPORATE SOLE** (Diocese of Great Falls),<br><br>   **Debtor.** | Case No. 17-60271-11 |

**MEMORANDUM of DECISION**

In this chapter 11[1] case, on February 1, 2018, the attorneys for the Official Committee of Unsecured Creditors ("the Committee"), Pachulski Stang Ziehl & Jones LLP ("Counsel"), filed a First Interim Application for Professional Fees and Costs ("Application").[2] Dkt. No. 285. In the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.

[2] Interim fee awards are authorized by § 331 and this Court has historically allowed interim payments to estate professionals to alleviate

MEMORANDUM OF DECISION – 1

Application, Counsel seeks approval of an interim award of compensation of $353,614.50, and reimbursement of expenses of $29,755.65, for representing the Committee. After notice to interested parties, no responses or objections to the Application were filed. Having reviewed the Application, and based upon the Court's familiarity with the record and status of this case, the Court concludes that it should approve interim compensation and expenses for Counsel. However, because the record does not support it, the Court declines, at least at this time, to award the full amount of interim compensation requested in the Application.

The Court's principal concerns with approving the full amounts requested in the Application revolve around the rates charged by Counsel for the services provided. The Application seeks compensation for the services of lawyers in Counsel's firm at rates ranging from $325 (for travel

---

any potential economic hardship and to facilitate and encourage competent, but efficient, administration of complicated cases. Interim fee awards, however, are by definition interlocutory; they not a final adjudication concerning the propriety or amount of compensation. *See, e.g., In re Callister*, 673 F.2d 305, 307 (10th Cir. 1982); *In re Columbia Plastics, Inc.*, 251 B.R. 580, 590 (Bankr. W.D. Wash. 2000). That is the case here.

MEMORANDUM OF DECISION – 2

time) to $650 per hour for the most experienced lawyers, with the bulk[3] of the attorneys' time billed at that higher rate. In addition, Counsel seeks approval for non-attorney[4] services at rates that range from $150 to $350 per hour. Put simply, the record before the Court at this stage of this chapter 11 case does not support such rates.

The Court's willingness to closely examine interim attorney compensation rates should come as no surprise to Counsel. Indeed, at the time Counsel originally proposed the rates when Counsel applied for approval of its employment by the Committee, the Court attempted to highlight its concerns. In the order entered on May 8, 2018 approving Counsel's employment, Dkt. No. 97 (the "Retention Order"), the Court sought to make it clear that:

> **[B]y execution and entry of this Order, this Court has NOT**

---

[3] The Application requests an award of fees based upon 620.40 hours of professional services consisting of 461.70 hours for attorneys billed at the rate of $650.00 per hour, 76.70 hours billed for those same attorneys' travel time at $325.00 per hour, 36.90 hours billed for attorneys at the rate of $450.00 per hour, and 45.10 hours for services performed by non-attorneys

[4] This time is for a "clerk", a research librarian and paralegals.

MEMORANDUM OF DECISION – 3

> **pre-approved the professional's proposed hourly rates for compensation, nor the terms proposed for reimbursement of expenses. All decisions by the Court concerning the reasonableness of professionals' compensation and expenses shall be deferred until the Court considers any fee applications in this case.**

Retention Order at 2, Dkt. No. 97 (emphasis in original). Moreover, at various hearings conducted in this case, the Court has expressed its abiding concerns to Counsel about the rates likely to be proposed for services its services in this case. In this respect, then, the Court feels it has given fair warning to Counsel that any rates of compensation would have to justified to be approved.

While the Application requests interim compensation and reimbursement of expenses as authorized by § 331, Counsel is entitled to an award of compensation and expenses only to the extent that it demonstrates the amounts requested are reasonable. § 330(a)(3). The Court is granted broad discretion in reviewing estate professionals' fee requests under the Code's reasonableness standard.[5] For several reasons,

---

[5] *In re Crown Oil, Inc.*, 257 B.R. 531, 541 (Bankr. D.Mont. 2000).

MEMORANDUM OF DECISION – 4

on this record, the Court lacks the kind of information and factual support necessary to conclude that Counsel's request is a reasonable one. While the Court does not question Counsel's competency, nor that the services provided by Counsel in this case were likely necessary and potentially beneficial to the Committee, under the lodestar method of reviewing fees, whether an hourly rate is reasonable is a question of fact and the burden of proving that an hourly rate is reasonable falls squarely on Counsel.[6]

Though no party has objected, the Court has an independent duty to review the reasonableness of any requested compensation by estate professionals. *In re Crown Oil, Inc.*, 257 B.R. at 537. However, the process of reviewing a fee request of this size was is complicated because the Court has not had the benefit of any sort of response to the Application from the U.S. Trustee ("UST"). Under 28 U.S.C. § 586(a)(3), Congress instructed the UST, when appropriate, to file comments with the Court

---

[6] The "lodestar" method multiplies a reasonable number of hours by a reasonable hourly rate to calculate a professional's fees. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc. (Puget Sound)*, 924 F.2d 955, 960 (9th Cir. 1991).

MEMORANDUM OF DECISION – 5

respecting estate professional fee applications in chapter 11 cases. Given the large amounts requested by Counsel, the Court is unaware of any reason why such UST comments would not be appropriate here; the Court is not inclined to accept the UST' silence as an indication of support for a fee application. In addition, in the Court's opinion, Counsel and the parties in this case are entitled to know what the position of the UST is concerning the compensation it requested in the Application. Absent a thoughtful response from the entity designated by Congress to monitor professional compensation in bankruptcy cases, the Court is reluctant to simply grant the Application for the full amount requested.

In addition, the Ninth Circuit has instructed that a trial court may rely on its own knowledge of reasonable and proper fees in determining the reasonableness of attorney's fees. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (explaining that a trial court "may rely on its own familiarity with the legal market" *citing*, *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988) (courts are experts as to the reasonableness of attorney fees and award may be based on court's own

MEMORANDUM OF DECISION – 6

experience); *In re U.S. Golf Corp.*, 639 F.2d 1197, 1207 (5th Cir.1981) (same)). The rates requested by Counsel for attorney and non-attorney services here are higher than this bankruptcy judge has, in its 28-years of experience, approved. Of course, that these rates amount to new highs for a particular bankruptcy judge is not a reason, standing alone, to reject them. The Court appreciates that this is a complex case raising difficult issues. The Application also represents that Counsel's rates are in line with those it has charged in other bankruptcy cases for similar services. Even so, on this record, the Court lacks the kind of factual basis to conclude those rates are appropriate here.

While Counsel has not provided an adequate record to support its rates, there is other evidence in the record to show what a reasonable rate in this case may be. The Court notes that Debtor's counsel is providing similar attorney services for its client in this case concerning the very same projects and issues described in the Application at rates of $325.00 to $375.00 per hour. To the Court, the rates charged by other highly competent attorneys in the same case, as compared to those charged by

MEMORANDUM OF DECISION – 7

Counsel, should not be ignored.

While the rates for Counsel's attorney services are high, the Court is frankly astounded by the rates proposed by Counsel for its non-attorney services. The Court is skeptical that a "clerk",[7] paralegals and a "research librarian" can reasonably command compensation from the bankruptcy estate at rates of $255 to $350 per hour. Again, these rates are nearly double those charged for similar services by other estate professionals in this and other cases in this District.[8] To finally approve such rates, the Court will require substantially more information about the credentials of these "non-attorneys" to justify such rates.

---

[7] This sort of nondescript reference in the Application renders the Court unable to determine the nature of this person's services, what more whether those services are compensable under the Code.

[8] The Montana Bankruptcy Court recently allowed, over the objection of the UST, $110.00 to $160.00 per hour for experienced paralegal services, noting that such paralegal fees were below the rate of $170.00 allowed by the Court in *In re Jore Corporation*, 20 Mont. B.R. 158 (Bankr. D.Mont. 2003). *See In re Red Door Lounge, Inc.*, 2016 WL 563115, at *2–3 (Bankr. D.Mont. 2016). But even those rates required a demonstration that they were reasonable in light of the nature of, and the qualifications of the persons providing the services in those cases.

MEMORANDUM OF DECISION – 8

The Court also notes that the vast bulk of the attorney services itemized in the Application were performed by those lawyers with the highest hourly rates. Because of this, while it can not be sure on this record, the Court might assume that the attorneys supervising this project have not appropriately delegated responsibility to the firm's lawyers charging lower hourly rates. In addition, in several instances, more than one of Counsel's attorneys provided services at the same time. These practices may be justified by facts not known to the Court. On the other hand, they may reflect a lack of "billing judgment" as required by the Code in this context. *Puget Sound*, 924 F.2d at 959.

Finally, the Court is reluctant to award compensation at the high rates requested by Counsel at this stage of the chapter 11 case without a more thoughtful consideration of the potential impact of that decision on the interests of the other parties, including the creditors. While the benefits of any chapter 11 case come at a cost to the parties, in cases like this one, estate funds used to compensate attorneys will inevitably reduce amounts available to fund plan payments to creditors, and in particular, the abuse

MEMORANDUM OF DECISION – 9

claimants. All the parties, including Counsel, have repeatedly emphasized to the Court that payment of the abuse victims' claims is the singular, most critical purpose for this chapter 11 filing, and that confirmed reorganization plan is preferable to the delay and cost to the parties of state court litigation. But a confirmed plan will be difficult to achieve if estate funds are consumed by administrative expenses. Candidly, the Court harbors doubts that this reorganization can successfully proceed if estate professionals' fees are approved at the rates requested by Counsel, something that the Court would certainly expect Counsel to understand. At bottom, a decision by the Court about Counsel's hourly rates deserves more attention by the parties and the Court than has occurred here.

In sum, to be approved, Counsel must prove to the Court that its requested amounts of compensation are reasonable. That proof has not been offered at this point. While Counsel should – and will be– afforded a full opportunity at the appropriate time to support its fee request (if it can), the Court elects to defer a decision about those rates until, hopefully, the Court can properly consider the relationship between the total amounts of

MEMORANDUM OF DECISION – 10

compensation requested by Counsel in comparison to the compensation requested and awarded to all estate professionals, and to the outcomes on the important issues in this case. While Counsel may ask the Court to reconsider its interim decision at that time, the Court would expect that request to be supported by an adequate, persuasive record, and that the request be addressed in an appropriate response by the UST.

Accordingly, in the exercise of its discretion, the Court elects to make an interim award of compensation and to approve payment to Counsel of $225,000. This amount was very roughly computed by reference to the hourly rates for attorneys and non-attorneys comparable to those requested by and approved for the other similarly-skilled estate professionals. It is also deemed to be a reasonable amount based upon the record, and based upon this Court's experience as a bankruptcy judge. Counsel may seek additional amounts for compensation for the services reflected in the Application, provided it can factually support them, in connection with its final fee application in this case.

Counsel's request for reimbursement of expenses of $29,755.65 will be

MEMORANDUM OF DECISION – 11

approved for payment, also on an interim basis, at this time.

    A separate order will be entered.

Dated: March 8, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 12