Ford Elsaesser, ISB #2205
Bruce A. Anderson, ISB #3392
ELSAESSER ANDERSON, CHTD.
Attorneys at Law
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID  83815
Tel:     (208) 667-2900
Fax:     (208) 667-2150
Email ford@eaidaho.com
          brucea@eaidaho.com

Attorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT<br>
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | |
| | Case No. 17-60271 |
| Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporate Sole (Diocese of Great Falls), | Chapter 11 |
| Debtor-In-Possession. | |

**MOTION FOR AUTHORIZATION TO ENTER INTO LEASE OPTION TO SELL REAL PROPERTY (VILLA APARTMENTS), AND NOTICE**

**TO: CREDITORS AND PARTIES OF INTEREST:**

The Roman Catholic Bishop of Great Falls, Montana, a Religious Corporate Sole (Diocese of Great Falls) ("Diocese"), Debtor-in-Possession herein, proposes to enter into a lease option to sell certain real property known as "Villa Apartments."

**I.  SUMMARY OF RELIEF REQUESTED**

The Diocese is proposing to enter into a lease option to sell the property known as the Villa Apartments.  The Debtor will receive $200,000 in nonrefundable option money on or before July 15, 2018, which will be credited against the $1,550,000 total purchase price. The initial option is for 365 days, with each 2 additional options to extend for an additional six month

period each.  The option may be extended for two six month periods, each by the payment of an additional $100,000 in nonrefundable consideration.  The property will be sold "as is."

During the course of the option the buyer shall take possession of the property pursuant to a lease, beginning July 1, 2018 or when approved by the Court, which will run concurrent with the option periods, i.e., beginning July 1, 2018 for one year, and then if the option is extended, for one or two six month option periods as appropriate.  The lease rate shall be $4,000 per month beginning with the fifth month.  Lease payments shall not apply to the purchase price.

The operating expenses for the lease period shall be paid as set forth in Page 2 in the Option to Purchase.  With the exception of real estate taxes, the optionee/tenant is responsible for insurance, utilities, and any necessary repairs or improvements.

Should the option be exercised, the date of closing shall be thirty (30) days from the date of exercise of the buyer's option to purchase the property as set forth in the Option to Purchase.

The purchaser is an independent party by the name of Langstan Management LLC., which is an entity unrelated to the Debtor.

The option proceeds and net proceeds from the sale of the Villa Apartments will be deposited into the debtor-in-possession operating account, as this asset is owned by the Diocese, and will not be used without further order of the Court.

## II.  AUTHORITY FOR RELIEF REQUESTED

The Diocese seeks the relief contained in this Motion under the provisions of 11 U.S.C. § 363(b)(1), F.R.B.P. 6004 and Montana Local Bankruptcy Rule 6004-1.  The Diocese is seeking Court approval because the transactions proposed are outside the normal, and usual, ordinary course of business of the Diocese.

For the reasons explained hereinafter, the Diocese believes that the transactions sought to be approved hereunder, collectively referred to as the lease option for sale of the "Villa Apartments" are in the best interest of the Creditors of the Diocese.

### III.  FACTUAL BACKGROUND

The Diocese proposes to sell the Villa Apartments real property via lease option.  The Diocese will receive the entire purchase price net proceeds if sold, as well as the option proceeds if not sold.  The Villa Apartments are an asset of the Diocese, and not of a parish.

The Villa Apartments are a 58 unit apartment property.  There are two large parcels with 11 two-story apartment buildings, which were built in 1953.  The apartments are now vacant. The total land area is 99,277 square feet, and the total gross building area is 49,920 square feet.

The Diocese has been challenged by the sheer management and costs associated with the ongoing holding and maintenance of the Villa Apartments.  As an example, the Diocese has found itself short staffed on the grounds crew as to maintaining the exterior facilities of the Villa Apartments.  Previously, the University of Great Falls had used this property for student housing for the last 30 to 40 years.  The University of Great Falls constructed replacement student housing on the campus last year, and ceased utilizing this property as student housing last fall. The property was then turned back to the Diocese.  The Diocese has never had the sufficient staffing needed to fully and properly maintain the Villa Apartments property.  In addition to maintenance, there are substantial costs outlaid for a security company to patrol the area to reduce the chances of break-ins, and power needed to be restored to the facility though the winter months.

## IV. SALES EFFORTS

The initial asking price of the property, which was $1,800,000.00, was determined from an appraisal done by McKay Rowen Associates on January 16, 2017. Summary Appraisal Pages are attached as Exhibit B.

The property was advertised, with an open offer period of 60 days beginning on May 22, 2017. Matt Robertson did a nationwide "blast" to make sure that the property was visible to as much of an audience as possible. The first offer received was in the amount of $1,850,000. That purchaser did not know the procedure for soliciting offers was an open bidding procedure, and conditioned its bid on bidding closing on or before June 30, 2017, or it would withdraw its offer. Five qualified offers were received in the amounts of $1,777,779, $1,850,000, $1,425,000, $1,007,000 and $1,860,000, with the offer presented of $1,860,000 being the accepted offer. In mid June of 2017 Matt Robertson contacted all of the prospective purchasers and asked if they would like to increase their offer; more particularly the offers for $1,777,779, and $1,850,000, and both declined to make higher offers. It was then determined that the offer of $1,860,000 was to be accepted, subject to Bankruptcy Court approval. This offer was submitted and was approved by the Court, but the buyer later terminated the agreement due to various problems with the property and after inspection. On February 2, 2018 at Docket No. 287, the second proposed purchaser terminated sale of the property as it was determined that asbestos has been found and that removal has been estimated at $650,000. Accordingly, the offer now proposed is considered the next superior offer.

## V. BEST INTEREST OF CREDITORS OF THE ESTATE

Based on the marketing efforts of NAI Business Property as set forth in the marketing report, it is believed that the proposed purchase price of $1,550,000 is the highest and best offer that can be received and the lease option with nonrefundable moneys makes sense;. since the

MOTION FOR AUTHORIZATION TO ENTER
INTO LEASE OPTION TO SELL REAL PROPERTY
(VILLA APARTMENTS), AND NOTICE - 4

carrying cost of this property are so high and demands much labor, which the Diocese has not budgeted for this property, it is believed that the lease option sale and transfer of this asset at the earliest available time is also in the best interest of the creditors of this estate.

The lease option proceeds and net sales proceeds will be held in the debtor-in-possession's general operating account, and not be used without further order of the Court.

## VI. SUMMARY OF THE SALE

a)  A legal description of property to be leased or sold, all located in Cascade County, Montana:

> See Exhibit A of the previous Title Commitment Report at Exhibit C.  An updated Title Commitment Report has been requested.

b)  The lease option and/or sale is a private sale to Langstan Management LLC, of what is known as the Villa Apartments, 1801 10th Avenue South, Great Falls, Cascade County, Montana.

c)  Time and Place of Sale:  Debtor-in-Possession intends to close the lease option no later than fifteen (15) days after Bankruptcy Court approval.  Closing shall take place at Chicago Title, 101 River Drive N, Great Falls, Montana, or at another mutually agreeable title company.

d)  Terms of Sale:  Lease Option for 365 days for $200,000, with two extensions for six months at $100,000 each.  Purchase price is $1,550,000.00.  Purchase price shall be full paid at closing, net of option payments which will be credited.

e)  Treatment of Existing Liens:  No liens exist with the exception of unpaid real property taxes up to date of closing, which will be paid at closing, and normal encumbrances of record.  A preliminary title commitment for this sale has been ordered.

f)  Value of Property to be Sold:  Debtor-in-Possession previously estimated the value of the property to be sold at $1,800,000.00.  However, the recent discovery problems with the

property substantially has discounted the estimate to in the range of $1,550,000.00. See the Summary Pages of Appraisal at Exhibit B.

g) Realtor's Commission:   NAI Business Properties and Matt Robertson have been employed as realtor (Docket No. 112).  Per listing agreement, NAI Business Properties is entitled to a commission of 6% of the sales price, or $93,000.00.  NAI Business Properties shall make further application for compensation to be paid out of proceeds of sale.  No commission shall be paid on the option payments.

h) Administrative Costs:  ALL ESTIMATES:  Title insurance and other closing costs are estimated at $10,000.00  and shall be paid at closing and out of proceeds of sale.

i) Authority for Conducting the Sale:  The authorities as stated above include 11 U.S.C. § 363, F.R.B.P. 6004 and Montana Local Bankruptcy Rule 6004-1.

j) A proposed Order is attached as Exhibit D.

WHEREFORE, the Diocese moves the Court enter an Order pursuant to 11 U.S.C. § 363 (b) as follows:

1) Approving the Lease and Option to Purchase agreement; and

2) Approving the sale of the Villa Apartments property to Langstan Management LLC, under the terms and conditions of the Agreement to Sell and Purchase Addendum, and Option to Purchase, attached hereto as Exhibit A.

RESPECTFULLY SUBMITTED this 22 nd day of June, 2018.

ELSAESSER ANDERSON, CHTD.

/s/ Bruce A. Anderson _____
Bruce A. Anderson
Attorney for Debtor-in-Possession

**NOTICE OF OPPORTUNITY TO RESPOND AND REQUEST A HEARING**

**If you object to the relief in this motion or wish the Court reconsider its Order, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule a hearing on the motion at least twenty-one (21) days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:**

**NOTICE OF HEARING**
**Date: _____**
**Time:_____**
**Location:_____**

**If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.**

DATED this 22nd day of June, 2018.

ELSAESSER ANDERSON, CHTD.

*/s/ Bruce A. Anderson* _____
Bruce A. Anderson
Attorneys for Debtor-In-Possession

CERTIFICATE OF SERVICE

I, Bruce A. Anderson, declare as follows:

I am employed by Elsaesser Anderson, Chtd., Coeur d'Alene, Idaho; I am over the age of eighteen years and not a party to this action; the firm's business address is 320 East Neider Avenue, Suite 102, Coeur d'Alene, Idaho 83815.

I certify that on June 22, 2018, I served the foregoing on all ECF participants as indicated on the Court's ECF system.

Additionally, by regular first class mail, I mailed a copy to the parties on the attached MML*, and to confidential claimant C.E.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 22, 2018                       /s/ Bruce A. Anderson
                                           Bruce A. Anderson

* The attached list will not be mailed out to creditors, but will be on file with the United States Bankruptcy Court.  A copy will be provided upon request.

DocuSign Envelope ID: 3ACC897A-E10A-4E77-98E9-701AE47579BF

# AGREEMENT TO SELL AND PURCHASE
### AND RECEIPT FOR EARNEST MONEY
### COMMERCIAL AND INVESTMENT PROPERTIES

Date ___6/20/2018 3:14:32 PM___ PDT

THE EXECUTION OF THIS AGREEMENT HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD SEEK COMPETENT LEGAL ADVICE IF NOT UNDERSTOOD. THIS IS A LEGAL AND BINDING CONTRACT.

**1. PARTIES AND PROPERTY:**

**Langstan Management LLC, with right to assign** _____ Buyer, taking title as:

☐Joint tenants with rights of survivorship,  ☐Tenants in common,  ☐Single in his/her own name,  ☒Other _____

agrees to buy, and the Seller agrees to sell on the terms and conditions set forth in this Contract, the following described real property

in the City of **Great Falls** _____ County of **Cascade** _____ State of **Montana** _____

Property commonly known as: **1801 10th Avenue South** _____

Legal description of the Property: **S07, T20 N, R04 E, IN S/2SESW MK X1-X2** _____

If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of the title company referred to in Section 10.

**2. PURCHASE PRICE AND TERMS:**

The purchase price shall be $ **1,550,000.00** _____ payable in U.S. Dollars by Buyer as follows:

$ **0.00** _____ (A) **Earnest Money** in the form of  ☐Personal Check  ☐Cashiers Check  ☐Other  To be: wire transfer

    ☐1) Held and not deposited until acceptance by all parties. _____

    ☐2) Deposited within 3 business days of acceptance. _____

    Earnest Money to be held by _____  ☐Broker  ☐Attorney  ☐Title Company
    in a trust account on behalf of both Seller and Buyer. Broker is authorized to deliver the earnest money deposit to the closing agent, if any, at or before closing. Parties agree that interest accruing on earnest money, if any, while deposited shall be payable to Broker in consideration for services rendered. The undersigned sales representative hereby acknowledges receipt from Buyer of the above noted Earnest Money. _____

$ **1,350,000** _____ (B) **Cash at closing,** plus Buyer's closing costs, to be paid by Buyer at closing by cashier, certified check or electronic funds.
          **See attached addendum.**

$ _____ (C) Seller to finance Buyer's purchase under the following terms and conditions**:** _____

$ _____ (D) Assumption of Existing Financing: _____

$ **1,550,000** **TOTAL PURCHASE PRICE**

Additional Provisions:  **Offer must be approved by the Bankruptcy Court.** _____

_____

_____

**3. PERSONAL PROPERTY AND FIXTURES:**

The following personal property shall be included in this sale and transferred by Bill of Sale at closing.
                                     **All appliances, full list to be provided by seller prior to**

☐Security Deposits  ☒Signs  ☒Dumpster(s)  ☒  **closing** _____

The following personal property is leased and not included in the sale:
Fixtures: All permanently installed fixtures and fittings that are attached to the Property are included in the purchase price, such as electrical, plumbing, and heating fixtures, built in appliances, attached floor coverings, antennas, coolers or air conditioners,

_____ DS / _____ WW
Buyers Initials          Sellers

EXHIBIT
A

DocuSign Envelope ID: 3ACC897A-E10A-4E77-98E9-701AE47579BF

mailbox, and trees and shrubs, if any, except _____

All personal property and fixtures sold with the Property described above are sold **"AS IS"** without warranty by the Seller, either expressed or implied **NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IS MADE.**

**4. CLOSING AND RELATED PROVISIONS:**

(A) The date of closing shall be ___See attached addendum___ The parties may, by mutual agreement, agree to close the transaction at any time prior to the date specified.  If third party financing is required by the terms of this Agreement (includes assumptions, contracts for deed, and lender financing), the closing shall occur on the date specified or as soon thereafter as financing is complete but no later than ___NA___ days after the stated closing date.  Buyer and Seller will deposit with the closing agent all instruments and moneys necessary to complete the purchase in accordance with this Agreement.

(B) Possession and Keys: Seller shall deliver to Buyer possession of the Property and allow occupancy at the date of closing.

(C) Closing Costs, Documents and Services: Buyer and Seller shall pay their respective closing costs and all other items required to be paid at closing except as otherwise provided herein.  Buyer and Seller shall sign and complete customary or required document at or before closing.  Fees for real estate closing services shall be split equally between the Parties.

(D) Place of closing shall be:  ___Chicago Title___

**5. PRORATION:**

As of the date of closing Seller and Buyer agree to prorate current real estate taxes, pre-paid rents, current year assessments for special improvement debt that is assumed, and interest on any assumed loan(s), as well as: _____

**6. CONTINGENCIES:**

The closing of this agreement and sale of the property between Buyer and Seller is contingent upon the following, with this sale to terminate and earnest money returned to the Buyer if not satisfied in writing on or before ___See attached addendum___

(Check those which apply)

☐ Buyer receipt of any City / County approval for proposed buildings / remodeling and related cost estimates.

☐ Buyer receipt of written City approval for Buyer's use of the property.

☐ Buyer receipt of acceptable Property Inspection.

☐ Buyer approval of preliminary title report including subdivision restrictions and S.I.D.'s, and future S.I.D.'s.

☐ Buyer approval of curb valve inspection report, condition of well & septic system, & of access to water/sewer/gas/elec. services.

☐ Buyer approval of Lead Base Paint, Radon, Asbestos and Mold Reports, and Americans with Disabilities Audit.

☐ Buyer approval of leases, contracts, income/expenses information, and owner's association/condo expense.

☐ Buyer approval of Property Condition and of subsoil conditions, measurements, access, ditches, and of floodplain exclusion.

☐ Buyer approval of:   ☐ Survey   ☐ Corner identification, Paid by   ☐ Buyer   ☐ Seller   ☐ Shared Equally.

☐ Buyer approval of Phase One Environmental Report, Cost paid by   ☐ Buyer   ☐ Seller   ☐ Shared Equally.

☐ Buyer closing of exchange property.

☐ Both parties attorney and accountant approval of this Agreement

☐ Buyer receipt of acceptable loan commitment.

☐ _____

Buyer agrees to diligently pursue each contingency checked.  If Buyer shall fail to notify its Broker, Seller, or Seller's Broker, in writing, by the date noted above that the contingencies checked have not been satisfied then it shall be conclusively presumed that the Buyer has waived those contingencies for which no notice has been given.  If Buyer, after due diligence, shall timely Notify Seller, Buyer's Broker or Seller's Broker, in writing, of a deficiency, then in such event this Agreement shall terminate, and Buyer shall be entitled to prompt return of Buyer's Earnest Money deposit, less escrow holder or title cancellation fees

The Seller shall have the option of:

a) Making said items operational

b) Giving the Buyer(s) a credit for the items, or

c) Canceling the Agreement to Sell and Purchase and refunding to the Buyer(s) any Earnest Money deposit or similar payments previously made to Seller.

Should Seller cancel the Agreement because of environmental condition, then Seller ☐ shall, ☒ shall not pay, or reimburse Buyer for the cost of the Phase One Environmental Audit

Page 2 of 6

_____DS_____ / _____DS_____
Buyers initials      Sellers initials

**7. CONDITION OF PROPERTY AND RELATED ISSUES:**
Seller agrees that the Property shall be in the same condition, broom clean, normal wear and tear excepted, from the date of the execution of this Agreement up to the time Buyer takes possession of the Property. Seller has no knowledge of any notice of violations of City, County, State, Federal, Building Zoning, Fire, Health Codes or ordinances, condemnation, hazardous waste, underground storage tanks, special improvement districts or other governmental regulation filed or issued against the Property, except noted herein:
**See attached addendum**

If the property is damaged by fire, hail, or other casualty prior to time **Buyer takes possession of the property under the attached Option to Purchase**. Seller ☒ shall be, ☐ shall not be obligated to repair the same **before the date of closing**. If such damage is not repaired within said time, this Contract may be terminated at the option of the Buyer and the Earnest Money shall be returned to Buyer. Should Buyer elect to carry out the Contract despite such damage, Buyer shall be entitled to credit for all the insurance proceeds resulting form such damage to the Property and Inclusions, not exceeding, however, the total purchase price. Should any Inclusion(s) or service(s) fail or be damaged between the date of this Contract and the date of closing or the date of possession, whichever shall be earlier, then Seller shall be liable for the repair or replacement of such Inclusion(s) or service(s) with a unit of similar size, age, and quality, or an equivalent credit, less any insurance proceeds received by Buyer covering such repair or replacement. **Buyer agrees to accept property in "AS IS, WHERE IS" condition except as herein provided.**

~~**8. ASSIGNABILITY:**~~
~~This Contract shall not be assignable by Buyer without Seller's prior written consent, which assignment shall not be unreasonably withheld by Seller. Except as so restricted, this Contract shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assigns of the parties.~~

**9. CONVEYANCE:**
Seller shall convey the real Property by   **Warranty Deed**   including all interest of Seller in vacated alleys and streets, easements, other apportionments and improvements free of all liens and encumbrances except those described in the title insurance section of this agreement, and reservations or conveyances of record. All water rights, entitlements, claims, certificates and permits are included with the property, **with any transfer fees split equally.**

**10. TITLE INSURANCE:**
Seller, at Sellers expense, shall furnish Buyer title insurance from   **Chicago Title**   (Title Company) pursuant to a standard form American Land Title Association title insurance commitment in the amount equal to the purchase price, committing to insure merchantable title to the real Property in Buyer's name, free and clear of all liens and encumbrances except: encumbrances hereinabove mentioned, zoning ordinances, building and use restrictions, reservations and exceptions in patents from the United States and the State of Montana, all standard ALTA exceptions, beneficial utility easements apparent or of record, other easements of record, real estate taxes for the year in which closing occurs, Special Improvement Districts (including rural SID's) either noticed to seller by the city / county but not spread, or currently assessed, if any which will be:
☒PAID OFF BY SELLER AT CLOSING          ☐ASSUMED BY BUYER AT CLOSING,

The following loans   **NA**   the following leases   **All Applicable**
should be assigned to Buyer at closing. If the Seller's title is not merchantable and cannot be made merchantable before the stated closing date, 30 ADDITIONAL DAYS SHALL BE ALLOWED FOR THE SELLER TO MAKE SUCH TITLE MERCHANTABLE. If at that time the title is still not merchantable, this Contract may be terminated by Buyer with no penalty, and the earnest money will be returned to Buyer. Encumbrances to be discharged by Seller shall either be satisfied prior to closing or from Sellers' proceeds at time of closing.

**11. TAX DEFERRED EXCHANGE:** (check, where applicable)
☐Buyer herein acknowledges that it is the intention of Seller to create IRC Section 1031 tax deferred exchange and that Seller's rights and obligations under this agreement may be assigned to facilitate such exchange. Buyer agrees to cooperate with Seller in any manner necessary to enable Seller to qualify for said exchange at no additional cost or liability to Buyer, including the execution of an Assignment Agreement.
☐Seller herein acknowledges that it is the intention of Buyer to complete IRC Section 1031 tax deferred exchange and that Buyer may assign his rights and obligations under this agreement for the purpose of completing such exchange. Seller agrees to cooperate with Buyer in any manner necessary in order to complete said exchange at no additional cost or liability to Seller, including the execution of an Assignment Agreement.

**12. STATUTORY DISCLOSURES:**
**METHAMPHETAMINE:** If the property is inhabitable real property, the Seller represents to the best of Seller's knowledge that the Property ☐ has ☒ has not been used as a clandestine Methamphetamine drug lab. If the Property has been used as a clandestine Methamphetamine drug lab Seller agrees to execute and provide any documents or other information that may be required under Montana law concerning the use of the Property

Page 3 of 6

_____ DS   /   _____ DS
Buyers initials              Sellers initials

DocuSign Envelope ID: 3ACC897A-E10A-4E77-98E9-701AE47579BF

as a clandestine Methamphetamine drug lab.

**RADON:**  Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.  Levels of radon that exceed federal guidelines have been found in buildings in Montana.  Additional information regarding radon and radon testing may be obtained from your county or state public health unit.  Buyer acknowledges receipt of a copy of this statement prior to entering into the agreement to sell and purchase – commercial

If the Property is inhabitable real property as defined in the Montana Radon Control Act, Seller(s) represent that to the best of Seller's knowledge the Property ☐ has   ☒ has not been tested for radon gas and/or radon progeny and the Property ☐ has   ☒ has not received mitigation or treatment for the same. If the Property has been tested for radon gas and/or radon progeny, Seller agrees to provide, as available, test results to Broker along with any evidence of mitigation or treatment.

**LEAD-BASED PAINT:  If a residential dwelling exists on the Property and was built before the year** 1978, the Seller ☐ has   ☒ has no knowledge of lead-based paint and/or lead-based paint hazards on the Property. If Seller has knowledge of lead-based paint and/or lead-based paint hazards on the Property Seller agrees to provide all pertinent reports and records concerning that knowledge. Seller acknowledges that the Broker has advised the Seller of Seller's obligation to make lead-based paint disclosures and Broker's obligation to ensure that the Seller satisfies this obligation.

**MOLD:**  If the Property is inhabitable real property as defined in the Montana Mold Disclosure Act the Seller represents to the best of Seller's knowledge that the Property ☐ has   ☒ has not been tested for mold and that the Property ☐ has   ☒ has not received mitigation or treatment for mold. If the Property has been tested for mold or has received mitigation or treatment for mold Seller agrees to provide any documents or other information that may be required under Montana law concerning such testing, treatment or mitigation.

**MEGAN'S LAW:** Pursuant to the provisions of Title 46, Chapter 23, Part 5 of the Montana Code Annotated, certain individuals are required to register their address with the local law enforcement agencies as part of Montana's Sexual and Violent Offender Registration Act. In some communities, law enforcement offices will make the information concerning registered offenders available to the public. If you desire further information please contact the local County Sheriff's office, the Montana Department of Justice, in Helena, Montana, and the probation officers assigned to the area.

**13. TIME OF ESSENCE / REMEDIES:**
Time is of the essence hereof.  If any note or check received as Earnest Money hereunder or any other payment due hereunder is not paid, honored or tendered when due, or if any other obligation hereunder is not performed or waived as herein provided, there shall be the following remedies:
    **(A)** If Buyer is in default: If Seller accepts the offer contained in this Agreement and Buyer refuses or neglects to consummate the transaction within the time period provided in this agreement, Seller may:
        1) Declare the earnest money paid by Buyer to Broker to be forfeited to Seller as liquidated damages, which sum the parties agree is a reasonable sum, as the actual damages to Seller would be extremely difficult or impractical to ascertain; **or**
        2) Demand that Buyer specifically perform Buyer's duties and obligations under this Agreement; **or**
        3) Demand Buyer pay monetary damages for Buyer's failure to perform the terms of this Agreement.
    **(B)** If Seller is in default: If Seller fails to accept the offer contained in this Agreement within the time period provided, all earnest moneys shall be returned to Buyer.  If Seller accepts the offer contained in this Agreement but refuses or neglects to consummate the transaction within the time period provided in this Agreement, Buyer may:
        1) Demand immediate repayment of all moneys that Buyer has paid to Broker as earnest money, and upon return of such money the rights and duties of Buyer and Seller under this agreement shall be terminated.
        2) Demand that Seller specifically perform Seller's obligations under this Agreement; **or**
        3) Demand monetary damages from Seller for Seller's failure to perform the terms of this Agreement.

**14. EARNEST MONEY DISPUTE:**
Notwithstanding any termination of this Contract, Buyer and Seller agree that, in the event of any controversy regarding the Earnest Money and things of value held by Broker or Closing Agent, unless mutual written instructions are received by the holder of the Earnest Money and things of value, Broker or Closing Agent shall not be required to take any action but may await any proceeding, or at Broker's or Closing Agent's option and sole discretion, may interplead all parties and deposit any moneys or things of value into a court of competent jurisdiction  and shall recover court costs and reasonable attorney fees.

**15. BUYER'S CERTIFICATION:**
By entering into this Agreement, each person or persons executing this Agreement as Buyer represents that he/she is eighteen (18) years of age or older, of sound mind, and legally competent to own real property in the State of Montana; and if acting on behalf of a corporation, partnership, or other non-human entity, that he/ she is duly authorized to enter into the Agreement on behalf of such entity.

_____DS_____ / _____DS_____
Buyers initials          Sellers initials

**16. SELLER'S CERTIFICATION:**
By entering into this Agreement, each person or persons executing this Agreement as Seller represents that he/she is eighteen (18) years of age or older, of sound mind, and legally entitled at this time to transfer title to the real property free and clear of all liens and encumbrances except those described in this Agreement; and if acting on behalf of a corporation, partnership, or other non-human entity, that he/she is duly authorized to enter into the Agreement on behalf of such entity.

**17. ALTERNATIVE DISPUTE RESOLUTION:**
**MEDIATION:** If a dispute arises between the parties relating to this Contract, the parties may agree to submit the dispute to mediation. The parties may jointly appoint an acceptable mediator and may share equally in the cost of such mediator. If mediator proves unsuccessful, the parties may then proceed with such other means of dispute resolution as they so chose.

**18. ATTORNEY'S FEES:**
If either party defaults in its performance of this Agreement and the other party employs an attorney because of such default, the defaulting party agrees to pay, on demand, all costs, charges, and expenses, including reasonable attorney's fees, reasonably incurred at any time by the other party because of the default.

**19. ENTIRE CONTRACT:**
All prior Agreements between the parties are incorporated in this Agreement, which constitutes the entire Contract. Its terms are intended by the parties as a final expression of their Agreement with respect to such terms as are included herein and may not be contradicted by evidence of any prior Agreement or contemporaneous oral Agreement. The parties further intend that this Agreement constitutes the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any involving this Agreement. If any portion of this Agreement shall be held to be void or unenforceable, the balance hereof shall nonetheless be effective. This Agreement shall be governed by the laws of the State of Montana and shall be binding upon the heirs, successors and permit assigns of the parties.

**20. BROKER RELATIONSHIPS:**   The following agency relationship(s) are hereby confirmed for this transaction.

Listing Agent   **Matt Robertson of NAI** _____   ☐Is the agent of (check one): ☒Seller exclusively
(Print Agent name)                                            ☐Both /Buyer & Seller

Selling Agent   **Ethan Kanning of NAI** _____   ☐Is the agent of (check one): ☒Buyer exclusively
(Print Agent name)                                            ☐Both /Buyer & Seller

**21. ADDENDUM ATTACHED:**   **Attached addendum for additional terms, Option to Purchase Agreement.**

**22. CONSENT TO DISCLOSE:** Buyer and Seller hereby consent to the procurement and disclosure by Buyer, Seller, Broker, and their attorneys, closing agents, and other parties having interest essential to this Agreement, of any and all information reasonably necessary to consummate the transaction described in this Agreement, specifically including access to escrow agents and lenders for review of contracts, deeds, trust indentures, inspections, or similar documents of prior transaction concerning this property or underlying obligations pertaining thereto.

**23. COUNTERPARTS / FACSIMILE:**
A copy of this document may be executed by each party, separately, and when each party has executed a copy thereof, such copies taken together shall be deemed to be a full and complete Contract between the parties. The parties agree that a facsimile copy of this Agreement to Sell and Purchase which contains the parties' signatures may be used as the original.

**24. BUYER'S COMMITMENT:**
Buyer agrees to purchase the above described Property on the terms and conditions set forth in the above offer and grants said sales Representative until  **July 1st, 2018** _____ at  **5pm** _____ to secure Seller's written acceptance of both this document and the attached Option to Purchase. Buyer may withdraw this offer at anytime prior to Seller's written acceptance. If Seller has not accepted by the time specified, this offer is automatically withdrawn. Buyer hereby acknowledges receipt of a copy of this Agreement of Sell and Purchase-Commercial and Investment Properties, bearing Buyer's signature(s)and that Buyers have read and understand this Agreement.

Buyer's Phone: _____   Buyer's Signature: _____

DocuSigned by:
*Derek Stehner*
55DDCAC4609041A...

Page 5 of 6

_____DS_____   /   _____DS_____
*DS*                   *W W W*
Buyers initials        Sellers initials

DocuSign Envelope ID: 3ACC897A-E10A-4E77-98E9-701AE47579BF

Address: _____   Buyer's Signature: _____

**25. SELLER'S COMMITMENT:**

Seller agrees to sell and convey to Buyer the above-described Property on the terms and conditions hereinabove if Buyer exercises its option to purchase under the the Option to Purchase Agreement attached hereto.

Seller acknowledges receipt of a copy of this Agreement bearing the signature(s) of Buyer and Seller.

Dated this   6/21/2018 12:25:20 PM ADT day of _____   At _____ am/pm.

Seller's Phone: _____   Seller's Signature: _____

DocuSigned by:

*Michael W. Warfel*

CB2233F4E4EF4F6...

Address: _____   Seller Signature: _____

**26. DELIVERY TO BUYER OF A COPY OF ACCEPTED OFFER** (use one of the following:)

Date _____          Date _____ _____

The undersigned buyer acknowledges receipt of a copy of this Contract bearing his / her signature and that of the Seller.

A copy of this Contract bearing Buyer(s) signature and that of the Seller(s) was sent via ordinary or certified mail to Buyer.

_____          _____

Buyer          Agent

**ACTION TAKEN, IF OTHER THAN ACCEPTANCE:**

I/We acknowledge receipt of this agreement bearing my/our initial(s) and the signature(s) of the Buyer(s) named above.

☐ Rejected by the Seller _____/_____/_____          ☐ Modified per Attached Counter _____/_____/_____

　　　　　　　　　　Seller's Initials　　Date　　　　　　　　　　　　　　　　　　　　Seller's Initials　　Date

Page 6 of 6

DS
*DS* / *M W W*

Buyers initials     Sellers initials

# ADDENDUM FOR

# AGREEMENT TO SELL AND PURCHASE

This is an addendum to a Buy/Sell Agreement dated 6/20/2018  3:14:32  PM  PDT , between Roman Catholic Bishop of Great Falls, Montana  (Seller) and Langstan Management LLC, with right to assign  (Buyer) concerning the following described property: 1801 10th Avenue South, Great Falls, MT.

Legal description:
**S07, T20 N, R04 E, IN S/2SESW MK X1-X2**

**Section 2. Cash at Closing:** This cash at closing assumes execution of the Option to Purchase (attached hereto) calling for $200,000 non-refundable option money being paid on or before July 15, which will be credited against the $1,550,000 total purchase price.  The cash required at closing may be further reduced if Buyer exercises any extension of the option to purchase, as provided for in paragraph 3 of the Option to Purchase.

**Section 4. Closing and Related Provisions:** The date of closing shall be 30 days from the exercise of Buyer's Option to Purchase the property as set forth in the attached Option to Purchase.

**Section 6. Contingencies:** Buyer has waived any contingencies and has agreed to purchase the property "AS IS" including any restriction associated with the continued use of the property, if any, as an apartment complex in accordance with the attached Option to Purchase.

**Section 7. Condition of Property and Related Issues:** Buyer is aware that the property has been vacant for an extended period of time and that possession of the property will be under a leasehold arrangement in accordance with the attached Option to Purchase.  Prior to taking possession, Buyer acknowledge the presence of water damage and the presence of asbestos.  Buyer is aware of these conditions and has agreed to accept the property "AS IS" at the time of taking possession and further at the time of the closing of the purchase of the property.

**Section 21. Addendum Attached**: See attached Option to Purchase which is deemed part of this Agreement to Sell and Purchase.  Should any of the terms contained in this Agreement to Sell and Purchase, conflict with the Option to Purchase, the Option to Purchase shall control.

| | |
|---|---|
| DocuSigned by: *Dirk Stehmer* | DocuSigned by: *Michael W. Warfel* |
| _____ | _____ |
| Buyer(s)   55DDCAC4609041A... | Seller(s)   CB2233F4E4EF4F6... |
| | |
| _____ | _____ |
| Buyer(s) | Seller(s) |
| | |
| 6/20/2018 3:14:32 PM PDT | 6/21/2018 12:25:20 PM PDT |
| _____ | _____ |
| Date | Date |

DocuSign Envelope ID: 3ACC897A-E10A-4E77-98E9-701AE47579BF

## OPTION TO PURCHASE

### 1801 10th Avenue South, Great Falls Montana

**THIS OPTION TO PURCHASE AND SALE AGREEMENT** (the "Agreement") is made and entered by and between **Langstan Management, LLC (Optionee) and Roman Catholic Bishop of Great Falls, Montana (Optionor)** on  20  day of June 2018.

For and in consideration of $200,000.00 of non-refundable option money ("Option Consideration") and the promises and the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties have agreed and do hereby agree as follows.

1.  **Option.**  The Optionee shall have the exclusive option to purchase the following from Optionor, for the purchase price and on the terms and conditions set forth, real property described and defined as : **S07, T20 N, R04 E, IN S/2SESW MK X1-X2 -1801 10th South, Great Falls Montana (the, "Property")** together with any and all rights, privileges, easements and interests appurtenant thereto including, but not limited to, any streets or other public ways adjacent to the Land; any water or mineral rights owned by, or leased to, Optionor and all recapture rights and entitlements benefiting the Land; and all improvements, if any, located on the Land. Optionee shall pay the Optionor the Option Consideration on or before July 15th, which shall act as the commencement date of this agreement (the "Commencement Date"). Although the Option Consideration is non-refundable it will be applied as a credit against the purchase price of the property under the parties Agreement to Sell and Purchase as attached hereto. The same is true as it relates to any payments made by the Optionee to extend the option as provided for in paragraph 3 below.  However, if Optionee elects not to purchase the property, all sums paid by Optionee under this Option to Purchase or any extension of this option shall not be returned and shall be retained by the Optionor without any further recourse thereto by the Optionee.

2.  **Purchase Price.** The purchase price to be paid by Optionee to Optionor for the Property shall be $1,550,000.00 (the "Purchase Price"). As outlined in the attached Agreement to Sell and Purchase.

3.  **Time Period of Option.** The Option shall be for a period beginning on the date of execution and ending on 365 days thereafter, with two options to extend. Each extension option shall be for a term of six (6) months and require an additional $100,000 in non-refundable consideration. Optionee shall give Optionor written notice of its intent to exercise the extension option no later than thirty (30) days prior to the end of the then current option period with the required payment of the additional non-refundable consideration due on or before the last day of the then current option period.

4.  **Due Diligence Period.** Optionee hereby waives any due diligence period, acknowledges having been provided full access to the property to complete any necessary inspections prior to the execution of this agreement and agrees that if Optionee  subsequently exercises its option to purchase Optionee will take the property "AS IS" without any further recourse against the Optionor for any condition or defect related to the property including, but not limited to, water damage issues and the presence of any hazardous materials of any kind or nature and any required clean up and abatement of the same (which extends to asbestos or other any other hazardous materials having been previously disclosed to the Optionee) and any restriction associated with continued use of the property as an apartment complex. (Optionor is unaware of any such use restrictions but it is Optionee's obligation to confirm).

5.  **Lease.** Upon release of due diligence period and execution of a mutually agreed upon commercial lease with the standard terms detailed below, Optionee shall take early occupancy of the Property on July 1st, 2018 with full commencement of the lease on the Commencement Date of July 15, 2018. Lease Term: 12 Months with two (2) six (6) month options to renew. Exercise of the option to renew the

DocuSign Envelope ID: 3ACC897A-E10A-4E77-98E9-701AE47579BF

lease shall be provided by the Optionee to the Optionor in writing not later than thirty (30) days prior to the ending date of the then current lease term.  Any right to renew the lease shall also be subject to Optionee's exercising an extension of the option period as provided for in paragraph three (3) above.

Lease Rate: $4,000.00 per month for the Months 5-12

Renewal Rate: $4,000.00 per month for the Months 13-18 and 19-24

All monthly lease payments due on the 15th of the month

Operating Expenses:
- Real Estate Taxes (Paid by Optionor/Landlord)
- Utilities (Paid by Optionee/Tenant) i.e. electric, gas, water, sewer.
- Structural Insurance (Optionor/Landlord shall hold an insurance policy for the Property for no less than $1,550,000. Optionee/Tenant shall hold an insurance policy providing bodily injury/property damage liability coverage including any liability arising out of any residential or commercial use of the property by the Optionee/Tenant (minimum coverage of $1MM each occurrence/$3MM general aggregate) with both parties being named as additionally insured.

Optionee/Tenant shall pay for, bear the sole responsible for and hold Optionor/Landlord harmless from any repairs, improvements or obligations that may be required to place and or maintain the property in a habitable condition for its use or occupancy as residential or any commercial units including any obligations that may arise out of the Montana Residential Landlord and Tenant Act.  Optionee/Tenant shall further have the right to affect any and all other repairs and improvements at its expense during the term of the option or subsequent renewals. All repairs and improvements shall convey with the property if purchased by the Optionee. If Optionee elects not to purchase the property, all repairs and improvements shall remain with the property and retained by the Optionor.  Any personal property purchase during the Optionee's lease term shall remain the property of the Optionee with the exception of any appliances or other personal property that is being provided by the Optionee to any sub-tenants/lessees under the terms of any rental/lease agreement.  All such personal property shall remain with the property should Optionee elect not to purchase.

Optionee shall be obligated to hold the Optionor/Landlord harmless from any liability, including bodily injury and/or property damage arising out of the use and occupancy of the property by Optionee/Tenant and/or any of its sub-tenants/lessees

Any lease payment made shall not be credited to purchase price.

Optionee/Tenant shall have 100% control to run the property as they see fit and lease the units at any term or rate without caveat so long as any such use of the property is in conformity with any controlling governmental statue, regulation, rule or ordinance. Owner will consent to any documentation requested and or required to allow this to happen.

Optionee will be responsible for all costs associated with all marketing and shall have the right to market the property for lease during the lease period.

**6.  Additional Provisions.** Owner/Optionor agrees and warrants that it will not encumber the Property with any mortgage or lien that exceeds initial balance or subsequent balances of the Optionor i.e. (initially $1,350,000.00) nor any encumbrance that could not be paid off in full at the time of the closing of Optionee's purchase of the property. Further, Optionor agrees to complete all current insurance repairs covering the property for vandalized units, broken and boarded up windows and carpet in the rec room by July 31,2008. If Optionor is unable to complete the aforementioned insurance repairs by July 31, 2018, Optionee can elect to complete these repairs and bill Optionor's insurance.

**7.   Exercise of Option.** The Optionee may exercise its exclusive right to purchase the Property, defined above, pursuant to the Option, at any time during the period or renewal periods of the Option. The purchase will be completed according to the attached Agreement to Sell and Purchase. In the event the Optionee does not exercise its exclusive right to purchase the Property granted by the Option during the Option Term, Optionee shall vacate the property at the end of the then current leasehold term, provide Optionor with all then current sublease agreements along with any rental deposits and rental payment records and any and all other records covering its operations of the property during Optionee's occupancy at which time this agreement and any associated rights or obligations (with the exception of Optionee's obligations of indemnity or to hold the Optionor harmless as set forth in paragraph 5 above) shall become absolutely null and void and neither party hereto shall have any other liability, obligation or duty herein under or pursuant to this Agreement.

        **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement of Purchase and Sale on the dates first above written .

Optionee(s) _Derek Stebner_
                55DDCAC4609041A...

Optionor(s) _Michael W Warfel_
                CB2233F4E4EF4F6...

Optionee(s) _____

Optionor(s) _____

Date   6/20/2018 3:14:32 PM PDT

Date   6/21/2018 12:25:20 PM PDT

# McKAY ROWEN ASSOCIATES

25 5th Street North, Suite #204
Great Falls, MT  59401
Telephone (406)452-2282; Fax (406)453-0313
E-mail mckayrowenassoc@qwestoffice.net

Philip L.R. Rowen, Appraiser
MT General Certification #38

January 16, 2017

Diocese Great Falls and Billings
Attn: Jerry Horton, Property Manager
121 23rd Street South
P.O. Box 1399
Great Falls, Montana 59403-1399
jhorton@diocesegfb.com

RE:    Appraisal Report (Executive Summary)
Unoccupied 58-Unit Apartment Property
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana 59405
Roman Catholic Bishop of Great Falls
MRA Report No. 20151202

In accordance with your request and for the purpose of estimating the "As Is" Market Value of the Fee Simple Interest in the real estate that is associated with subject property, I have personally observed the property and have made a careful and thorough investigation and analysis of the subject and applicable available market data.

Appraisal observations of the property were accomplished on August 24 and August 26, 2016.  The appraiser was accompanied by Chet Pietrykowski during the observation of the property on August 26, 2016.  An exterior observation of the property was accomplished more recently on January 14, 2017.  Date of valuation is January 14, 2017, the date of the most recent observation of the property.  The subject property and the surrounding neighborhood were viewed during the observations of the property.  The purpose of this appraisal service is to provide an opinion of the Market Value of the property, as it exists.  The subject property consists of two large parcels that are separated by a 20-foot wide utility easement and improved with 11 two-story apartment buildings.  The project was originally developed with 60 two-bedroom apartments with the 11 apartment buildings being configured with either four or six apartment units.  As the property is currently configured, there are 58 apartment units.  One of the buildings has been configured to include an office on the main level of one apartment and the combining of two apartment units.  This results in two larger apartment units that are three and four-bedroom apartments and eliminates two apartment units.  The apartment units were most recently occupied by students attending the University of Great Falls.  All of the apartment units were unoccupied at the time the observations of the property.

The only intended user of this appraisal is the Client, Diocese of Great Falls and Billings, and is only to be used for the purpose of matters that may involve the possible disposition of the subject property.  The appraiser recognizes that the appraisal report may be read by other parties that may be involved in matters that involve the subject property.  However, any other readers of this report, other than the Client, are not intended users.

2

Executive Summary – Restricted Appraisal Report
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana

20151202

McKay

EXHIBIT

B

The data used in developing this appraisal and the appraisal process was gathered during the time period between December 29, 2015 and January 16, 2017. The subject property was acquired by the Roman Catholic Bishop of Great Falls, Montana in 1967. The property was acquired from the Secretary of Housing and Urban Development (HUD). There is very little public records information available for the property. In an effort to research the history of the property, I reviewed the property files available at the City of Great Falls Office of Community Development and the Department of Revenue, Cascade County Appraisal Assessment Office (DOR). The City files only included building permits for the apartment buildings that were built along 9th Avenue South and garages that have been razed. Building Permits were dated May 19, 1953. The property was developed by Bel-Air Corporation, and it is assumed that the apartment project was originally developed as an "affordable housing" project. There was no historical information about the property available from the DOR. Documents that were recorded with the Cascade County Office of Clerk and Recorder indicate that the property was deeded to the Federal Housing Commissioner by a court ordered judgement on January 10, 1964.

Deeds that were researched by the appraiser legally describe the two parcels that comprise the subject property. The parcels are described by "metes and bounds" description and are adjoining parcels that include a 20-foot wide utility easement that is the alleyway that runs in an east-west direction through the two parcels. The parcels front along 9th Avenue South and 10th Avenue South and are located between 18th Street South and 19th Street South. According to the legal description, the 9th Avenue South parcel is rectangular in shape and is 350.23 feet by 160.43 feet in size. There is 3,500 square feet of easement area influencing this parcel, resulting in useable land area of 52,687 square feet for the 9th Avenue parcel. According to the legal description, the 10th Avenue South parcel is rectangular in shape and is 350.23 feet by 143.97 feet (18th Street South) and 142.17 feet (19th Street South) in size. There is 3,500 square feet of easement area influencing this parcel, resulting in useable land area of 46,950 square feet for the 10th Avenue parcel. This is smaller than the land area for the two parcels, as stated by the DOR. The DOR indicated that each parcel is 56,000 square feet in area.

It was reported that the property has historically been occupied by students attending the University of Great Falls. The University was utilizing the property under an agreement with the Client. The University has developed housing on the nearby campus and no longer will be using the property. The last of the tenants were reported to have vacated the property by the summer of 2016.

The subject land area along 9th Avenue South is zoned R-5. This is a Multi-Family Residential – High Density designation that is intended to accommodate multi-family units not exceeding two-stories. This parcel is developed with six two-story apartment structures. As developed, the improvements are conforming with the zoning code. The land area along 10th Avenue South is zoned C-2. This is a General Commercial designation and the zoning classification is primarily intended to accommodate high-traffic businesses that focus on vehicle traffic. Tenth Avenue South is a six-lane arterial along the south area of the community and is the primary commercial corridor for the community. Tenth Avenue South enjoys one of the highest traffic counts in the State. The 10th Avenue South parcel is developed with five two-story apartment structures. Multi-family residential development is not allowed in the C-2 zoning designation. However, the City Land Development Codes states "Current residential uses are not considered to be nonconforming. As such current residential uses existing at the time this Title was adopted are allowed to expand or to be re-established, if damaged".

In an effort to develop an opinion of the land value associated with the subject property, as if unimproved and available for development and as currently zoned, a number of sales of properties with potential for residential and commercial development were researched and analyzed by the appraiser. These sales supported land value indications of $7.00 per square foot to the 9th Avenue South property (52,687 sf of useable area) and $20.00 per square foot to the 10th Avenue South property (46,950 sf of useable area). Thus, supporting value indications of $370,000 and $930,000, respectively, to the two parcels if unimproved available for development. Supporting an estimate of land value of $1,300,000 ($370,000 + $930,000). Consideration must be given to the cost of razing the improvements from the property, if it is to be developed. Based upon information that was obtained from Marshall Valuation Services and familiarity with cost of demolition incurred by other properties, the estimated cost of demolition of the 11 building improvements is in the range of $5.00 per square foot of gross building area, or $250,000 (49,920 sf x $5.00/sf). This estimate of cost to raze the improvements could vary greatly dependent on environmental materials contained in the structures and the estimate at $250,000 is quite

3

variable. The value of the subject land, as a location for development, is supported at $1,050,000 ($1,300,000 - $250,000).  Thus, the value of the land associated with the subject property, as if unimproved and available for development, is supported at:

$1,050,000

The Client has requested an opinion of the value of the subject real estate "as is" and it is currently improved with 11 apartment structures that are currently configured with 58 apartment units.  The subject building improvements were specifically designed for tenant occupancy and were developed in 1953.  The overall quality of the building improvements is minimal to average quality and are certainly not as efficient as current building standards.  The improvements have been maintained and some mechanical systems have been upgraded and interior finishes upgraded to adequately house students.  However, condition of the exterior and interior finishes exhibit the age of the improvements.  There would be some repairs required to place the project in a condition to sustain occupancy.  In developing an opinion of the value of the subject property "as is" I have processed an Income Capitalization Approach that considers the projected income and expense potential for the subject property, as well as an estimate of repairs to place the apartment units in a condition to sustain occupancy and the lost revenue during "rent-up" to a stabilized occupancy.  I have also processed a Sales Comparison Analysis that compares five market sales of apartment projects in the community of Great Falls to the subject property, as it is developed with 58 apartment units.

The Income Capitalization Approach supports a value of $1,821,737 to the property as it is developed as a multi-family residential housing project and the Sales Comparison Analysis supports a value of $1,800,000 to the property, "as is".

By reason of this investigation, it is my opinion that the "As Is" Market Value of the Fee Simple Interest in the subject property, as of January 14, 2017, is indicated at:

$1,800,000

The estimate of value is based upon an exposure time of less than one year, with the marketing period being from six months to one year.

The valuation reported is subject to the ASSUMPTIONS AND LIMITING CONDITIONS found within the accompanying report.  There are 18 Standard Assumptions and Limiting Conditions.  There are no Hypothetical Conditions associated with the development of this appraisal.  Assumption 19 is a specific assumption related to this assignment and is an Extraordinary Assumption.

Assumption 19 addresses the assumed condition, quality and characteristics of the subject property as of the effective date of value and of the individual apartment units that were not observed by the appraiser.  The property was initially observed on August 24, and August 26, 2016 when the exterior of the subject apartment buildings were observed and the interior of 13 apartment units were observed.  Common areas and the two basement areas were also observed at this time.  Only a cursory observation of the project was completed on January 14, 2017 and it is assumed that the property was materially similar on that date as it was during the earlier observations of the property on August 24, and August 26, 2016.  Assumption 19 is an Extraordinary Assumption and, if found to be false, could alter the appraiser's opinions or conclusions.  A full discussion of this assumption and a complete definition of Extraordinary Assumption are included in the Assumptions and Limiting Conditions section of this report.

I have completed the valuation process and an Appraisal Report is being prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP).

This Executive Summary is being prepared to provide a summary of pertinent facts and data in an expeditious manner and is a Restricted Appraisal Report.

4

There are no known or apparent adverse environmental conditions observed that would negatively affect the subject property. There were no environmental assessments provided by the Client or the property ownership. It is assumed that there are no environmental conditions affecting the property and no contamination of the property exists. It is likely that as a result of the age of the subject improvements, there are materials contained in the apartment buildings that may now be considered to be sensitive to the environment.

There have been no specific site plans or surveys of the subject property provided to the appraiser and it is assumed that the improvements are located within the boundaries of the subject property.

In an effort to expedite your processes, attached is a copy of the SALIENT FACTS AND CONCLUSIONS that will be included in the Appraisal Report that is under preparation.

The opinion of Market Value has been supported by Income Capitalization Approach and by Sales Comparison Analysis. Two of the three valuation techniques were processed and are felt to be appropriate and applicable to the development of this appraisal and necessary to produce credible assignment results. The Cost Approach was not considered to be applicable or appropriate to the development of an "as is" value of the subject property, as improved.

Attached to this Executive Summary is a Summary of Development Land Sales that is a tabulation of the land sales that were researched by the appraiser, Property Operating Statement (Projection) that summarizes the Income Capitalization Approach, and a Summary of Market Sales that is a tabulation of the five improved apartment sales that have been compared to the subject property.

The valuation process has been completed. I am proceeding with the final preparation of an APPRAISAL REPORT. It is my intention to have the report finalized and delivered to you by February 25, 2017.

I must emphasize that this letter is being provided in an effort to expedite your process. As such, this is a Restricted Appraisal Report that cannot be understood without additional documentation that will be contained in the above referenced appraisal report that is being prepared. This Executive Summary is being prepared in an effort to provide the Client, Diocese Great Falls and Billings, sufficient documentation to facilitate some of the processes that involve the subject property.

Sincerely,

McKAY ROWEN ASSOCIATES

Philip L.R. Rowen, Appraiser
MT General Certificate #38

January 16, 2017

PLRR: kkr

atch    Certification of the Appraiser, 1 pg
        Competency Provision, 1 pg
        Salient Facts and Conclusions, 3 pgs
        Assumptions and Limiting Conditions, 3 pgs
        Summary of Development Land Sales, 1 pg
        Property Operating Statement (PROJECTION), 1 pg
        Summary of Sales Comparison Analysis, 1 pg
        Summary of Improved Sales, 1 pg
        Comparable Sales Data – Profiles, 5 pgs
        Final Correlations and Conclusions, 2 pgs
        Qualifications of the Appraiser, 5 pgs

5

Executive Summary – Restricted Appraisal Report
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana

20151202

McKay Rowen Associates

**SALIENT FACTS AND CONCLUSIONS**

| | |
|---|---|
| RECORD OWNER: | Roman Catholic Bishop of Great Falls, Montana |
| PROPERTY LOCATION: | Two parcels located along 9th Avenue South and 10th Avenue South, between 18th Street South and 19th Street South, Great Falls, Montana. |
| ASSESSOR'S PARCEL NO.: | 0001911200 |
| PROPERTY TYPE: | Apartment Complex<br>Eleven two-story apartment buildings, configured as 58 apartment units. Currently unoccupied. |
| PROPERTY RIGHTS APPRAISED: | Fee Simple, unencumbered |
| DATE OF VALUATION: | January 14, 2017 |
| DATES OF OBSERVATIONS: | August 24, 2016, August 26, 2016 & January 14, 2017 |
| DATE OF REPORT: | January 16, 2017 |

PROPERTY DESCRIPTION

College Villa Apartments
1800 Block of 9th and 10th Avenues South
Great Falls, Montana

**9th Avenue South Parcel**

Site

| | | |
|---|---|---|
| Rectangular Shape (multiple corner location) | | 52,687 sf |
| +- 160.43 ft x 350.23 ft (less 10' x 350.23' easement) | | |
| 9th Avenue South Frontage | 350.23 ft | |
| 18th Street South Frontage | 150.43 ft | |
| 19th Street South Frontage | 150.43 ft | |
| Alley Exposure | 350.23 ft | |

Site Improvements (on site)
    Paved Parking & Access
    Landscaping & Concrete flatwork

Building Improvements
    Six Two-Story Wood Frame Apartment Buildings
    30 Apartment Units, Built 1953
    Traditional Design, Individual Apartment Access
    28 Apartments, 2-Bedroom 1-Bath Design, 832 sf GRA[1]
    1 Apartment, 3-Bedroom 2-Bath Design, 1,248 sf GRA
    1 Apartment, 4-Bedroom 2-Bath Design, 1,664 sf GRA
    1 Office Unit with Bath

| | |
|---|---|
| Gross Building Area | 26,624 sf GBA[2] |
| Building Efficiency (26,208 sf GRA) | 98.4% |
| Storage Basement Area | 1,664 sf |
| Density (52,687 sf ÷ 30 apartments) | 1 apt / 1,756 sf |

---

[1] GRA    Gross Rentable Area
[2] GBA    Gross Building Area

Executive Summary – Restricted Appraisal Report
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana

20151202

McKay Rowen Associates

**10th Avenue South Parcel**

Site
  Rectangular Shape (multiple corner location)   46,590 sf
   +- 143.97 & 142.17 ft x 350.23 ft (less 10' x 350.23' easement)
  10th Avenue South Frontage    350.23 ft
  18th Street South Frontage    133.97 ft
  19th Street South Frontage    132.17 ft
  Alley Exposure    350.23 ft
Site Improvements (on site)
  Paved Parking & Access
  Landscaping & Concrete flatwork
Building Improvements
  Five Two-Story Wood Frame Apartment Buildings
  28 Apartment Units, Built 1953
  Traditional Design, Individual Apartment Access
  28 Apartments, 2-Bedroom 1-Bath Design, 832 sf GRA[3]
  Gross Building Area    23,296 sf GBA[4]
  Building Efficiency (23,296 sf GRA)   100%
  Rec Center & Laundry Basement Area  2,496 sf
  Density (46,590 sf ÷ 28 apartments)  1 apt / 1,664 sf

College Villa Apartments Project Summary

Total Land Area (52,687 sf + 46,590 sf)    99,277 sf

Total Gross Building Area (26,624 sf + 23,296 sf)   49,920 sf GBA

Total Number Apartment Units     58 apartments
  Apartment Unit Mix  2 BR Apartments (832 sf GRA) 56 apartments
     3 BR Apartment (1,248 sf GRA) 1 apartment
     4 BR Apartment (1,664 sf GRA) 1 Apartment
Project Average Apartment GRA (49,504 sf ÷ 58 apartments)  853 sf GRA
Project Building Efficiency (49,504 sf ÷ 49,920 sf)  99%
Project Density (99,277 sf ÷ 58 apartments)  1 apt / 1,712 sf

PROPERTY VALUATION

  Site Evaluation    $1,050,000
  Cost Approach    Not Applicable
  Income Capitalization Approach (8.50% Ro) $1,821,737
  Sales Comparison Analysis   $1,800,000

FINAL ESTIMATE OF "AS IS" MARKET VALUE (WEIGHTED ANALYSIS) $1,800,000

---

[3] GRA Gross Rentable Area
[4] GBA Gross Building Area

Executive Summary – Restricted Appraisal Report      20151202
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana          McKay Rowen Associates

The opinion of Market Value is premised on one Extraordinary Assumption that is set forth in the ASSUMPTIONS AND LIMITING CONDITIONS found within the accompanying report. **The client is directed to pay special attention to Assumption 19, which is specific to this assignment. Assumption 19 addresses the assumed condition, quality and characteristics of the subject property as of the effective date of value assumed quality and condition of the apartment units that were not observed by the appraiser.**

Personal Property and FFE included in value estimates:       NA
    (Appliances & W/D's considered Real Estate)

Intangibles included in value estimates:       None

## INCOME PROPERTY ECONOMICS
### "As Is" – Conventional

| | | |
|---|---|---|
| Gross Potential Gross Annual Income ($525, $625 & $725/unit/mo) ($30,750 / month) | $369,000 PGAI[5] | |
| Vacancy/Collection Loss (6%) | $22,140 | |
| Potential Stabilized Effective Gross Income (PGAI) | $346,860 | |
| Total Expenses (including 7.0% Reserves for Replacement) | $162,837 (44%) | |
| Net Operating Income (Projection) | $184,023 | |
| Direct Capitalization Rate | 8.5% | |
| Value Indication – Direct Capitalization | $2,164,976 | |
| Lost Income, 12 months to stabilization | $169,239 | |
| Immediate Repairs to Sustain Occupancy | $174,000 | |
| Indicated Value, "As Is" | | $1,821,737 |

EXPOSURE TIME / MARKETING TIME       Six to twelve months

---

[5] PGAI          Potential Gross Annual Income

Executive Summary – Restricted Appraisal Report                                                    20151202
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana                                                                    McKay Rowen Associates

**FINAL CORRELATIONS AND CONCLUSIONS**

The foregoing approaches to value indicated the following:

| | |
|---|---|
| Cost Approach | Not Applicable |
| Income Capitalization Approach | $1,821,737 |
| Sales Comparison Analysis | $1,800,000 |

The indications represent a range of value of $21,737, or 1.21% of the final value conclusion, which is considered to be a very close range of indications, given the influences that affect the valuation processes and that affect market participants.

Normally, most credence is placed in the Sales Comparison Analysis approach to value. In this assignment it is supported by the sales of five apartment properties in the community. All five of the sales that were presented and compared to the subject are apartment properties that included a mix of unit styles, including studio or efficiency units, and 1, 2 and 4-bedroom apartment improvements. In physical characteristics, the five sales that were compared to the subject are not as comparable as desired. However, there are a limited number of market sales in the community that are available for comparison purposes. There are no other more comparable properties that have been marketed in the community that are not encumbered with subsidized restrictions.

The Cost Approach is a good indicator of valuation for special types of properties; however, it has one weakness in that the estimation of depreciation is by the appraiser. It is usually the upper range of value. The Cost Approach was not considered to be applicable to this appraisal service and was not processed.

The Income Capitalization Approach is well founded on income and expense data that is applicable to this type of property. In developing the Income Capitalization Approach consideration was given to the lost revenue over a one year period to stabilization and also to the estimate expense to place the project in a condition that would support stabilized occupancy.

I feel that the market would examine both approaches to value in determining market value and would view the indications through a blending process or a weighted analysis that would place the most equal weight on the two approaches that were processed. Thus, equal weight would be placed on the indication of the Income Capitalization Approach and the Sales Comparison Analysis, 50% each.

Weighted analysis supports the following to the subject property:

| | | | | |
|---|---|---|---|---|
| Income Capitalization Approach | $1,821,737 | x | .50 | $910,869 |
| Sales Comparison Analysis | $1,800,000 | x | .50 | $900,000 |
| | | | | |
| Indication | | | | $1,810,869 |
| | | | | |
| | Rounded to | | | $1,800,000 |

Thus, final conclusions are that the estimated Market Value, "as is", of the subject property, as of January 14, 2017, is:

$1,800,000

Executive Summary – Restricted Appraisal Report
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana

20151202

McKay Rowen Associates

The opinion of Market Value is premised on one Extraordinary Assumption that is set forth in the ASSUMPTIONS AND LIMITING CONDITIONS found within the accompanying report. **The client is directed to pay special attention to Assumption 19, which is specific to this assignment. Assumption 19 addresses the assumed condition, quality and characteristics of the subject property as of the effective date of value assumed quality and condition of the apartment units that were not observed by the appraiser.**

Philip L.R. Rowen, Appraiser
MT General Certificate #38

January 16, 2017

Executive Summary – Restricted Appraisal Report
College Villa Apartments
1800 Block 9th & 10th Avenues South
Great Falls, Montana

20151202

McKay Rowen Associates

## ALTA COMMITMENT FOR TITLE INSURANCE

Issued By:



**CHICAGO TITLE INSURANCE COMPANY**

Commitment Number:

**3522171561**

CHICAGO TITLE INSURANCE COMPANY, a Florida corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate six (6) months after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

IN WITNESS WHEREOF, CHICAGO TITLE INSURANCE COMPANY has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.

**Chicago Title Insurance Company**

By:

_____
President

Countersigned By:

_____
Authorized Officer or Agent

Attest:

_____
Secretary

**EXHIBIT**

_C_

**Copyright American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**CHICAGO TITLE INSURANCE COMPANY**                    **COMMITMENT NO. 3522171561**

| ISSUING OFFICE: | FOR SETTLEMENT INQUIRIES, CONTACT (NOT TITLE ONLY): |
|---|---|
| Chicago Title Company, LLC<br>101 River Dr N<br>Great Falls, MT 59401<br>Main Phone: (406)453-7622<br>Email: 352275@fnf.com | Escrow Officer: Amy Daniels<br>Chicago Title Company, LLC<br>101 River Dr N<br>Great Falls, MT 59401<br>Phone: 406-453-7622  Fax: 406-761-0719<br>Main Phone: (406)453-7622<br>Email: Amy.Daniels@ctt.com |

## SCHEDULE A

**ORDER NO. 3522171561**

1. Effective Date: July 14, 2017 at 08:00 AM

2. Policy or Policies to be issued:

   a.  ALTA Owner's Policy 2006 (Standard)
   Proposed Insured:      Langstan Managment, LLC
   Policy Amount:          $1,860,000.00
   Premium:                                                                $ 3,928.00
   Total:                                                                      $ 3,928.00

3. The estate or interest in the land described or referred to in this Commitment is:

   Fee Simple

4. Title to the estate or interest in the land is at the Effective Date vested in:

   Roman Catholic Bishop of Great Falls

5. The land referred to in this Commitment is described as follows:

   SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**END OF SCHEDULE A**

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



# EXHIBIT "A"
## Legal Description

PARCEL I:

A tract of land in Section 7, Township 20 North, Range 4 East, P.M.M., Cascade County, Montana, said tract of land being particularly described as follows:

Beginning at a point which lies 40 feet East and 40 feet South of the concrete monument which lies at the intersection of the center line of Ninth Avenue South and Eighteenth Street South of the Tenth Addition to Great Falls, Cascade County, Montana;
thence South 89°56' East, 350.23 feet along the South line of Ninth Avenue South to the West line of Nineteenth Street South;
thence South 160.43 feet to a point;
thence North 89°56' West, 350.23 feet to the East line of Eighteenth Street South;
thence North 160.43 feet along the East line of Eighteenth Street South to the point of beginning.

PARCEL II:

A tract of land in the SE1/4SW1/4 of Section 7, Township 20 North, Range 4 East, P.M.M., Cascade County, Montana, particularly described as follows:

Beginning at a point which lies 200.43 feet South and 40 feet East of the concrete monument, which lies at the intersection of the center line of Ninth Avenue South and Eighteenth Street South of the Tenth Addition to Great Falls, Cascade County, Montana;
thence South 89°56' East, 350.23 feet to a point on the West line of Nineteenth Street South extended;
thence South along the extended West line of Nineteenth Street South 142.17 feet to its intersection with the South line of Section 7;
thence North 89°47' West along the South line of Section 7, 350.23 feet to its intersection with the East line of Eighteenth Street South;
thence North 143.97 feet along the East line of Eighteenth Street South to the point of beginning.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



**CHICAGO TITLE INSURANCE COMPANY**　　　　　　　　　　**COMMITMENT NO. 3522171561**

## SCHEDULE B - SECTION I
## REQUIREMENTS

1.　　If a power of attorney is to be used in this transaction, furnish a true and correct copy in recordable form, for review and approval prior to executing any documents.

　　　The Company reserves the right to add additional items or make further requirements after review of the requested documentation.  The Company may require that the attorney-in-fact named in the power of attorney execute an affidavit stating that the power of attorney has not been revoked and that he/she has no knowledge or information regarding the death or incapacity of the principal therein.

2.　　If this transaction is to be involved in a 1031 or similar exchange, the closing officer must be notified well in advance of closing.

3.　　In the event matters are discovered during the closing process which would otherwise be insured by the Covered Risks included in the policy, the Company may limit or delete insurance provided by the affected Covered Risk.  In such event, a supplemental will be issued prior to closing.

4.　　The Company requires a satisfactory statement from the Association or its agent stating the amount, if any, of unpaid common or maintenance charges against the property, to the date of closing.  At that time, the Company may make additional requirements or exceptions.

5.　　If Chicago Title is to be named a Trustee, reference it as follows:

　　　Chicago Title of Montana, LLC

6.　　Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

**END OF SCHEDULE B - SECTION I**

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



**CHICAGO TITLE INSURANCE COMPANY**                    **COMMITMENT NO. 3522171561**

## SCHEDULE B - SECTION II
## EXCEPTIONS

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1.    Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the Effective Date but prior to the date the Proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.    Rights or claims of parties in possession not shown by the Public Records.*

3.    Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the Land including, but not limited to, insufficient or impaired access and matters contradictory to any survey plat shown by the Public Records.*

4.    Easements, or claims of easements, not shown by the Public Records.*

5.    Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.*

6.    (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters accepted under (a), (b), (c) are shown by the Public Records.*

7.    Taxes to special assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records.  Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.*

8.    Mineral rights, claims or title to minerals in or under said land, including but not limited to metals, oil, gas, coal, or other hydrocarbons, sand, gravel, or stone, and geothermal energy rights, and easement or other rights or matters relating thereto, whether express or implied, recorded, or unrecorded.*

       *Paragraphs 1, 2, 3, 4, 5, 6, and 7 will not appear as printed exceptions on extended coverage policies, except as to such parts thereof which may be typed as a Special Exception as shown below.

       SPECIAL EXCEPTIONS:

9.    General County Taxes for the year 2017 and subsequent years, which are a lien but not yet due or payable.

10.   General Taxes for the year 2016
      1st Half         : $1,221.72 - Paid
      2nd Half         : $1,221.71 - Paid
      Total for year   : $2,443.43
      Receipt No.: 25847         Parcel No.: 0001911200
      City:  $2,443.43

11.   Delinquent water and service charges of the City of Great Falls, if any, for which no investigation has been made.

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

CHICAGO TITLE INSURANCE COMPANY                    COMMITMENT NO. 3522171561
_____

### SCHEDULE B - SECTION II
### EXCEPTIONS
(continued)

12.  Right-of-Way Easement for electric powerline and communication system, together with necessary appurtenances thereto, granted to The Montana Power Company, recorded March 20, 1941 in Book 168 of Deeds at page 99, records of Cascade County, Montana.

13.  A public utility easement executed by Mack L. Preston to the City of Great Falls, subject to the terms, conditions and provisions contained therein, recorded December 23, 1953 in Book 228 of Deeds at page 68, records of Cascade County, Montana.

14.  Please be advised that our search did not disclose any open Deeds of Trust of record.  If you should have knowledge of any outstanding obligation, please contact the Title Department immediately for further review prior to closing.

15.  There is a Court case pending in the District Court of Great Falls, Montana, wherein the Roman Catholic Bishop of Great Falls is a named Party, Cause No. DV-2011-1078.

16.  There is a Bankruptcy case pending in the in the U.S. Bankruptcy Court of Montana in Butte, Petition No 17-60271-JDP, wherein Roman Catholic Bishop of Great Falls is the named Debtor.  The proposed sale is subject to the approval of said Bankruptcy Court.

17.  Provide documentation as to who is authorized to sign on behalf of the Seller.

   NOTE:  According to the Secretary of State's office, the Roman Catholic Bishop of Great Falls is Montana Religious Corporation, active and in good standing to conduct business in the State of Montana.

18.  Provide a copy of the Operating Agreement and a roster of the members.

   NOTE:  According to the Secretary of State's office, Langstan Management, LLC is a Montana limited liability company managed by members, active and in good standing to conduct business in the State of Montana.

   NOTE:   Property Address is purported to be:

   1801 10th Avenue South;   Great Falls, MT 59405

### END OF SCHEDULE B - SECTION II

Copyright American Land Title Association.  All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

**CHICAGO TITLE INSURANCE COMPANY**  **COMMITMENT NO. 3522171561**

## CONDITIONS

1. The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2. If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge.   If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment.  In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4. This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title.  Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5. *Intentionally Deleted*

### END OF CONDITIONS

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MONTANA

In re:

Roman Catholic Bishop of Great Falls Montana,
a Montana Religious Corporate Sole
(Diocese of Great Falls),

Debtor-in-Possession

Case No. 17-60271

Chapter 11

**ORDER AUTHORIZING LEASE WITH OPTION TO SELL REAL PROPERTY
(VILLA APARTMENTS) PURSUANT TO 11 U.S.C. § 363(B)**

In this Chapter 11 case, the Debtor-in-Possession filed on June 22, 2018, a Motion for

Authorization to Sell Real Property (Villa Apartments), and Notice, [Docket #___], which

proposed to lease, with an option to sell the following described property located in Cascade

County, Montana:

PARCEL I:

A tract of land in Section 7, Township 20 North, Range 4 East, P.M.M.,
Cascade County, Montana, said tract of land being particularly described
as follows:

Beginning at a point which lies 40 feet East and 40 feet South of the
concrete monument which lies at the intersection of the center line of Ninth
Avenue South and Eighteenth Street South of the Tenth Addition to Great
Falls, Cascade County, Montana;
thence South 89°56' East, 350.23 feet along the South line of Ninth
Avenue South to the West line of Nineteenth Street South;
thence South 160.43 feet to a point;
thence North 89°56' West, 350.23 feet to the East line of Eighteenth Street
South;
thence North 160.43 feet along the East line of Eighteenth Street South to
the point of beginning.

PARCEL II:



A tract of land in the SE1/4SW1/4 of Section 7, Township 20 North, Range 4 East, P.M.M., Cascade County, Montana, particularly described as follows:

Beginning at a point which lies 200.43 feet South and 40 feet East of the concrete monument, which lies at the intersection of the center line of Ninth Avenue South and Eighteenth Street South of the Tenth Addition to Great Falls, Cascade County, Montana;
thence South 89°56' East, 350.23 feet to a point on the West line of Nineteenth Street South extended; thence South along the extended West line of Nineteenth Street South 142.17 feet to its intersection with the South line of Section 7;
thence North 89°47' West along the South line of Section 7, 350.23 feet to its intersection with the East line of Eighteenth Street South;
thence North 143.97 feet along the East line of Eighteenth Street South to the point of  beginning.

Pursuant to the Debtor-in-Possession's Motion/Notice, and Bankruptcy Rule 6004(b), Objections to the proposed lease with sale option were required to be filed with the Court and served on the Debtor-in-Possession within fourteen (14) days of service of the Motion/Notice. No objections having been filed, and for good cause appearing,

**IT IS HEREBY ORDERED** the Debtor's Motion/Notice is **APPROVED** and the Debtor-in-Possession is hereby authorized to lease and enter into an option agreement to sell the real property to Langstan Management LLC, pursuant to the terms and conditions set forth in the Motion/Notice.

**IT IS FURTHER HEREBY ORDERED** that, if the sale closes and after payment of costs of title insurance and closing costs, all net sale proceeds shall be paid to the Diocese and deposited in the debtor-in-possession general operating accounts, and that said sale proceeds shall not be withdrawn from that account without further order of the Court.

Dated:

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

Label Matrix for local noticing
0977-2
Case 17-60271-JDP
U.S. Bankruptcy Court, District of Montana
Butte
Thu Jun 21 14:40:13 MDT 2018

Montana State Fund
PO Box 4759
Helena, MT 59604-4759

Oblates Fathers Western Province, Inc.
391 Michigan Ave. N.E.
Washington, D.C. 20017-1587

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
#1300
Los Angeles, CA 90067-4114

ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTAN
P.O. BOX 1399
GREAT FALLS, MT 59403-1399

U.S. Province of the Missionary Oblates of M
391 Michigan Ave. N.E.
Washington, D.C. 20017-1516

U.S. Bankruptcy Court, District of MT
Room 263 Federal Building
400 North Main
Butte, MT 59701-8866

34 Abuse Claimants 'Doe Group'
Bryan Smith and Vito de la Cruz
Tamaki Law Offices
1340 N. 16th Avenue, Suite C
Yakima, WA 98902-7106

38 Abuse Claimants 'Becker Group'
Timothy Kosnoff, Kosnoff Law
Metro Office Park, Metro Park 7
Street 1, Suite 204 Guyanabo
San Juan, PR 00968

ABUSE SURVIVORS
DATSOPOULOS, MACDONALD & LIND
201 W MAIN ST STE 201
MISSOULA MT 59802-4326

Anderson Family Pharmacy
2828 10th Ave S
Great Falls, MT 59405-3241

Arkadin, Inc.
Attn: Tonya Booth
1501 E Woodfield Rd, 400E
Schaumburg, IL 60173-6047

Billings Construction Supply
5514 King Ave E
Billings, MT 59101-4641

Billings Gazette Communications
PO Box 31238
Billings, MT 59107-1238

Blessed Kateri Tekakwitha
PO Box 509
Lodge Grass, MT 59050-0509

Blessed Sacrament Parish
630 Cheyenne Ave
Lame Deer, MT 59043

Bruce A. Anderson
Elsaesser Jarzabek Anderson Elliott & Ma
320 East Neider Avenue
Suite 102
Coeur D Alene, ID 83815-6007

CENTURYLINK COMMUNICATIONS LLC
931 14TH ST STE 900
DENVER CO 80202-2994

Career Quest
724 1st Ave S
Great Falls, MT 59401-3702

Carquest Auto Parts
PO Box 404875
Atlanta, GA 30384-4875

Catholic Foundation of Eastern MT
P.O. Box 1345
Great Falls, MT 59403-1345

Catholic Management Services
4457 Willow Road
Suite 100
Pleasanton, CA 94588-8554

Century Link
PO Box 91155
Seattle, WA 98111-9255

Christ the King
13268 S 5TH St
Busby, MT 59016

Christian Brothers Retirement Savings
1205 Windham Parkway
Romeoville, IL 60446-1672

Christina Cowick
4432 6th Ave S
Great Falls, MT 59405-3736

City of Great Falls
Utility Billing Department
PO Box 5021
Great Falls, MT 59403-5021

Corpus Christi Church
Rev. Ryan Erlenbush
410 22nd Ave NE
Great Falls, MT 59404-1513

Culligan
401 Huffman Ave
Great Falls, MT 59404-3298

Daniel Fasy
Fasy Law
1752 NW Market St, #1502
Seattle, WA 98107-5264

Dex Media
PO Box 79167
Phoenix, AZ  85062-9167

Diocese of Helena
PO Box 1729
Helena, MT 59624-1729

Energy West
PO Box 2229
Great Falls, MT  59403-2229

First Lease, Inc.
1 Walnut Grove Dr
Suite 300
Horsham, PA 19044-2201

Fr. Marcel Vogel
1701 26th St S
Apt #3
Great Falls, MT 59405-5173

Gagnon's
308 9th Ave S
Great Falls, MT 59405-4083

General Unsecured Creditors
All in Care-Diocese of Great Falls
121 23rd St S
Great Falls, MT 59401-3997

Giulia Marie Arcuri
224 Diamond Avenue
Newport Beach, CA 92662-1116

Great Falls Tribune
PO Box 677334
Dallas, TX  75267-7334

(c)HOLY FAMILY
112 1ST AVE
GLENTANA MT  59240-9709

(p)HOLY FAMILY
ST LEO CHURCH
PO BOX 421
LEWISTOWN MT 59457-0421

Holy Spirit Catholic School
2820 Central Ave
Great Falls, MT 59401-3412

Holy Spirit Parish
Rev. Schlosser and Rev. Wilkins
201 44th St S
Great Falls, MT 59405-1653

Holy Trinity Church
692 Stockett Rd
Centerville, MT 59480

Immaculate Conception Church
Rev. William D'Souza
1223 16th St
Fort Benton, MT 59442

Immaculate Conception Parish
509 N 12th Ave
Forsyth, MT 59327

Immaculate Conception Parish
PO Box 789
Wolf Point, MT 59201-0789

Innovative Postal Services
PO Box 2565
Great Falls, MT  59403-2565

Instrumentalist Awards
1838 Techny Court
Northbrook, IL 60062-5474

Internal Revenue Service
Centralized Insolvency Op.
P.O. Box 7346
Philadelphia, PA 19101-7346

Joseph Blumel III
Law Offices of Joseph Blumel III
4407 N Division Street, Ste 900
Spokane, WA 99207-1660

Joseph Steven Wilcox
c/o James Edmiston
Edmiston and Colton
310 Grand Avenue
Billings, MT 59101-5923

Jostens
21336 Network Place
Chicago, IL  60673-1213

KRTV-TV
PO Box 2557
Billings, MT 59103-2557

Kay Walters
4142 5th Ave S
Great Falls, MT 59405-3724

Knife River
PO Box 80066
Billings, MT 59108-0066

Lee James and Craig Vernon
James, Vernon and Weeks
1626 Lincoln Way
Coeur D Alene, ID 83814-2459

Lone Pony Web and Management
Tia Renee Buzzard
2932B Highway 153
Twisp, WA 98856-9725

Marlin Leasing Corporation
300 Fellowship Rd
Mount Laurel, NJ 08054-1727

Mary Queen of Peace
3411 S 34th St
Billings, MT 59101

Meadow Gold Dairies
PO Box 710966
Denver, CO  80271-0966

Memorial Monuments and Vaults
598 West Franklin
Meridian, ID 83642-2825

MetLife
PO Box 803323
Kansas City, MO  64180-3323

Metropolitan Utilities District
PO Box 3600
Omaha, NE  68103-0600

Milt Datsopoulos and Molly Howard
Datsopoulos, MacDonald & Lind
201 W Main ST STE 201
Missoula MT 59802-4326

Montana Department of Labor
Unemployment Division
PO Box 6339
Helena, MT  59604-6339

Montana Dept. of Public Health
Laboratory Services Bureau
PO Box 4369
Helena, MT  59604-4369

Montana Dept. of Revenue
PO Box 7701
Helena, MT 59604-7701

Montana State Fund
PO Box 31477
Billings, MT  59107-1477

Montana Waste Systems
PO Box 2645
Great Falls, MT 59403-2645

Montana-Dakota Utilities
PO Box 5600
Bismark, ND  58506-5600

Most Rev. Anthony M. Milone
7323 Shirley Street, Apt. 209
Omaha, NE 68124-1739

Mountain View Co-Op
PO Box 1299
Great Falls, MT  59403-1299

NORTHWESTERN ENERGY
11 E PARK ST
BUTTE, MT 59701-1711

National Laundry
700 Crescent Dr
Great Falls, MT 59404-3210

NorthWestern Energy
40 E Broadway
Butte, MT 59707-9394

OFFICE OF THE U.S. TRUSTEE
U.S. TRUSTEE'S OFFICE
LIBERTY CENTER SUITE 204
301 CENTRAL AVE
GREAT FALLS, MT 59401-3113

Omaha Public Power Dist.
PO Box 3995
Omaha, NE  68103-0995

One License.net
7343 South Mason Ave
Chicago, IL 60638-6274

Our Lady Of Mercy Mission
121 6th Ave W
Melstone, MT 59054

Our Lady of Loretto Parish
11723 E Helen St
Lodge Grass, MT 59050

Our Lady of Lourdes
409 13th St S
Great Falls, MT 59405-2398

Our Lady of Lourdes Church
PO Box 187
Poplar, MT 59255-0187

Our Lady of Ransom
PO Box 647
Chester, MT 59522-0647

Pharmacy 1
2900 12th Ave N
Billings, MT 59101-7503

Public Works Utilities
PO Box 30958
Billings, MT 59107-0958

QWEST CORPORATION DBA CENTURYLINK
931 14ST ST STE 900
DENVER CO 80202-2994

Queen of the Angels
PO Box 471
Glasgow, MT 59230-0471

Quill Corporation
PO Box 37600
Philadelphia, PA  19101-0600

Red's Fixit Shop
PO Box 20782
Billings, MT 59104-0782

Republic Service
PO Box 78829
Phoenix, AZ  85062-8829

Rev. Anthony J. Schuster
c/o Joe and Stevi Schuster
2002 Wyndham Park Dr
Billings, MT 59102-8116

Rev. Charles Gorman
2351 Solomon Ave, Apt 157
Billings, MT 59102-2885

Rev. Daniel O'Rourke
1701 26th St S, Apt 2
Great Falls, MT  59405-5173

Rev. James E. Birkmaier
The Lodge
1801 9th St S, Apt 225
Great Falls, MT 59405-5616

Rev. James M. Sikora
1915 13th Ave S
Great Falls, MT  59405-4810

Rev. Jerry Connolly
PO Box 456
Joliet, MT  59041-0456

Rev. John J. Houlihan
2003 Woody Dr, Apt 4
Billings, MT  59102-2891

Rev. John P. Krier
PO Box 449
Air Way Heights, WA  99001-0449

Rev. Lothar Krauth
3724 8th Ave N
Great Falls, MT  59401-2229

Rev. Marcel Vogel
1701 26th St S, Apt. 3
Great Falls, MT 59405-5173

Rev. Peter E. Guthneck
St Mary Church
PO Box 3009
Box Elder, MT 59521-3009

Rev. Richard J. Hopkins
c/o Tina Hopkins
26700 Cortrite Ave.
Hemet, CA 92545-9288

Rev. Richard Osterman
PO Box 2011
Red Lodge, MT  59068-2011

Rev. Robert D. Grosch
St Patrick Co-Cathedral
215 N 31st St
Billings, MT 59101-1908

Rev. Ted Szudera
PO Box 6507
Great Falls, MT  59406-6507

Rev. Terrence P. Regan
PO Box 25
Great Falls, MT  59403-0025

Rev. Thomas C. Harney
1440 Granite Ave, Apt B
Billings, MT  59102-0716

Rev. Thomas M. Beggin
1631 41st St W
Billings, MT 59106-1742

Rev. Thomas Tobin
PO Box 407
Ekalaka, MT  59324-0407

Rev. William Cawley
1701 26th St S, Apt 4
Great Falls, MT 59405-5173

Rev. William Hogan
The Lodge
1801 9th St S, Apt 105
Great Falls, MT 59405-5613

SAINT LOUIS CONSULTATION CENTER
AKA SAINT LUKE CONSULTATION CENTER
8901 NEW HAMPSHIRE AVE
SILVER SPRING MD 20903-3611

SS Cyril and Methodius
C/O ST BERNARD
226 WICKS LANE
BILLINGS MT 59105-3725

Sacred Heart
P.O. Box 236
Fort Belknap, MT 59526-0236

Sacred Heart Church
PO Box 647
Chester, MT 59522-0647

Sacred Heart Mission
100 2nd Ave E
Hobson, MT 59452

Sacred Heart Mission
201 44th St S
Great Falls, MT 59405-1653

Sacred Heart Mission
225 2nd Ave E
Dodson, MT 59524

Sacred Heart Mission
314 Clinton St
Bainville, MT 59212

Sacred Heart Parish
PO Box 36
Glendive, MT 59330-0036

Sacred Heart Parish
Rev. Francis Schreiber
316 W Benham St
Glendive, MT 59330-1705

Sacred Heart Parish
Rev. Masilamani Suvakkin
PO Box 309
Bridger, MT 59014-0309

Sacred Heart Parish
Rev. Robert Oswald
120 N Montana Ave
Miles City, MT 59301-3510

Schiff Harden
Everett/Cygal
233 South Wacker, Ste. 6600
Chicago, IL 60606-6360

Screening One, Inc.
PO Box 749363
Los Angeles, CA 90074-9363

Snyder Drug
2515 6th Ave N
Great Falls, MT 59401-1996

St Aloysius Parish
112 W Main St
Winnett, MT 59087

St David Parish
225 N Wilber St
Broadus, MT 59317

St Francis De Sales Mission
301 S Main St
Richey, MT 59259

St Francis Of Assisi Parish
500 Wilson Ave
Saco, MT 59261

St John The Evangelist Parish
210 W Center Ave
Baker, MT 59313-9137

St Margaret Parish
623 Brewster St
Geraldine, MT 59446

St Mary Church
Rev. Nelson and Rev. Sticha
101 S 7th St W
Malta, MT 59538

St Mathias Parish
310 2nd St NE
Moore, MT 59464

St Philip Bonitus Parish
404 Timmons St
Scobey, MT 59263

St. Agnes Parish
1 N Word Ave
Red Lodge, MT 59068-9009

St. Albert
304 Minnesota
Hinsdale, MT 59241

St. Ann Cathedral
Rev. Oliver Doyle
715 3rd Ave N
Great Falls, MT 59401-1501

St. Ann Mission
102 Shell St
Vida, MT 59274

St. Ann Mission
13327 Mt Highway 200
Fort Shaw, MT 59443-9409

St. Anthony Catholic Church
235 Main St E
Box Elder, MT 59521

St. Anthony Church-Plevna
c/o St. John the Evangelist
PO Box 1519
Baker, MT 59313-1519

St. Anthony Mission
1100 Main St
Denton, MT 59430

St. Anthony Parish
413 3rd Ave W
Culbertson, MT 59218

St. Anthony Parish
Rev. Barton Stevens
317 West 7th St
Laurel, MT 59044-2054

St. Benedict Church
503 Main Street
Roundup, MT 59072-2497

St. Bernard Mission
c/o St. Matthew, Rev. O'Neil
219 7th St SE
Sidney, MT 59270-5034

St. Bernard's Parish
226 Wicks Lane
Billings, MT 59105-3799

St. Catherine Mission
317 7th St W
Fairview, MT 59221

St. Charles Borromeo Mission
21228 S Pryor Gap Road
Pryor, MT 59066

St. Cyril Parish
100 Hill Ave
Geyser, MT 59447

St. Dennis Parish
76 Highway 1
Crow Agency, MT 59022

St. Francis Xavier Parish
PO Box 160
Circle, MT 59215-0160

St. Gabriel Parish
404 8th St W
Chinook, MT 59523

St. Honorata Mission
c/o St. Benedict Church
503 Main Street
Roundup, MT 59072-2425

St. Joan of Arc Parish
PO Box 1519
Baker, MT 59313-1519

St. John Church
PO Box 309
Bridger, MT 59014-0309

St. John the Baptist
412 Leavitt Ave
Jordan, MT 59337

St. Joseph
206 Orchard Ave
Hysham, MT 59038

St. Joseph
P.O. Box 789
Wolf Point, MT 59201-0789

St. Joseph Mission
PO Box 309
Bridger, MT 59014-0309

St. Joseph Parish
910 McLeod St
Big Timber, MT 59011-8097

St. Joseph Parish
Rev. Joseph Ponessa
716 N Custer Ave
Hardin, MT 59034

St. Joseph Parish
Rev. Patrick Zabrocki
301 N Main St
Plentywood, MT 59254-1649

St. Jude Thaddeus Parish
Rev. Daniel Wathen
624 4th St
Havre, MT 59501

St. Labre Parish
Tongue River Road
Ashland, MT 59003

St. Leo the Great Parish
Rev. Samuel Spiering
102 W Broadway St
Lewistown, MT 59457-1735

St. Margaret Mary Parish
320 Water Ave
Colstrip, MT 59323-9685

St. Margaret Mary Parish
400 Johannes
Big Sandy, MT 59520

St. Margaret Parish
206 1st Ave N
Clyde Park, MT 59018

St. Mark Parish
128 Castner St
Belt, MT 59412

St. Mary Catholic Church
Rev. Joseph Diekhans
11 W Quincy Ave
Chester, MT 59522

St. Mary Church
212 4th Ave
Custer, MT 59024

St. Mary Church
Rev. Leo McDowell
511 S F St
Livingston, MT 59047-3539

St. Mary Mission
100 Main St
Raynesford, MT 59469

St. Mary Parish
Rev. Gregory Staudinger
P.O. Box 956
Columbus, MT 59019-0956

St. Mathias
305 Kemp St
Ryegate, MT 59074

St. Matthew Parish
219 7th St SE
Sidney, MT 59270-5034

St. Michael
307 S Woodard St
Absarokee, MT 59001

St. Michael Mission
120 2nd Ave
Savage, MT 59262

St. Patrick
401 Main St
Medicine Lake, MT 59247

St. Patrick Co Cathedral
215 N 31st
Billings, MT 59101-1908

St. Paul Indian Mission
#1 Mission Dr
Hays, MT 59527

St. Peter
PO Box 217
Wibaux, MT 59353-0217

St. Philip
P.O. Box 217
Wibaux, MT 59353-0217

St. Pius X Catholic Church
Rev. Wayne Pittard
717  18th St W
Billings, MT 59102-4001

St. Raphael Parish
Rev. Jose Valliparambil
412 3rd Ave N
Glasgow, MT 59230-1825

St. Rose of Lima Church
Rev. Domenico Pizzonia
101 4th St W
Stanford, MT 59479

St. Theresa Mission
212 N Main St
Lambert, MT 59243

St. Theresa of the Little Flower
16638 Iowa
Broadview, MT 59015

St. Thomas Aquinas
10610 Wing Rd
Hogeland, MT 59529-9641

St. Thomas Mission
PO Box 187
Popular, MT 59255-0187

St. Thomas The Apostle
Rev. Stephen Zabrocki
2055 Woody Dr
Billings, MT 59102-2803

St. Thomas the Apostle
210 1st Ave SE
Harlem, MT 59526-9024

St. William Mission
P.O. Box 646
Livingston, MT 59047-0646

Steven J. Heim
U.S. Bank National Association
U.S. Bancorp Center
800 Nicollet Mall, BC-MN-H21N,
Minneapolis, Minnesota 55402-7000

Susan Shannon on behalf of M.S.
Bryan L. Spoon
Spoon Gordon Ballew
PO Box 8869
Missoula, MT  59807-8869

Susan Shannon on behalf of M.S.
c/o Daniel Flaherty
Patrick Flaherty
PO Box 1968
Great Falls, MT 59403-1968

The Lodge Senior Living Cntr
1801 9th St S
Great Falls, MT 59405-5608

The St. Louis Consultation Cntr
1750 Brentwood Blvd., Ste 602
St. Louis, MO 63144-1342

UI Contributions Bureau
PO Box 6339
Helena, MT  59604-6339

US SECURITIES AND EXCHANGE COMMISSION
LOS ANGELES REGIONAL OFFICE
ATTN SANDRA LAVIGNA
444 S FLOWER ST STE 900
LOS ANGELES CA 90071-2934

Universal Athletic Service
912 N 7th S Ave
Bozeman, MT 59715-2540

Verizon
PO Box 660108
Dallas, TX 75266-0108

Very Rev. Jay Peterson
1701 26th St S, Apt 1
Great Falls, MT 59405-5173

W. Carl Mendenhall
Warden Thane P.C.
PO Box 4747
Missoula, MT  59806-4747

World Library Publications
J.S. Paluch Co., Inc.
PO Box 2703
Schiller Park, IL 60176-0703

AARON YORK
OFFICE OF THE US TRUSTEE
ATTN: LESLIE
301 CENTRAL AVENUE STE 204
GREAT FALLS, MT 59401-3113

BONNIE SHUSTER
US DEPT OF JUSTICE
OFFICE OF THE US TRUSTEE
720 EAST PARK BLVD, SUITE 220
BOISE, ID 83712-7785

BRUCE A ANDERSON
ELSAESSER JARZABEK ANDERSON ELLIOT & MAC
320 E NEIDER AVE STE 102
COEUR D'ALENE, ID 83815-6007

BRUCE ALAN ANDERSON
ELSAESSER ANDERSON, Chtd.
320 East Neider Avenue
Suite 102
COEUR D'ALENE, ID 83815-6007

Drew Blewett
Hoyt & Blewett PLLC
PO Box 2807
Great Falls, MT 59403-2807

FORD ELSAESSER
PO BOX 2220
SANDPOINT, ID 83864-0909

FORD ELSAESSER
ELSAESSER ANDERSON, CHTD.
PO BOX 1049
414 Church Street, Suite 201
SANDPOINT, ID 83864-0070

GREGORY J HATLEY
DAVIS HATLEY HAFFEMAN & TIGHE PC
101 RIVER DRIVE NORTH
GREAT FALLS, MT 59401-2599

Gary Dyer W,
U.S. Department of Justice
Office of the United States Trustee
920 W. Riverside Ave,
Suite 593
Spokane, WA 99201-1012

JOSEPH PONESSA
710 NORTH CUSTER AVE
HARDIN, MT 59034-1527

MAXON R. DAVIS
DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.
101 RIVER DRIVE NORTH
GREAT FALLS, MT 59401-2599

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Holy Family
530 Main St
Winifred, MT 59489

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

Holy Family
102 1st Ave N
Glentana, MT 59240

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Abuse Survivors                  (u)BERKLEY RESEARCH GROUP            (u)BILLINGS CATHOLIC SCHOOLS

(u)Catholic Mutual Relief Society   (u)Corpus Christi (Great Falls)      (u)HEAD START, INC.