Ford Elsaesser, Esq.
Bruce A. Anderson, Esq.
ELSAESSER ANDERSON, CHTD.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID  83815
Telephone: 208-667-2900
Facsimile: 208-667-2150
Email:  ford@eaidaho.com
          brucea@eaidaho.com

*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In Re: | |
| | Chapter 11 |
| Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporate Sole, | |
| | Case No. 17-60271 |
| Debtor-In-Possession | |

**MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA**

The Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporate Sole, proposes the following modified Plan[1] pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

Reference is made to the Disclosure Statement for this Plan for a discussion of the Debtor's history, businesses, assets, Case, risk factors, summary and analysis of the Plan, and certain other related matters.

Subject to the provisions of Section 1127 of the Bankruptcy Code and those restrictions on modification set forth in Sections 15.2, 15.15 and 15.18 of the Plan, the Debtor reserves the right to amend, alter or modify the Plan one or more times before the hearing on confirmation and before its substantial consummation; provided, however, that the Debtor shall not have the right to amend, alter or modify any provision of the Plan that specifically affects any of the Protected Parties  (defined below) or the rights and obligations of any of the Protected Parties under the Plan without prior written consent of the Protected Parties and any such amendment, alteration or modification without such written consent shall be void.

---

[1] Capitalized terms used but not defined in this preamble shall have the meanings and definitions ascribed to them in Section II of the Plan.

## Table of Contents

SECTION I RULES OF INTERPRETATION.................................................................. 3
SECTION II DEFINITIONS .......................................................................................... 4
SECTION III PLAN OBJECTIVES ............................................................................. 16
SECTION IV TREATMENT OF UNCLASSIFIED CLAIMS.................................... 17
SECTION V CLASSIFICATION OF CLAIMS ........................................................... 19
SECTION VI TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS............................. 21
SECTION VII TREATMENT OF IMPAIRED CLASSES OF CLAIMS ................. 21
SECTION VIII ACCEPTANCE OR REJECTION OF PLAN ..................................... 26
SECTION IX TRUST .................................................................................................... 27
SECTION X MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 28
SECTION XI CONDITIONS PRECEDENT ................................................................ 41
SECTION XII EFFECTS OF PLAN CONFIRMATION AND DISCHARGE........................ 42
SECTION XIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES ................................................................................................................... 46
SECTION XIV COMMITMENTS................................................................................. 47
SECTION XV MISCELLANEOUS PROVISIONS...................................................... 47
SECTION XVI RECOMMENDATIONS AND CONCLUSION ............................... 55

## SECTION I
## RULES OF INTERPRETATION

**1.1**      The rules of construction in Bankruptcy Code Section 102 apply to this Plan to the extent not inconsistent with any other provision in this Section I.

**1.2**      In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. If any act under the Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.   Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.3**      Terms that are not defined in Section II of the Plan may be defined elsewhere in the Plan, provided however, that such definitions shall apply only within the Section that such term is defined.   A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Disclosure Statement, the Confirmation Order, the Trust Agreement, the Bankruptcy Code or the Bankruptcy Rules.

**1.4**      The definition of any term or provision in a Plan Document shall be incorporated by reference in this Plan unless this Plan provides a different definition for such term or provision.   In the event of any conflict between a definition of a term or provision in a Plan Document and the Plan, the definition or provision in the Plan will control unless otherwise provided in the Plan or the Confirmation Order.

**1.5**      If the definition given to any term or provision in the Plan is inconsistent with the definition of such term under the Bankruptcy Code, the definition ascribed to such term in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Trust Agreement.

**1.6**      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.   No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.

**1.7**      Unless otherwise specified, any reference to an existing document means the document as it has been, or may be, amended or supplemented.

**1.8**      Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of the Plan.

**1.9**     Unless otherwise specified, all references to the terms "Sections," "clauses" or "exhibits" are references to this Plan's Sections, clauses or exhibits. Such references shall be applicable regardless of whether or not such terms are capitalized.

**1.10**     Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

**1.11**     All definitions in the Bankruptcy Code and below will be subject to the rules of construction set forth in Section 102 of the Bankruptcy Code. In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to," "relates to," or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with.

**1.12**     Any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions. Any specific references to promissory notes, deeds of trust or other debt instruments or security documents include any amendments, modifications and extensions thereto.

**1.13**     Nothing contained in this Plan constitutes an admission or denial by any Entity of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

## SECTION II
## DEFINITIONS

**2.1**     **"Abuse"** means any (a) act of sexual conduct, misconduct, abuse, or molestation; any other sexually related act, contact, or interaction; indecent assault and/or battery; rape; lascivious behavior; undue familiarity; pedophilia; or ephebophilia; (b) act that causes or allegedly causes sexually-related physical, psychological, or emotional harm, or any other contacts or interactions of a sexual nature, including any such contacts or interactions between a child and an adult, or a nonconsenting adult and another adult; (c) assault; battery; corporal punishment; or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation; or (d) fraud, fraud in the inducement, misrepresentation, concealment, unfair practice, or any other tort relating to the acts and/or omissions listed in subparts (a)-(c) of this sentence. Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the person.

**2.2**     **"Abuse Claims Reviewer"** means the Entity, including the designee of such Entity, who will assess Tort Claims pursuant to the Allocation Protocol. Subject to the Plan's provisions for replacement of the Abuse Claims Reviewer, the Abuse Claims Reviewer is Hon. William B. Bettinelli (retired).

**2.3** **"Abuse Related Contingent Claim"** means any Entity's Claim for contribution, indemnity, or reimbursement arising as a result of such Entity's liability to pay or defend any Tort Claim.

**2.4** **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code including the actual, necessary costs and expenses of preserving the Debtor's estate and operating the Debtor's businesses, compensation for professional services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor's estate under chapter 123 of Title 28, United States Code.

**2.5** **"Affiliate"** shall have the meaning ascribed to it under 11 U.S.C. § 101(2) and shall include an Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with the other Entity. "Affiliate" includes Subsidiary and Parent.

**2.6** **"Allocation Protocol"** means the Allocation Protocol set forth as Exhibit A.

**2.7** **"Allowance Date"** means, with respect to a Claim, the date such Claim becomes Allowed.

**2.8** **"Allowed"** means, (i) any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 12.9 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (iii) any Claim tardily filed with leave of the Bankruptcy Court; or (iv) any Claim expressly allowed by a Final Order or hereunder. Tort Claims are not deemed Allowed Claims except as specifically provided in this Plan.

**2.9** **"Award"** means the amount payable to a Tort Claimant as determined in accordance with the terms of this Plan.

**2.10** **"Ballot"** means the ballot that is used by a Claimant to accept or reject the Plan, and pursuant to which each Claimant may make certain elections regarding the treatment of such Claimant's Claims as provided in the Plan, including releases of the Protected Parties as set forth in the Catholic Mutual Settlement and the Plan.

**2.11** **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and any amendments thereto.

**2.12** **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Montana, or such other court having jurisdiction over this Case or any proceeding within.

**2.13** **"Bankruptcy Notice"** means notice as required under Bankruptcy Rule 2002,

6004(a) and (c) and applicable local rules, sent to (a) all known holders of Claims against any Diocese Party, including Tort Claims, and their attorneys, if any; (b) the Unknown Claims Representative; (c) the Committee; (d) Catholic Mutual; (e) the United States Attorney for the District of Montana; (f) all Entities who, in the opinion of any Protected Party, might reasonably be expected to be affected by the sale; (g) each of the Diocese Parties; and (h) the United States Trustee; and (i) all other Entities as required by the Bankruptcy Code or as directed by the Court. Notice may also be given by local publication within Montana and the surrounding areas.

2.14 **"Bankruptcy Rules"** means the Rules and Forms of Practice and Procedures in Bankruptcy promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 Case, together with all amendments and modifications thereto.

2.15 **"Business Day"** means any day other than Saturday, Sunday, or a "legal holiday," as that term is defined in Bankruptcy Rule 9006(a).

2.16 **"Case" or "Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by the Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporate Sole, on March 31, 2017, Case No. 17-60271.

2.17 **"Cash"** means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

2.18 **"Catholic Mutual"** means the Catholic Mutual Relief Society of America.

2.19 **"Catholic Mutual Parties"** means Catholic Mutual and, solely in the capacity as such, i) each of its past, present and future parents, subsidiaries, affiliates, and divisions; ii) each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

2.20 **"Catholic Mutual Settlement"** means the settlement agreement by and amongst the Diocese Parties and Catholic Mutual as set forth at Sections 10.2 through 10.2.32 hereof.

2.21 **"Catholic Mutual Settlement Amount"** means the sum of $8 million dollars.

2.22 **"Certificates"** means any and all known and unknown binders, certificates issued or allegedly issued by any of the Catholic Mutual Parties to the Diocese along with any other Diocese Party, listed on Schedule 2.22 to this Plan.

2.23 **"Causes of Action"** means any and all Claims, whether arising prior to, on or after the Petition Date, of the Estate, including (1) rights of setoff, counterclaim or recoupment, and Claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims; (3) Claims pursuant to Section 362 of the Bankruptcy Code; (4) Claims and defenses as

fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Claims under Sections including those arising under Sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transfer Act, or any law of similar effect; (6) Claims for tax refunds; and (7) any other Claims that may be asserted against third parties or insiders.

     **2.24** **"Channeled Claim"** means any Claim against any of the Protected Parties (or any Entity covered by the Catholic Mutual Parties to the extent such Claim arises from the same injury or damages asserted as a Claim against the Protected Parties) that, directly or indirectly, arises out of, relates to, or is in connection with the same facts and circumstances giving rise to a Tort Claim,  including any Medicare Claim, Related Insurance Claim and all Tort Claims that relate to the Certificates. Channeled Claims excludes Covered Non-Tort Claims.

     **2.25** **"Channeling Injunction"** means the injunction provided under Section 12.6 of the Plan.

     **2.26** **"Chapter 11 Professionals"** means, collectively, the Debtor's Professionals and, the Committee's Professionals.

     **2.27** **"Claim"** means any past, present or future claim, assertion of right, complaint, cross-complaint, counterclaim, liabilities, rights, request, allegation, arbitration, mediation, litigation, direct action, administrative proceeding, demand, action, request, cause of action, suit, action, lawsuit, proceeding, lien, debt, bill, indemnity, equitable indemnity, subrogation, equitable subrogation, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, recoupment, reimbursement, restitution, cost, expense, loss, exposure, execution, attorneys' fee, obligation, order, affirmative defense, writ, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or action, settlement, and/or any liability whatsoever, or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or unasserted, suspected or not suspected, anticipated or unanticipated, accrued or unaccrued, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, which may exist now or hereinafter for property damage, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, exemplary damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, which has been or may be asserted by or on behalf of any Entity in any jurisdiction, whether seeking damages or equitable, mandatory, injunctive, or any other type of relief, including any other claim within the definition of Section 101(5) of the Bankruptcy Code.  For the avoidance of doubt, "**Claim**" includes, any claim or cause of action or damages relating to a "**Wrongful Act**" as defined under the Certificates, "**Contribution Claim**", any "**Related Insurance Claim**", any "**Channeled Claim**", any "**Extra-Contractual Claim**", "**Interest**", any "**Tort Claim**", "**Abuse Related**

**Contingent Claim**", any "**Unknown Tort Claim**", "**Administrative Claim**", Medicare Claim and any "**Direct Action Claim**."

2.28    **"Claimant"** means a holder of a Claim.

2.29     **"Claims Bar Date"** means July 31, 2017, which was the last date for filing Claims against the Estate pursuant to the Bankruptcy Court's Order entered on June 7, 2017 [Docket No. 121].

2.30    **"Claims Objection Bar Date"** means, unless extended by the Court, the first Business Day that follows the 60th day after the Effective Date, by which any objection to a Claim (excluding Tort Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

2.31    **"Closing"** means the payments and transfers to the Trust of those assets required to be paid and transferred in accordance with Section 10.5 of the Plan.

2.32    **"Co-Defendant"** means an Entity that is named or could be named as a defendant in a lawsuit in which the Debtor is also named or could be named as a defendant and/or who is alleged to be fully, partially or jointly responsible for a Claim asserted or that could be asserted in the future against both such Entity and the Debtor, including a co-debtor as described in Section 509 of the Bankruptcy Code.  For purposes of the Plan, none of the Protected Parties is or shall be deemed to be a Co-Defendant.

2.33    **"Committee"** means the Official Committee of Unsecured Claimants appointed by the United States Trustee in the Case, as such committee may be reconstituted from time to time.

2.34    **"Committee's Professionals"** means Pachulski Stang Ziehl & Jones LLP; and Berkeley Research Group and all other professionals, if any, which the Committee has retained or may retain to provide professional services in accordance with Section 1103(a) of the Bankruptcy Code and as approved by the Bankruptcy Court.

2.35    **"Confirmation Date"** means the date of the entry of the Confirmation Order.

2.36    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

2.37    **"Confirmation Order"** means a Final Order confirming the Plan after a hearing upon Bankruptcy Notice.  The Confirmation Order shall be acceptable in form and substance to the Debtor, the Committee, and Catholic Mutual.  The Confirmation Order shall contain no provision that is contrary to or inconsistent with the Catholic Mutual Settlement.

2.38    **"Contingent"** means, with respect to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

**2.39** **"Contribution Claim"** means any Claim by an Insurer against any other Insurer of a seeking contribution, equitable contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, "other insurance" clauses rights, or pursuant to any other theory under law or in equity relating to the defense or payment of such paying insurer of all or any part of any Claim (a) asserted against a Diocese Party; (b) relating to the Certificates; (c) relating to the Tort Litigation; or (d) channeled to or paid, in whole or in part, by the Trust.

**2.40** **"Covered Entity"** means any and all named covered party, Protected Person or Protected Party (as such terms are defined in any Certificate) and additional covered party and any Entity covered under the Certificates.

**2.41** **"Covered Non-Tort Claim"** means any Claim, other than a Tort Claim, Medicare Claim or Channeled Claim, that is covered by a Certificate issued to the Diocese.

**2.42** **"Debtor's Professionals"** means Elsaesser Anderson, Chtd; Davis, Hatley, Haffeman & Tighe, PC; and Douglas Wilson and Company, PC and all other professionals, if any, which the Debtor has retained or may retain to provide professional services in accordance with Sections 327(a) and 327(e) of the Bankruptcy Code.

**2.43** **"Diocese" or "Debtor"** means the Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporate Sole.  The "Diocese" may also be referred to as the "Debtor," within this Plan and exhibits.

**2.44** **"Diocese Parties"** means collectively the Reorganized Debtor, the Diocese and: (i) the Entities listed on Schedule 2.44 to this Plan, including all parishes of the Diocese (**"Parishes"**); (ii) any and all named covered party, covered party, Covered Entity and additional covered party and any Entity alleged to be  covered under the Certificates with respect to whom the Diocese has authority to release the Claims released pursuant to the Catholic Mutual Settlement and this Plan; (iii) each of the past, present and future Affiliates, holding companies, merged companies, related companies, divisions and acquired companies of the Diocese and the Entities listed in Schedule 2.44 (i) and (ii) above, each of their respective past, present, present and future Affiliates, holding companies, merged companies, related companies, divisions and acquired companies, and each of their respective predecessors, successors (except to the extent their liability is independent of any liability of the Diocese and the Entities listed in Schedule 2.44 (i) and (ii) above) and assigns; and (iv) any and all past and present shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, and Representatives of Diocese and the Entities listed on Schedule 2.44 (i)-(iii) above, in their capacity as such.  For avoidance of doubt, any Perpetrator (a) shall not be and shall not be deemed a Diocese Party under this Plan, and (b) shall not be granted a release of liability from any party (including Tort Claimants) under this Plan.

**2.45** **"Direct Action Claim"** means any Claim by any Entity against Catholic Mutual identical or similar to, or relating to, any Tort Claim, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

**2.46** **"Disallowed Claim"** means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

**2.47** **"Disclosure Statement"** means the Disclosure Statement relating to this Plan, as it may be amended from time to time.

**2.48** **"Disclosure Statement Order"** means the Order entered by the Bankruptcy Court approving the Disclosure Statement.

**2.49** **"Disputed Claim"** means a Claim: (a) is listed as disputed in the Debtor's Schedules filed with the Bankruptcy Court; or (b) as to which a proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b) (1) and as to which a timely objection has been filed and not been withdrawn or resolved by consensual agreement or by a Final Order of the Bankruptcy Court.

**2.50** **"Distribution"** means any transfer of Cash or other property or instruments to either a Claimant by the Reorganized Debtor or the Trustee.

**2.51** **"Entity"** means an individual, any corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other "Person" within the definition of Section 101(41) of the Bankruptcy Code, and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity and also has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**2.52** **"Effective Date"** means the first Business Day after the Confirmation Date on which all conditions to effectiveness specified in Section 11.1 of this Plan have been satisfied or waived, or 30 days after the Confirmation Order, whichever date is later.

**2.53** **"Estate"** means the bankruptcy estate of the Debtor as created under Section 541 of the Bankruptcy Code.

**2.54** **"Estimated Amount"** means the amount at which the Bankruptcy Court or the U.S. District Court for the District of Montana, pursuant to 28 U.S.C. §157(b)(2)(B), Section 502(c) of the Bankruptcy Code, and Bankruptcy Rule 3018(a) as the case may be, estimates any Claim or class of Claims that is Contingent, unliquidated, or disputed, including any Tort Claim or class thereof, for the purpose of (a) allowance, (b) Distribution, (c) confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, (d) voting to accept or reject this Plan pursuant to Section 1126 of the Bankruptcy Code, or (e) any other purpose.

**2.55** **"Estimation Order"** means an order of the Bankruptcy Court or the U.S. District Court for the District of Montana, as applicable, that determines the Estimated Amount of any Claim or Claims for any purpose, whether individually or as part of an aggregate.

**2.56** **"Exculpated Parties"** means the Diocese Parties, Catholic Mutual Parties and the Committee and all of their respective present or former members, counsel for such members, managers, and Representatives, acting in such capacity. "Exculpated Parties" shall not include a Perpetrator.

**2.57** **"Extra-Contractual Claim"** means any Claim against Catholic Mutual relating to (a) allegations that Catholic Mutual acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; (b) failure to act in good faith; (c) failure to provide insurance coverage under any Policy; (d) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied or otherwise; (e) violation of any statute, regulation or code governing unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising, including any violation of any unfair Claims practices act or similar statute, regulation, or code; failure to investigate or provide a defense or an adequate defense; any type of alleged misconduct; (f) or any other act or omission of Catholic Mutual of any type for which the Claimant seeks relief other than coverage or benefits under a policy of insurance. Extra-Contractual Claims include: (i) any Claim that relates to Catholic Mutual's handling of any Claim or any request for insurance coverage, including any request for coverage for and/or defense of any Claim, including any Tort Claim; (ii) any Claim that, directly or indirectly relates to any of the Certificates and any contractual duties arising therefrom, including any contractual duty to defend any of the Diocese Parties against any Tort Claims; and (iii) the conduct of the parties with respect to the negotiation of the Catholic Mutual Settlement.

**2.58** **"Final Order"** means an order, judgment, or other decree (including any modification of amendment thereof) of the Bankruptcy Court, a U.S. District Court, or any other court having jurisdiction that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal or review has been taken, (i) it has been resolved and no longer remains pending or (ii) the Debtor and the Committee, or the Trustee (after the Effective Date), Catholic Mutual, have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order.

**2.59** **"General Release"** means that certain release of claims against the Protected Parties, the language of which is set forth in Exhibit 1 to the Ballots.

**2.60** **"General Unsecured Claim"** means any Claim against the Debtor that is not a Tort Claim, Administrative Claim, Priority Tax Claim or a Claim that is otherwise classified under the Plan.

**2.61** **"General Unsecured Convenience Claim"** means any General Unsecured Claim in an amount of $500 or less, or voluntarily reduced to $500 by the holder of such Claim.

**2.62** **"Insurer"** means (a) Catholic Mutual that during any period of time either (i) provided a certificate of coverage to the Debtor and/or a Diocese Party, or any of their

predecessors, successors, or assigns, or (ii) issued or allegedly issued a binder or certificate to any of the Diocese Parties, or any of their predecessors, successors, or assigns; and (b) any other Entity owing or allegedly owing a duty to defend and/or indemnify any of the Diocese Parties under any binder, certificate, or policy of insurance.

2.63   **"Interest"** means all Claims, liens, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

2.64   **"Medicare Claims"** means any and all Claims relating to Tort Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSP, including Claims for reimbursement of payments made to Tort Claimants who recover or receive any distribution from the Trust and Claims relating to reporting obligations.

2.65   **"MMSEA"** means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173)", which imposes reporting obligations on those Persons with payment obligations under the MSP.

2.66   **"MSP"** means 42 U.S.C. .S.C. 42et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

2.67   **"Parent"** means any Entity that owns the majority of the shares, membership interests, or other equity interests in the other Entity.

2.68   **"Parties"** means the Diocese Parties, the Committee and the Catholic Mutual Parties.

2.69   **"Penalty Claim"** means a Claim for a fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including any Claim not meant to compensate the Claimant for actual pecuniary loss.

2.70   **"Perpetrator"** means any individual who personally committed an act of Abuse causing a Tort Claim.

2.71   **"Petition Date"** means March 31, 2017, the date the Debtor filed its voluntary petition commencing this Case.

2.72   **"Plan"** means this Plan of Reorganization (and all exhibits annexed thereto), Plan Documents and any and all modifications and/or amendments thereto.

2.73   **"Plan Documents"** means all agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are necessary or appropriate to implement the Plan, the Catholic Mutual Settlement, and the Trust, including the Trust Documents, provided that the Committee and Catholic Mutual shall have approved each of

said agreements, documents and exhibits as to form and content, such approval not to be unreasonably withheld.

2.74    **"Post-Confirmation Notice Parties"** means the Reorganized Debtor, the Trust, the Office of the U.S. Trustee and any Entity that files a request to be a Post-Confirmation Notice Party.

2.75    **"Post-Petition Proof of Claim"** has the meaning ascribed to it in section 4.1.1 hereof.

2.76    **"Post-Petition Claim Bar Date"** has the meaning ascribed to it in section 4.1.1 hereof.

2.77    **"Priority Claim"** means any Claim which, if Allowed, would be entitled to priority under Section 507 of the Bankruptcy Code.

2.78    **"Priority Claimant"** means the holder of a Priority Claim.

2.79    **"Professional"** means any Entity employed by the Debtor or the Committee pursuant to Sections 327 or 1103 of the Bankruptcy Code.

2.80    **"Professional Fee Claim"** means a Claim under Bankruptcy Code Sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of the Professionals prior to the Effective Date.

2.81    **"Pro Rata"** when applied to a Claim means the ratio of the amount distributed on account of an Allowed Claim in a Class to the amount distributed on account of all Allowed Claims in such class.

2.82    **"Proponent"** means the Debtor.

2.83    **"Protected Parties"** means Catholic Mutual Parties, the Diocese Parties and the St. Labre Parties, excluding Perpetrators.

2.84    **"Qualified Counsel"** means those attorneys representing Tort Claimants who have entered into a written retainer or fee agreements with such Claimant(s) on or before the Effective Date; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Tort Claimant(s).

2.85    **"Qualified Counsel Fees"** means the total fees payable to Qualified Counsel by the beneficiaries of a Trust subaccount based on the reserves or Distributions calculated under the Allocation Protocol in accordance with written retainer or fee agreements with those beneficiaries.

2.86    **"Qualified Counsel Costs"** means the amount equal to the unpaid reimbursable expenses (prepetition and postpetition through the Effective Date) payable to Qualified Counsel by the beneficiaries of a Trust subaccount in accordance with written retainer or fee agreement with those beneficiaries and who are utilizing the Allocation Protocol.

**2.87** **"Related Insurance Claim"** means (i) any Claim against any of the Catholic Mutual Parties for defense, indemnity, reimbursement, contribution, subrogation, or similar relief that, directly or indirectly, relates to a Tort Claim; (ii) any Extra Contractual Claim that, directly or indirectly, relates to any Tort Claim, including any Claim that, directly or indirectly, relates to Catholic Mutual's handling of any Tort Claim; (iii) any Direct Action Claim; and (iv) any Contribution Claim.

**2.88** **"Reorganized Debtor"** means the Debtor on and after the Effective Date; provided that any successor to the Diocese, Debtor or the Reorganized Debtor through a merger or suppression of the Diocese shall not have any rights or remedies by virtue of the Plan or Confirmation Order on account of Tort Claims for which the successor was independently liable.

**2.89** **"Representatives"** means the current and former officers, directors, agents, attorneys, employees, financial advisors and legal representatives of an Entity.

**2.90** **"Revested Assets"** means all assets and or property, real or personal, owned by the Debtor which are not transferred to the Trust.

**2.91** **"S/A/P Claims"** means, collectively, Secured Claims, Administrative Claims (including Professional Fee Claims), Priority Claims, and Priority Tax Claims.

**2.92** **"S/A/P Claims Reserve"** means the reserve to be established by the Reorganized Debtor for Administrative Claims (including Professional Fee Claims), Priority Claims, and Priority Tax Claims.

**2.93** **"Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs of the Debtor filed pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

**2.94** **"Section 363 Sale"** means a sale of property pursuant to the provisions of Section 363 of the Bankruptcy Code.

**2.95** **"Settled"** means, with respect to a Claim, a Claim that has been resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or a U.S. District Court, as applicable.

**2.96** **"St. Labre Parties"** means St. Labre Indian School Educational Association, a Montana non-profit corporation; St. Labre Home for Indian Children and Youth, Inc., f/k/a Cheyenne Home, a Montana non-profit corporation; Pretty Eagle Catholic Academy, f/k/a St. Xavier Mission School; and St. Charles Mission School.

**2.97** **"Subsidiary"** of an Entity means a corporation or limited liability company as to which the Entity possesses shares of common stock, membership interests, or other equity interests and exercises control through the voting of such stock or interests

**2.99** **"Supplemental Injunction"** means the injunction provided for the benefit of Catholic Mutual Parties under Section 12.6 of the Plan.

2.92 **"Temporarily Allowed"** with reference to a Claim means such Claim as temporarily allowed for any purpose other than Distribution on a Claim pursuant to Bankruptcy Rule 3018(a) or otherwise.

2.100 **"Tort Claim"** means any Claim against any of the Protected Parties that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, Catholic Mutual Parties or any other Person for whom any of the Protected Parties or Catholic Mutual Parties are allegedly responsible, including any such Claim asserted against any of the Protected Parties in connection with the Case. **"Tort Claim"** includes any Related Insurance Claims; Abuse Related Contingent Claim; Direct Action Claim; and Unknown Tort Claim.

2.101 **"Tort Claimant"** means the holder of a Tort Claim, the estate of a deceased individual who held a Tort Claim, or the personal executor or personal representative of the estate of a deceased individual who held a Tort Claim, as the case may be.

2.102 **"Tort Litigation"** means the litigation entitled *Jane Doe 1, et al. v. Roman Catholic Bishop of Great Falls, Montana, Inc., et al.*, Case No. ADV-11-1078 and *Becker v. Roman Catholic Bishop of Great Falls, Montana, Inc., et al.*, Case No. BDV-12-0101, both in Montana Eighth Judicial District, Cascade County, Montana. All parties to the Tort Litigation that are not Diocese Parties are "Litigation Parties" or the "Litigation Party."

2.103 **"Trust" means the trust to be established pursuant to the Plan and the Trust Agreement.2.104    "Trust Agreement"** means the agreement attached as Exhibit C to the Plan.

2.105 **"Trust Assets"** means all real and personal property funded to the Trust.

2.106 **"Trust Documents"** means the Trust Agreement, Allocation Protocol, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration and funding of the Trust.

2.107 **"Trustee"** means Omni Management Group, LLC, the trustee of the Trust, and any successor trustee appointed pursuant to the terms of this Plan and the Trust Agreement.

2.108 **"U.S. District Court"** means a United States District Court.

2.109 **"U.S. Trustee"** means the Office of the United States Trustee for Region 18.

2.110 **"Unknown Claim Representative"** means the Honorable Michael R. Hogan, U.S.D.J. (retired), for which application for appointment has been made in the Reorganization

Case as the legal representative of Entities holding Unknown Tort Claims by Order Motion on May 8, 2018. Pursuant thereto, and subject to the Provision of this Plan and Confirmation Order, the Unknown Claim Representative's responsibilities and duties include the following: undertaking an investigation and analysis to assist the Court in determining the estimated number of Claims and Claim amounts held by the Unknown Tort Claimants; filing proofs of Claim on behalf of all Unknown Tort Claimants by the Claims Bar Date or any Court-ordered extension thereof; negotiating with the Debtor and other appropriate parties the provisions within the Plan for the evaluation, determination, and amounts of Unknown Tort Claims; advocating the legal position of the Unknown Tort Claimants before this Court, and if necessary, filing pleadings and presenting evidence on any issue affecting the claims of the Unknown Tort Claimants; and taking all other legal actions reasonably necessary to represent the interests of the Unknown Tort Claimants.

2.111 **"Unknown Tort Claim"** means a Tort Claim relating to Abuse that occurred on or before the Effective Date for which (a) no proof of Claim is filed or deemed filed on or before the Claims Bar Date; (b) a proof of Claim is filed after the Claims Bar Date, if the Entity asserting the Tort Claim (i) is under eighteen years of age on the Claims Bar Date; (ii) neither discovered nor reasonably should have discovered before the Claims Bar Date that his or her injury was caused by Abuse; (iii) has a Tort Claim that was barred by the applicable statute of limitations as of the Claims Bar Date but is no longer barred by the applicable statute of limitations for any reason, including, for example, the passage of legislation that revives such previously time-barred Tort Claims; or (iv) any other individual or class of individuals the Unknown Claim Representative can identify that would have a Claim prior to the Effective Date.

2.112 **"Unknown Tort Claimant"** means the holder of an Unknown Tort Claim.

2.113 **"Unknown Tort Claims Reserve Fund"** means a fund in the initial amount of $ to be determined to be paid to the Trust by the Debtor on account of payment of allowed Unknown Tort Claims. Such fund shall be administered by the Trust pursuant to the terms of the Plan and the Trust Documents.

2.114 **"Unclaimed Property"** means any Cash or other property which is unclaimed for one hundred and eighty (180) days after the Distribution.

2.115 **"Unresolved"** means, with respect to a Claim, a Claim that has neither been Allowed or Disallowed nor liquidated.

## SECTION III
## PLAN OBJECTIVES

### 3.1    Objectives

The Plan provides the means for settling and paying all Claims asserted against the Debtor. The Plan provides for the creation of a Trust and channeling of all Channeled Claims to the Trust for allowance and Distribution to Tort Claimants. The Trust's assets will consist of Cash from the Debtor via Parishes and the St. Labre Parties, and contributions from the Catholic faithful, and contributions by Settling Insurer. Trust assets will be used to fund certain of the Trust's costs and expenses and payments to Tort Claimants. Distributions and reserves from the

Trust to Tort Claimants will be determined by application of the Allocation Protocol and, where applicable, the Trustee's business judgment. Employee/Retirement claims are unimpaired and will be paid as they come due. Some scheduled claimants may be separate juridic persons under Canon Law, and are unincorporated associations pursuant to Montana Civil Law that have placed property in trust with the Diocese Corporation Sole. The liabilities of such associations shall be administered pursuant to Canon Law. General Unsecured Convenience Claims total $6,784.61 and shall be paid on the Effective Date. Allowed General Unsecured Claimants will receive their Pro Rata share of $98,181.69, based on known amounts. This figure may change after the conclusion of the Claims objection process, depending on the allowance or disallowance of certain Claims. The Debtor will receive the benefit of a Section 1141(d) discharge. The Catholic Mutual Parties and the Protected Parties will receive the benefit of injunctions and releases provided under the Plan and the Catholic Mutual Settlement. On confirmation, the post-petition litigation at Adversary Proceeding 17-00081 and 18-00014 will be dismissed against the Debtor and all named defendants, with prejudice. Nothing in this Plan is intended to replace and does not affect, diminish or impair the liabilities of any Co-Defendant or guarantor that is not a Protected Party or Exculpated Party under applicable non-bankruptcy law, including any laws governing joint and several liabilities; provided that, notwithstanding any other provision of the Plan, any Class 8 Claimant that is or could have been alleged to be a joint tortfeasor with any of the Protected Parties in any action brought by a Tort Claimant shall not be liable for any Protected Party's share of causal liability, fault, or damages, by reallocation or otherwise.

## SECTION IV
## TREATMENT OF UNCLASSIFIED CLAIMS

### 4.1      Administrative Claims

Each holder of an Allowed Administrative Claim against the Debtor shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the Holder of an Administrative Claim. Provided, however, that subject to section 4.1.1 below, any Administrative Claim incurred postpetition by the Debtor in the ordinary course of its operations or arising pursuant to one or more postpetition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other. Notwithstanding any other provision hereof, all Tort Claims that occurred or arose after the Petition Date and on or before the Effective Date constitute Channeled Claims, subject to 12.1.1 hereof, the Channeling Injunction and Supplemental Injunction.

### 4.1.1    Bar Date for Claims Arising or Occurring After Petition Date

All Claimants holding an unpaid Claim against the Diocese or Protected Parties that arose or occurred after the Petition Date and on or before the Effective Date, including Administrative

Claims and Tort Claims, shall file with the Bankruptcy Court and serve on the Post-Confirmation Notice Parties proof of such post-petition Claim ("**Post-Petition Proof of Claim**") no later than forty-five (45) days after a notice of the Effective Date is filed with the Bankruptcy Court (the "**Post-Petition Claims Bar Date**").  All unpaid Claims that arose or occurred after the Petition Date and on or before the Effective Date for which a Post-Petition Proof of Claim is not timely filed are hereby released, barred and discharged and holders of such Claims are enjoined from pursuing such Claim against or collecting from any Protected Party.

### 4.1.1   Objections to Post-Petition Proofs of Claims

Objections to Post-Petition Proofs of Claims must be filed and served on the Post-Confirmation Notice Parties and the applicable Claimant on or before (A) forty-five (45) days after the Post-Petition Claims Bar Date or (B) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Claimant.

### 4.2   Professional Claims

### 4.2.1   Bar Dates for Professional Claims

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and serve on the Post-Confirmation Notice Parties an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than (A) forty-five (45) days after a notice of the Effective Date is filed with the Bankruptcy Court and served on such Professional or other Entities, or (B) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period (the "**Professional Claims Bar Date**").

### 4.2.2   Objections to Professional Claims

Objections to Professional Claims or Claims of other Entities for compensation or reimbursement of expenses must be filed and served on the Post-Confirmation Notice Parties and the Professionals or other Entities to whose application the objections are addressed on or before (A) forty-five (45) days after the Professional Claims Bar Date or (B) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Professional or other Entity.

4.2.3   Notwithstanding anything contained in Section 4.2, the allowance of a Professional Claim shall not affect, impair, diminish or be an adjudication of any Claim that is excepted from the exculpation contained in Section 12.5.

### 4.3    U.S. Trustee Fees

All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee, in Cash, until the Case is closed, and a Final Decree is entered. In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and Debtor's Estate.

### 4.4    Priority Tax Claims

With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall (i) pay such Claim in Cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtor or the Reorganized Debtor than the treatment set forth in clause (i) of this sentence.

## SECTION V
## CLASSIFICATION OF CLAIMS

**5.1**    All Claims except Administrative Claims and Priority Tax Claims are placed in the following classes for all purposes including voting, confirmation of the Plan and Distribution pursuant to the Plan. A Claim is classified in a particular class only to the extent the Claim qualifies within the description of that class and is classified in a different class to the extent the Claim qualifies within the description of that different class. If a Claim is acquired or transferred, the Claim will be placed in the class where it would have been placed if it were owned by the original holder of such Claim. If a Claimant has more than one Claim in the same class, such Claims will be aggregated and treated as a single Claim. If a Claimant has Claims in different classes, such Claims will be aggregated only within the same class and not between classes.

5.1.1    Class 1 consists of Other Priority Claims. These are Claims entitled to priority under Section 507(a) (3) – (a) (7) and 507(a) (9) – (a) (10). These are Claims for unpaid wages, employee benefits Plan contributions and the like.

5.1.2    Class 2 consists of the Holders of General Unsecured Convenience Claims against the Debtor or Holders of Unsecured Claims who elect to be treated as a General Unsecured Convenience Claim. These Claims are unsecured creditors of Claims of $500.00 or less or who voluntarily reduce their Unsecured Claim to $500.00. Class 2 Claims total $6,784.61 and are scheduled on Exhibit E.

5.1.3    Class 3 consists of Tort Claimants.

5.1.4    Class 4 consists of Unknown Tort Claimants.

Modified First Amended Plan of Reorganization  -19

5.1.5   Class 5 consists of Holders of General Unsecured Claims that are not Class 2 General Unsecured Convenience Claims.  These are Claims not secured by any interest in the Debtor's property and consist of any Claim against the Debtor that is not a Tort Claim, Unknown Tort Claim, Administrative Claim, Abuse Related Contingent Claim, Penalty Claim or Priority Tax Claim.  Based upon a review of the Debtor's Schedules, as well as filed proofs of Claim, the Debtor estimates that Class 5 Unsecured Claims total approximately $98,181.69.  The Holders of Class 5 General Unsecured Claims are scheduled on Exhibit E:

5.1.6   Class 6 consists of Claims based upon a fine, penalty, forfeiture, punitive damages, or the like, not meant to compensate the Claimant for actual pecuniary loss.  The Debtor is unaware of any such Penalty Claims.  It is possible that Class 3 Tort Claimants may have included some type of Penalty Claim in their proofs of Claim.

5.1.7   Class 7 consists of Holders of Employee/Retirement Claims against the Debtor.

5.1.8   Class 8 consists of Abuse Related Contingent Claims.  These are Claims by an Entity against the Debtor for contribution, indemnity, or reimbursement arising as a result of such Entity's liability for paying or defending against any Tort Claim, including a joint tortfeasor or the like, and includes contingent claims for contribution and indemnification against the Diocese by the Oblate Fathers Western Province, Inc. and the U.S. Province of the Missionary Oblates of Mary Immaculate, Inc.  These claims filed September 8, 2017 are late given the Bar Date of July 31, 2017.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|-------|-------------|------------|--------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | General Unsecured Convenience Claims | Unimpaired | Deemed to Accept |
| 3 | Tort Claims | Impaired | Yes |
| 4 | Unknown Tort Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Penalty Claims | Impaired | Deemed to Reject |
| 7 | Employee/Retirement Claims | Unimpaired | Deemed to Accept |
| 8 | Abuse Related Contingent Claims, includes Oblates Claims | Impaired | Deemed to Reject |

**5.2**      Except as provided in this Plan, the treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Claimant may have against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those Claimants have in or against the Debtor or its property.  All Distributions under the Plan will be tendered to the Entity holding the Claim.  **EXCEPT AS SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE FROM AND NO RIGHTS WILL BE RETAINED AGAINST THE DEBTOR OR ITS PROPERTY ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

## SECTION VI
## TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS

**6.1      Class 1: Other Priority Claims**

The holders of Allowed Other Priority Claims, if any are determined to exist, will receive either (a) payment from the Reorganized Debtor of the full amount of their Allowed Claims in Cash, without interest on or as soon as practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

**6.2      Class 2: General Unsecured Convenience Claims**

Each holder of Allowed General Unsecured Convenience Claims will receive either (a) payment from the Reorganized Debtor of the full amount of its Allowed General Unsecured Convenience Claim in Cash, on or as soon as reasonably practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of its Allowed General Unsecured Convenience Claim upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

**6.3      Class 7: Employee/Retirement Claims**

Class 7 is unimpaired under the Plan and will be paid as their claims come due.  Holders of Employee/Retirement Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

## SECTION VII
## TREATMENT OF IMPAIRED CLASSES OF CLAIMS

**7.1      Class 3:  Tort Claims (Other than Unknown Tort Claims)**

**7.1.1**   On the Effective Date, (a) the Trust shall assume all liability for and the Trust will pay all Tort Claims (other than Unknown Tort Claims) ("**Class 3 Claims**"); and each of the Tort Claimants shall assign his or her claims against the Protected Parties to the Trust, pursuant to the provisions of the Plan, Plan Documents, Confirmation Order and Trust Documents.  Tort Claimants shall have their Class 3 Claims treated pursuant to the Allocation Protocol, including review of such Claims by the Abuse Claim Reviewer in accordance with the Allocation Protocol.

7.1.2   Nothing in this Plan is intended to affect, diminish or impair any Tort Claimant's rights against any Co-Defendant, including that Co-Defendant's joint and several liability for Abuse, if any; provided that, notwithstanding any other provision of the Plan, any Class 8 Claimant that is or could have been alleged to be a joint tortfeasor with any of the Protected Parties in any action brought by a Tort Claimant shall not be liable for any Protected Party's share of causal liability, fault, or damages, by reallocation or otherwise.

7.1.3   Debtor, the Reorganized Debtor and their counsel shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Allocation Protocol.

7.1.4   No Tort Claimant may challenge the merit, validity, or amount of any Class 3 Claim.  Any objection to a Class 3 Claim pending as of the Effective Date is deemed withdrawn with prejudice.  The Trustee shall have the sole and exclusive right to object to a Class 3 Claim.  The Reorganized Debtor shall not have the right to object to a Class 3 Claim.

7.1.5   The Trust shall pay Class 3 Claims in accordance with the terms of the Plan, Plan Documents, Confirmation Order, Allocation Protocol and Trust Documents.  The Trust shall not pay Class 3 Claims prior to the Effective Date.

7.1.6   The Distributions from the Trust are in full settlement of the Tort Claims, against the Protected Parties only and the acceptance of a Distribution by a Tort Claimant shall constitute a release of all Claims by such Tort Claimant against all Protected Parties.

7.1.7   If a Tort Claim is denied payment pursuant to the Allocation Protocol, the holder of such Tort Claim will have no further rights against the Debtor, Reorganized Debtor, the Trust, Trustee, or Protected Parties relating to such Tort Claim.

7.1.8   Before any Distribution(s) to Tort Claimants on account of their Tort Claims, the Trustee will subtract all Qualified Counsel Fees from the balance in a Trust subaccount in an amount equal to the total fees payable to Qualified Counsel by the beneficiaries of that Trust subaccount based on the reserves or Distributions calculated under the Allocation Protocol.  The Trust shall pay such fees to Qualified Counsel as and when the Tort Claimant receives a Distribution from the Trust.

7.1.9   Before any Distribution(s) to Tort Claimants from a Trust subaccount the Trustee will subtract all Qualified Counsel Costs from the balance in the applicable Trust subaccount in an amount equal to the unpaid reimbursable expenses (prepetition and postpetition through the Effective Date) payable to Qualified Counsel by the beneficiaries of that Trust subaccount.

7.1.10  Subject to the treatment of Qualified Counsel Fees and Qualified Counsel Costs pursuant to the Plan, the fees and expenses of attorneys representing Tort Claimants who receive Distributions will be borne by such Tort Claimants based on applicable state law and individual arrangements made between such Tort Claimants and their respective attorneys. The Protected Parties will not have any liability for any fees and expenses of attorneys representing any of the Tort Claimants.  The Trust and the Trustee will not have any liability for any fees and

expenses of attorneys representing any of the Tort Claimants, except to the extent that the Trust or the Trustee is required to make payments pursuant to the provisions herein relating to Qualified Counsel Fees and Qualified Counsel Costs.

7.1.11  A Tort Claimant may withdraw a Tort Claim at any time on written notice to the Trustee.  If withdrawn, (a) the Tort Claim will be withdrawn with prejudice and may not be reasserted, (b) as a condition to withdrawal of the Tort Claim, any funds paid to the Tort Claimant by the Trust (inclusive of attorneys' fees and costs) shall be returned to the Trust, and (c) any reserve maintained by the Trust on account of such Claim shall revert to the non-reserved assets of the Trust for Distribution in accordance with the Plan.

7.1.12  If a Tort Claimant shall become deceased prior to any distribution from the Trust, any distribution due to such deceased Tort Claimant shall be made to a duly appointed executor of such deceased Tort Claimant's estate or pursuant to an order of a court of competent jurisdiction.  The Trust shall retain any amounts due to deceased Tort Claimants until a date six months prior to dissolution of the Trust (the "Final Retention Date").  If the estate of a deceased Tort Claimant does not have duly appointed executor or a court of competent jurisdiction has not entered an order directing the distribution of funds for a deceased Tort Claimant, then any funds payable on account of such Tort Claim shall revert to the Trust and be distributed pursuant to the terms of the Plan.  The Trust and/or the Trustee shall not have any obligation to search for heirs of any deceased Tort Claimant.

**7.2     Class 4: Unknown Tort Claims**

7.2.1    On the Effective Date, the Trust shall assume all liability for and the Trust will pay all Unknown Tort Claims from the Unknown Tort Claims Reserve Fund pursuant to the provisions of the Plan and Trust Documents.  The Debtor or the Reorganized Debtor shall pay the costs of administering the Unknown Tort Claims Reserve Fund.  The Unknown Tort Claims Reserve Fund shall be the sole source of payment on account of Unknown Tort Claims.  Whether or not an Unknown Tort Claim is paid or denied payment pursuant to the Allocation Protocol, the Holder of such Unknown Tort Claim shall have no further rights against the Debtor, Reorganized Debtor, the Protected Parties, the Trust, Trustee, or Catholic Mutual Parties relating to such Unknown Tort Claim.

7.2.2    Unknown Tort Claimants shall file Proofs of Claim substantially in form attached as Exhibit D to the Plan and shall include information sufficient for the Abuse Claims Reviewer to make an initial evaluation pursuant to Section 5.2(a) of the Allocation Protocol and an evaluation of the Claim pursuant to the evaluation factors in Section 5.2(b) of the Allocation Protocol.  Such Unknown Tort Claims shall be filed by submitting the claims to the Trustee at the address provided on the form.

7.2.3    Unknown Tort Claims shall be treated pursuant to the Allocation Protocol, including review of such Claims by the Abuse Claim Reviewer in accordance with the Allocation Protocol.  Fees payable to the Abuse Claims Reviewer for review of the Unknown Tort Claims shall be paid by the Debtor or the Reorganized Debtor.

7.2.4    Nothing in this Plan shall affect, diminish or impair any Unknown Tort Claimant's rights against any Co-Defendant, including that Co-Defendant's joint and several

liability for Abuse; provided that, notwithstanding any other provision of the Plan, any Class 8 Claimant that is or could have been alleged to be a joint tortfeasor with any of the Protected Parties in any action brought by a Tort Claimant shall not be liable for any Protected Party's share of causal liability, fault, or damages, by reallocation or otherwise.

7.2.5    The Debtor, the Reorganized Debtor and their counsel shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Allocation Protocol.

7.2.6    No Unknown Tort Claimant may challenge the merit, validity, or amount of any Tort Claim or Unknown Tort Claim.  The Trustee has the sole and exclusive right to object to any Unknown Tort Claim.  The Reorganized Debtor shall not have the right to object to an Unknown Tort Claim.

7.2.7    The Trust shall pay Unknown Tort Claimants in accordance with the terms of the Plan, Confirmation Order and Trust Documents, as follows:

(i)    The Trustee shall make a Distribution to Unknown Tort Claimants at least once during every twelve (12) months after the Effective Date.  The date of any such Distribution is referred to herein as a "Distribution Date."

(ii)    The maximum value of a point allocated to the Unknown Tort Claimants pursuant to the Allocation Protocol shall be equal to the average value of a point allocated to all other Tort Claimants who receive payment under the Allocation Protocol (such amount, the "Maximum Unknown Tort Claim Amount").

(iii)    During any twelve (12) month period, the Trustee shall distribute no more than (a) ten percent (10%) of the remaining Unknown Tort Claims Reserve Fund collectively to all Unknown Tort Claimants who have filed allowed Unknown Tort Claims as of a given Distribution Date and (b) four percent (4%) of the remaining Unknown Tort Claims Reserve Fund to any single Unknown Tort Claimant; provided, however, that the Trustee shall not distribute more than the Maximum Unknown Tort Claim Amount to any Unknown Tort Claimant; provided further, however, that upon any Distribution, the Trustee shall (x) first distribute funds to Unknown Tort Claimants who filed allowed Unknown Tort Claims after other Unknown Tort Claimants had already received a Distribution until Holders of such later filed Claims receive an amount equal (on a per point basis) to the amount already distributed to Unknown Tort Claimants who previously received a Distribution and (y) thereafter distribute additional available funds to all holders of allowed Unknown Tort Claims as of such Distribution Date.

(iv)    The Unknown Tort Claims Reserve Fund shall be dissolved upon the [to be determined] anniversary of the Effective Date (the "Dissolution Date").  Upon the occurrence of the Dissolution Date, the Trustee shall distribute all remaining funds of the Unknown Tort Claims Reserve Fund to Holders of allowed Unknown Tort Claims who previously received point awards: provided, however, that no single Tort Claimant shall be paid more than Maximum Unknown Tort Claim Amount.  If any of the Unknown Tort Claims Reserve Fund remains after all Unknown Tort Claims who previously received point awards have been paid the Maximum Unknown Tort Claim Amount as of the Dissolution Date, then the remaining funds shall be distributed to all Tort Claimants and Unknown Tort Claimants based on the points allocated to each claim; provided, however, that to the extent there are not sufficient funds to pay an average of $50.00 to each Tort Claimant or Unknown Tort Claimant, then any remaining funds shall be donated to a non-profit organization in the United States selected by the Trustee (after notice and a hearing) that is dedicated to helping survivors of childhood sexual abuse.

7.2.8    The Distributions from the Trust are in full settlement of the Claims against the Protected Parties only.

7.2.9    The fees and expenses of attorneys representing Unknown Tort Claimants who receive payment from the Trust will be payable solely from the Unknown Tort Claims Reserve Fund from the amount awarded to such Claimant based on applicable state law and individual arrangements made between such Unknown Tort Claimants and their respective attorneys. The Protected Parties, Trust, or the Trustee will not have any liability for any fees and expenses of attorneys representing any of the Unknown Tort Claimants.

7.2.10    Penalty Claims will receive no distribution under the Plan.

7.2.11    An Unknown Tort Claimant may withdraw an Unknown Tort Claim at any time on written notice to the Trustee.  If withdrawn, (a) the Unknown Tort Claim will be withdrawn with prejudice and may not be reasserted, (b) as a condition to withdrawal of the Unknown Tort Claim, any funds paid to the Unknown Tort Claimant by the Trust (inclusive of attorneys' fees and costs) shall be returned to the Trust, and (c) any reserve maintained by the Trust on account of such Claim shall revert to the non-reserved assets of the Trust for distribution in accordance with the Plan.

7.2.12 If an Unknown Tort Claimant shall become deceased prior to any distribution from the Trust to such Claimant, then any distribution due to such deceased Unknown Tort Claimant shall be made to a duly appointed executor of such deceased Unknown Tort Claimant's estate or pursuant to an order of a court of competent jurisdiction.  The Trust shall retain any amounts due to deceased Tort Claimants until the Final Retention Date.  If the estate of a deceased Unknown Tort Claimant does not have duly appointed executor or a court of

competent jurisdiction has not entered an order directing the distribution of funds for a deceased Unknown Tort Claimant, then any funds payable on account of such Tort Claim shall revert to the Trust and be distributed pursuant to the terms of the Plan. The Trust and/or the Trustee shall not have any obligation to search for heirs of any deceased Unknown Tort Claimant.

       7.2.13   Unknown Tort Claims made on behalf of any Person that is deceased as of the date the Unknown Tort Claim is filed shall be disallowed.

### 7.3      Class 5: General Unsecured Claims

The holders of Allowed General Unsecured Claims will receive payment from the Reorganized Debtor of their Pro Rata share of the sum of $98,181.69, to be paid as soon as reasonably practicable after all General Unsecured Claims have either been Allowed or Disallowed, but subject to the filing and allowance of Claims under Section 502(h) of the Bankruptcy Code.

### 7.4      Class 6:  Penalty Claims

Allowed Penalty Claims, if any, will be subordinated to all other Allowed Claims and will receive no Distribution.

### 7.5      Class 7:  Employee/Retirement Claims

Such claims are unimpaired and will be paid in the normal course of business, and as the obligations become due.

### 7.6      Class 8: Abuse Related Contingent Claims

In accordance with Section 502(e)(1) of the Bankruptcy Code, each Abuse Related Contingent Claim held by any Entity against the Debtor shall be disallowed and will receive no Distribution; notwithstanding any other provision of the Plan, any Class 8 Claimant that is or could have been alleged to be a joint tortfeasor with any of the Protected Parties in any action brought by a Tort Claimant shall not be liable for any Protected Party's share of causal liability, fault, or damages, by reallocation or otherwise.

## SECTION VIII
## ACCEPTANCE OR REJECTION OF PLAN

### 8.1      Classes Entitled to Vote

Each Claimant in Classes 3, 4 and 5 are impaired and entitled to vote separately to accept or reject the Plan.

### 8.1.1   Presumed Acceptance of the Plan

Classes 1, 2 and 7 are unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

Modified First Amended Plan of Reorganization  -26

### 8.1.2  Presumed Rejection of this Plan

Classes 6, 8, 9, 10 and 11 are impaired and shall receive no Distribution and are, therefore, conclusively deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

### 8.2  "Cram Down" Request

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied if an impaired Class of Claimants accepts the Plan by a vote of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. The Debtor requests confirmation of this Plan under Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept this Plan pursuant to Section 1126(c) of the Bankruptcy Code. The Debtor reserves the right to modify this Plan to the extent that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## SECTION IX
## TRUST

### 9.1  Establishment of Trust

On the Confirmation Date, the Diocese of Great Falls-Billings Tort Claimant Trust shall be established in accordance with the Trust Documents. The Trust shall qualify as a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

### 9.2  Funding

The Trust will be funded as follows:

9.2.1 Within ten (10) days after the Conditions to Effectiveness set forth in Section 11.1 (a), (b), and (c) have occurred, the Reorganized Debtor will pay to the Trust the sum of $12,000,000.00.

9.2.2 Within ten (10) days after Catholic Mutual receives written notice from the Trustee that the Conditions to Effectiveness set forth in Section 11.1 (a), (b), and (c) have occurred, Catholic Mutual will make payments of $8,000,000.00 to their respective attorneys' trust accounts as follows:

9.2.3 Within ten (10) days after Catholic Mutual receives written notice from the Trustee that all of the Conditions to Effectiveness set forth in Section 11.1 have occurred, Catholic Mutual shall cause its respective attorneys to pay to the Trust the amounts deposited in the attorneys' trust account pursuant to Section 9.2.2.

### 9.3     Reserve Accounts

As set forth in the Trust Agreement, the Trustee shall establish Reserves for various purposes.

### 9.4     No Execution

All property held in the Trust will remain property of the Trust until such time as the property actually has been paid to and received by an Entity entitled to receive payment pursuant to the terms of the Plan, Plan Documents, Confirmation Order, Allocation Protocol and Trust Documents.  Except as expressly provided in the Plan, Plan Documents, Confirmation Order, Allocation Protocol and the Trust Documents, the Trust shall not be responsible for any Claims against the Debtor.

### 9.5     Trust Distributions

9.5.1   No Tort Claimant shall receive any Distribution unless and until the Tort Claimant has executed a written release of any and all Claims against all of the Protected Parties, all Entities covered by Catholic Mutual, and any of Catholic Mutual's reinsurers or retrocessionaires that, directly or indirectly, relate to the Tort Claims, the injuries or damages alleged by the Tort Claimants, or the Certificates.  This release shall be incorporated into the ballot for voting on the Plan.  The release of any Tort Claimant that timely submits a ballot may be executed by the Tort Claimant's counsel of record if, in the same document that contains the release, counsel of record represents and warrants that he or she explained the terms and effects of the Plan and release to the Tort Claimant and has full authority to sign the ballot and release on behalf of the Tort Claimant.  A Tort Claimant who does not timely submit a ballot must personally execute the release required by this Section 9.5.1.  The Trust shall be obliged to provide copies of the Tort Claimants' releases to Catholic Mutual and the Protected Parties.

9.5.2   On the first Business Day following the date that the Trust has paid all of its funds to Claimants, the Trust shall terminate.

## SECTION X
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 10.1     Funding of Plan

Cash in the total amounts set forth in Section 9.2 shall be contributed by wire transfer to the Trust by or on behalf of the Debtor and Catholic Mutual.  The source of the payments to the Trust, the payments to the other creditors and to the Reorganized Debtor for post Effective Date operating capital shall be Cash on hand, the proceeds of the Catholic Mutual Settlement , and sales of real and personal property, and contributions.

The Diocese is creating operating budgets to minimize expenses while continuing to provide for pastoral and administrative programs as required by Canon Law.  The goals for the annual appeal and the rate for the assessment to parishes have been raised.  The Debtor is confident through increased giving, through decreased expenses, and through the pledges of cooperation by the various parishes and programs to assist in Debtor's reorganization efforts, that

Debtor will reorganize successfully.  Readers are referred to the Disclosure Statement for further detail on the Debtor's efforts and goals to emerge successfully from bankruptcy.

**10.2     Catholic Mutual Settlement**

The Catholic Mutual Settlement is binding on all parties in interest in this Case including the Trust, the Diocese Parties, the Claimants and Catholic Mutual, and any of their successors and assigns.  The entry of the Confirmation Order shall constitute and provide for the approval of the Catholic Mutual Settlement pursuant to sections 1123(b)(3)(A) and 1129 of the Bankruptcy Code.  The terms of the Catholic Mutual Settlement are:

10.2.1  Catholic Mutual's obligation to pay the Settlement Amount is conditioned on: (i) the Confirmation Order becoming a Final Order, in form and substance acceptable to Catholic Mutual; and (ii) all Conditions to Effectiveness under this Plan (as set forth in Section 11.1 hereof) have been satisfied and confirmed in writing by the Reorganized Debtor to Catholic Mutual.

10.2.2  In full and final settlement of all Claims, other than Covered Non-Tort Claims, including those under and arising out of the Certificates that arose or occurred through and including the Effective Date, Catholic Mutual shall pay the Settlement Amount to the Diocese within ten (10) days after each of the Conditions to Effectiveness have been satisfied and the Diocese or Trustee delivers to Catholic Mutual written directions as to transmission of the payment.  The Settlement Amount shall be held in the Trust, as set forth herein.

10.2.3  The Settlement Amount is the total amount the Catholic Mutual Parties are and shall ever be obligated to pay on account of any and all Claims or Interests, other than Covered Non-Tort Claims, including those under, arising out of, relating to, or in connection with the Certificates (including Channeled Claims and any Extra-Contractual Claims) arising, asserted, or occurring, whether known or unknown, through and including the Effective Date. The consideration to be provided by the Catholic Mutual Parties pursuant to this Plan (including the Settlement Amount) constitutes a fair and reasonable exchange for the consideration granted to the Catholic Mutual Parties in this Plan (including the releases, Channeling Injunction and Supplemental Injunction), and  the consideration to be provided by the Diocese Parties to the Catholic Mutual Parties pursuant to this Plan (including the releases and injunctions herein)) constitutes a fair and reasonable exchange for the consideration granted to the Diocese Parties in this Plan (including the Settlement Amount).  The Catholic Mutual Parties are not acting as volunteers in paying the Settlement Amount, and the Catholic Mutual Parties' payment of the Settlement Amount reflect potential liabilities and obligations to the Diocese Parties of amounts the Catholic Mutual Parties allegedly are obligated to pay on account of any and all Claims released herein.

10.2.4  The Plan, Confirmation Order and any subsequent amendments thereto, shall be in all respects be acceptable to Catholic Mutual and shall not deprive the Catholic Mutual Parties of any right or benefit under this Plan or Catholic Mutual Settlement or otherwise adversely affect the Interests of the Catholic Mutual Parties under this Plan, and must, in form and substance, be approved by the Catholic Mutual.

10.2.5  Catholic Mutual is a Protected Party under the Channeling Injunction in Section 12.5 hereof, with only such modifications as are acceptable to the Catholic Mutual Parties, pursuant to section 105(a) of the Bankruptcy Code, barring and permanently enjoining all Entities who have held or asserted, or may in the future hold or assert Channeled Claims from taking any action, directly or indirectly, for purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim and channeling such Channeled Claims to the Trust, to which all Channeled Claims are channeled as the sole and exclusive source of payment of any such Channeled Claims.

10.2.6  Catholic Mutual is a Protected Party under the Supplemental Injunction in Section 12.6 hereof, with only such modifications as are acceptable to the Catholic Mutual Parties, pursuant to sections 105(a) of the Bankruptcy Code.

10.2.7  The Diocese Parties and Reorganized Debtor release and forgive all Claims as against the Catholic Mutual Parties through and including the Effective Date.  Each Covered Entity irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests they have or might have now or in the future against the Protected Parties, the Reorganized Debtor, and Catholic Mutual Parties, with respect to any and all Claims, Related Insurance Claims and any contribution or indemnity claims arising from or relating to Tort Claims the Certificates and any other Insurer policies of insurance, binders, or certificates of coverage.

10.2.8  The Diocese shall use its best efforts to promptly obtain the dismissal of other Claims, if any, against Catholic Mutual by any other Insurer in any coverage litigation.

10.2.9  The Diocese Parties and Catholic Mutual Parties covenant not to sue each other until (a) the Confirmation Order becomes a Final Order, at which time this covenant is superseded by the releases and injunctions provided herein and the Confirmation Order, or (b) the date on which this Chapter 11 Case is dismissed or upon further order of the Court in the event the Plan is not confirmed.  As of the date the Confirmation Order becomes a Final Order, the Diocese Parties and each Covered Entity will withdraw all outstanding tenders of Tort Claims to Catholic Mutual for defense and indemnity.  Except with respect to Claims against the Diocese for occurrences arising after the Effective Date and Covered Non-Tort Claims, the Diocese will not tender any Tort Claims to the Catholic Mutual Parties and will not request the Catholic Mutual Parties to fund any judgments, settlements, or defense costs for such Tort Claims.

10.2.10  Except as expressly provided in this Plan, and subject to applicable defenses under the applicable Certificates and law, the Catholic Mutual Parties shall have no obligation to pay, handle, object, or otherwise respond to Tort Claims made or occurred or arose through and until the Effective Date unless this Plan is terminated and not confirmed.

10.2.11  Upon payment by Catholic Mutual of the Settlement Amount:

(a)     the Diocese Parties fully, finally, and completely remise, release, acquit, and forever discharge the Catholic Mutual Parties and any of their reinsurers or retrocessionaires solely in their capacity as such from (i) any and all past, present, and future Claims arising, asserted, occurring, continuing, whether known or unknown through, until and including the

Modified First Amended Plan of Reorganization  -30

Effective Date, including those that, directly or indirectly, arise out of, relate to, or are in connection with the Certificates, including all Tort Claims, other than an assertion of coverage under the Certificates for Covered Non-Tort Claims; (ii) any and all past, present and future Channeled Claims or reimbursement obligations for Conditional Payments under the MSPA, and (iii) all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Chapter 11 Case.

       (b)     the Claimants fully, finally, and completely remise, release, acquit, and forever discharge the Catholic Mutual Parties and any of their reinsurers or retrocessionaires solely in their capacity as such from (i) any and all past, present, and future Claims arising, asserted, occurring, continuing, whether known or unknown through, until and including the Effective Date, including those that, directly or indirectly, arise out of, relate to, or are in connection with the Certificates, including all Tort Claims; (ii) any and all past, present and future Channeled Claims and (iii) all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Chapter 11 Case.

       (c)     all (i) Insurers of the Diocese Parties or Covered Entities and (ii) Catholic Mutual shall and do hereby fully, finally, and completely remise, release, acquit, and forever discharge the each other from any and all past, present and future Claims, that, directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims or Certificates, including any and all Channeled Claims, Extra-Contractual Claims; and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Chapter 11 Case.  This release specifically includes all Claims, Unknown Tort Claims and Interests that are or may be based in whole or in part on Tort Claims asserted, continuing, whether known or unknown, under or relating to the Certificates.

       10.2.12  From and after the first day on which the Confirmation Order becomes a Final Order, the Diocese Parties or Covered Entity shall not assert against the Catholic Mutual Parties any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any of the Certificates, any Channeled Claim, any Extra Contractual Claim, the Chapter 11 Case and/or any other matter released pursuant to this Plan.

       10.2.13  Subject to the terms of this Plan, including section 15.12 hereof, all injunctions (including the Channeling Injunction and Supplemental Injunction) and other releases herein discharge and forgive all Claims covered by the Certificates that arise, occur or are asserted through and including the Effective Date other than Covered Non-Tort Claims, and the Certificates shall thereafter (after the Effective Date) remain in effect (subject to all applicable coverages defenses thereunder and at law); *provided, however*, that effective immediately as of and after the Effective Date, the Certificates shall be amended to provide for the exclusions set forth on Schedule ( to be determined ) to this Plan.

       10.2.14  All of the releases and other benefits provided in this Plan by the Diocese Parties to the Catholic Mutual Parties shall be at least as favorable to the Catholic Mutual Parties as the releases and other benefits that the Diocese has provided or may provide to any of the Diocese's other Insurers in the Chapter 11 Case and under the Plan or any settlement agreement with such Insurer.  If the Diocese enters into any agreement with any of its other Insurers in the

Chapter 11 Case that provides such Insurer with releases or other benefits that are more favorable than those contained in this Plan to Catholic Mutual or the Catholic Mutual Parties, then this Plan shall be deemed to be modified to provide the Catholic Mutual Parties with those more favorable releases and/or benefits.

10.2.15   Neither the releases nor any other provisions in this Plan are intended to apply to or have any effect on the Catholic Mutual Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Certificates or any other binder or certificate issued by the Catholic Mutual Parties.

10.2.16   In the event that the Bankruptcy Court does not approve the Channeling Injunction or the Supplemental Injunction by entry of a Final Order in form and substance acceptable to Catholic Mutual, then: (a) Catholic Mutual's agreement and obligation to pay the Settlement Amount shall be null and void *ab initio*, and the Certificates shall remain in full force and effect, with all rights, remedies and defenses held by Catholic Mutual preserved by Catholic Mutual; and (b) Catholic Mutual may terminate any and all of its obligations or agreements under this Plan by providing written notice to the Diocese, to which termination, the Diocese consents.  If Catholic Mutual terminates its obligations or agreements under this Plan pursuant to this Section 10.2.16, then this Plan shall be deemed withdrawn by the Debtor unless the Debtor obtains funding sufficient to pay the Catholic Mutual Settlement Amount to the Trust within ten (10) days of such termination.

10.2.17   The Diocese Parties have not and will not assign any Interests in the Certificates or any other binder or certificate issued by Catholic Mutual.

10.2.18   The Diocese Parties are the owners of the Certificates and that no other Person has legal title to the Certificates.

10.2.19   The Diocese Parties have not in any way assisted, and shall not in any way assist, any Person in the establishment of any Claim against the Catholic Mutual Parties

10.2.20   The Diocese (subject to Court approval unless the Chapter 11 Case is dismissed) or Catholic Mutual may terminate the Catholic Mutual Settlement by providing written notice to the Diocese or Catholic Mutual, as applicable, if: (a) the Bankruptcy Court dismisses the Chapter 11 Case, or converts the Case to a case under Chapter 7 of the Bankruptcy Code prior to the Confirmation Order becoming a Final Order; or (b) the agreement of Catholic Mutual and the Diocese that the Diocese should seek dismissal of the Chapter 11 Case.

10.2.21    The Diocese and Catholic Mutual, respectively, have completed a reasonable search for evidence of any certificates issued by Catholic Mutual, respectively, to the Diocese that would afford coverage with respect to any Tort Claim.  Other than the Certificates or alleged certificates identified in Schedule ( to be determined ), no such certificates have been identified.  Notwithstanding the foregoing, nothing in this Plan, including the Exhibits hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued and/or affords coverage in connection with any Claims, including Covered Non-Tort Claims.

Modified First Amended Plan of Reorganization  -32

10.2.22  From and after the date the Confirmation Order and the Confirmation Order become Final Orders, if any other Insurer of the Diocese Parties or the Litigation Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from the Catholic Mutual Parties as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for the Catholic Mutual Parties' alleged share or equitable share, or to enforce subrogation rights, if any, with respect to the defense and/or indemnity obligation of the Catholic Mutual Parties for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Plan, the Diocese Party(ies) or the Litigation Party(ies), or their successor in interest, as applicable, shall voluntarily reduce its judgment or Claim against such other insurer(s) to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against the Catholic Mutual Parties. To ensure that such a reduction is accomplished, the Catholic Mutual Parties shall be entitled to assert this Section 10 as a defense to any action against them brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Catholic Mutual Parties from any liability for the judgment or Claim.  Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against the Catholic Mutual Parties, such Claim may be asserted as a defense against a Claim by the Diocese Parties or the Trust, as applicable, in any coverage litigation (and the Diocese Parties or the Trust, as applicable, may assert the legal and equitable rights of the Catholic Mutual Parties in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or Diocese Parties or Litigation Parties) shall be reduced dollar for dollar by the amount so determined.

10.2.23  From and after the Effective Date, the Reorganized Debtor shall defend, indemnify, and hold harmless Catholic Mutual Parties with respect to any and all Claims relating to the Certificates, released or resolved hereunder or under the Plan, including all Tort Claims made by (i) any Person claiming to be a covered party or protected party (as a named covered party, additional covered party or protected party, or otherwise) under any of the Certificates; (ii) any Person who has made, will make, or can make a Tort Claim or Related Insurance Claim; (iii) claims by other insurers for contribution, subrogation, indemnification or other similar relief; and (iv) any Person who has actually or allegedly acquired or been assigned the right to make a Tort Claim under any Certificate including any such Claims released or resolved hereunder or under the Plan.  This indemnification includes Claims made by Persons over whom the Diocese Parties or the Litigation Parties do not have control, including any other Person that asserts Claims against or rights to coverage under any of the Certificates.  Catholic Mutual shall have the right to tender defense of any Claims identified in this Section 10 and shall do so in good faith. Catholic Mutual may undertake the defense of any Claim on receipt of such Claim.  Catholic Mutual agrees to notify the Reorganized Debtor as soon as practicable of any Claims identified in this Section 10 and of their choice of counsel.  The Reorganized Debtor shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Catholic Mutual Parties in defending such Claims.  Catholic Mutual may settle or otherwise resolve a Claim.  Catholic Mutual's defense, settlement, or other resolution of any Claims pursuant to this Section 10 shall not diminish the Reorganized Debtor's obligations to indemnify and hold the Catholic Mutual Parties harmless for such Claims, as set forth in this Section 10.

10.2.24  If any Person attempts to prosecute a Channeled Claim against any of the Catholic Mutual Parties and Protected Parties, then promptly following notice to do so from the Catholic Mutual Party or Protected Parties against whom the Claim is asserted, the Diocese will file a motion and supporting papers to obtain an order from the Court, pursuant to Bankruptcy Code §§ 362 and 105(a), protecting the Catholic Mutual Party and Protected Parties from any such Claims.

10.2.25  If any proceedings are commenced to invalidate or prevent the enforcement or implementation of any of the provisions of this Plan, the Parties agree to cooperate fully to oppose such proceedings, and to give notice to the Protected Parties.  In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any other Person to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Plan, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

10.2.26  The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Plan and Catholic Mutual Settlement and to preserve its validity and enforceability.

10.2.27  The Parties shall cooperate with each other in connection with the Plan, the Confirmation Order, the Plan and the Chapter 11 Case.  Such cooperation shall include consulting with each other and the Protected Parties upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.

10.2.28  This Plan and Catholic Mutual Settlement represents a compromise of disputed Claims and shall not be deemed an admission or concession of liability, culpability, wrongdoing, or insurance coverage.  All related discussions, negotiations, and all prior drafts of this Plan shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions.  Any evidence of the negotiations or discussions associated with this Plan shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the parties, including the Diocese Parties and Catholic Mutual Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 10, in (i) an action or proceeding to enforce the terms of this Plan, including any use as set forth in Section 10 or (ii) any possible action or proceeding between any of the Catholic Mutual Parties and any of their reinsurers.  This Plan shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Catholic Mutual Parties' obligations under any of the Certificates or any other binder or certificate issued by the Catholic Mutual Parties, with respect to any Claims against any of the Catholic Mutual Parties.

10.2.29  Nothing contained in this Plan shall be deemed or construed to constitute (i) an admission by any of the Catholic Mutual Parties that the Diocese Parties and Protected Parties, or any other Person that was or is entitled to any coverage under the Certificates or any other binder or certificate issued by the Catholic Mutual Parties or as to the validity of any of the positions that have been or could have been asserted by the Diocese Parties and Protected

Parties, (ii) an admission by the Diocese Parties and Protected Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the Catholic Mutual Parties or any Claims that have been or could have been asserted by the Diocese Parties and Protected Parties against the Catholic Mutual Parties, or (iii) an admission by the Diocese Parties and Protected Parties or the Catholic Mutual Parties of any liability whatsoever with respect to any of the Tort Claims.

       10.2.30  The Diocese Parties and Catholic Mutual Parties shall be responsible for their own fees and costs incurred in connection with the Chapter 11 Case, this Plan, and the implementation of this Plan.

       10.2.31  The Diocese shall cause notice of the Catholic Mutual Settlement and the Plan confirmation hearing to be published twice in *USA Today*, *The Catholic Spirit*, and/or ( to be determined ) in print and at times approved by the Bankruptcy Court in the Disclosure Statement Order, which Disclosure Statement Order shall be acceptable to Catholic Mutual.

### 10.3    Debtor Waiver and Release of Claims Against Catholic Mutual

As set forth in the Catholic Mutual Settlement, in consideration of the monetary contribution provided by Catholic Mutual, the Debtor, Reorganized Debtor, Diocese Parties, Covered Entities and all Claimants irrevocably and unconditionally, without limitation, shall release, acquit, and forever discharge Catholic Mutual from any and all Claims and/or Causes of Action against Catholic Mutual, or the property thereof, subject to section 15.12 hereof.

### 10.4    General Release Against Protected Parties

As consideration for the Protected Parties' contributions to the Plan and trust, the Tort Claimants are required to execute a General Release of claims against the Protected Parties, the language of which is set forth in Exhibit 1 to the Ballots.

### 10.5    Additional Documentation; Non-Material Modifications

From and after the Effective Date, the Trustee, the Reorganized Debtor and Catholic Mutual shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlement contained in this Plan and Plan Documents without further Order of the Bankruptcy Court. Additionally, the Trustee, the Reorganized Debtor and Catholic Mutual may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement, subject to Bankruptcy Court approval with notice to Protected Parties, provided that the amendment or modification does not materially and adversely change the treatment of any holder of a Class 3 Claim without the prior written agreement of such holder. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented hereunder, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class. An Order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section X shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

### 10.6    Closing

Closing will be conducted at such location designated by the Debtor and the Committee, as soon as reasonably practicable following the Effective Date for the purpose of the Reorganized Debtor executing and delivering the Plan Documents and completing those actions necessary for the Reorganized Debtor to establish and fund the Trust and make other Distributions required to be made upon, or promptly following, the Effective Date in accordance with the terms of the Catholic Mutual Settlement.  As soon as practicable after conditions set forth in Section XI  have been satisfied or waived in accordance with Section XI, the Trustee shall file notice of the Closing and the occurrence of the Effective Date.

### 10.7    Obligations of the Reorganized Debtor

The Reorganized Debtor will:

a) In the exercise of its respective business judgment, review all Claims filed against the Estate except for Tort Claims and, if advisable, object to such Claims;

b) After the Effective Date, not object to any Tort Claims. Notwithstanding the foregoing, the Reorganized Debtor may provide the Abuse Claims Reviewer with information regarding Tort Claims;

c) Honor the Debtor's obligations arising under any settlement agreement that has been approved by the Bankruptcy Court; and,

d) Perform all of its obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

### 10.8    Objections to Claims

Objections to a Claim (except for Tort Claims) as to which no objection is pending as of the Effective Date, must be filed by the Claims Objection Bar Date.  Any objections to Claims by the Reorganized Debtor will be filed and served not later than sixty (60) days after the later of (i) the Effective Date or (ii) the date such Claim is filed, provided that the Reorganized Debtor may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by filing a motion with the Bankruptcy Court without any requirement to provide notice to any Entity, based upon a reasonable exercise of the Reorganized Debtor's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.  No party other than the Trustee may object to a Tort Claim.

**10.9      Provisions Governing Distributions**

10.9.1  **Distribution to Holders of Claims**

Except as otherwise provided in the Plan, Distributions will be made only to the holders of Allowed Claims and in the case of Tort Claims, pursuant only to the Plan, Plan Documents and Trust Documents.  Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim will not receive any Distribution otherwise provided to the Claimants under this Plan or the Plan Documents. If necessary in determining the amount of a Pro Rata Distribution due to the holders of Allowed Claims in any class, the Reorganized Debtor or the Trustee, as applicable, will make the Pro Rata calculation as if all Unresolved Claims were Allowed Claims in the full amount Claimed or in the Estimated Amount.  When an Unresolved Claim in any class becomes an Allowed Claim, the Reorganized Debtor or the Trustee, as applicable, will make full or partial Distributions, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and/or any required withholding of applicable federal and state taxes.

10.9.2  **Transmittal of Distributions**

Except as otherwise provided in this Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to Tort Claimants will be made by the Trustee and Distributions to all other Claimants will be made by the Reorganized Debtor.  Distributions to Tort Claimants will be made (a) to the client trust account for attorneys of record of Tort Claimants, (b) if the Tort Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of Claim filed with the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor or Trustee, as applicable, by such Claimant in writing, or (c) if no such proof of Claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor or Trustee, as applicable, to the mailing address set forth in the schedules filed by the Debtor in this Case.  Distributions to other Claimants will be made by wire or first class United States mail, postage prepaid, (a) to the client trust account for attorneys of record of the Claimant, (b) if the Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of Claim filed with the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor, as applicable, by such Claimant in writing, or (c) if no such proof of Claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor, to the mailing address set forth in the schedules filed by the Debtor in this Case. If a Claimant's Distribution is not mailed or is returned to the Reorganized Debtor or Trustee because of the absence of a proper mailing address, the Reorganized Debtor or Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address.  The Trustee shall have no liability to a Tort Claimant on account of Distributions made to the client trust account of a Tort Claimant's attorney.

### 10.9.3  **Timing of Distributions**

Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a Distribution under this Plan, the Allocation Protocol or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day, with interest to the extent expressly contemplated by this Plan or any applicable agreement or instrument.

Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Trustee as undeliverable, or is deemed to be an undeliverable Distribution, provide the Trustee with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Reorganized Debtor, the Trust, Catholic Mutual, the Trustee or their property.  Any undeliverable Distributions that are not claimed under this Section will become available to distribute to other Claimants or be retained by the Reorganized Debtor in accordance with the Plan.  Nothing in the Plan requires the Reorganized Debtor, the Trust or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

### 10.9.4  **Negotiation of Instrument**

If an instrument delivered as a Distribution to a Claimant is not negotiated within one hundred and twenty (120) days after such instrument was sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and it shall become Cash available to the Trustee for any Trust purpose or the Reorganized Debtor, as the case may be.

### 10.9.5  **Form of Distributions**

Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a Distribution, all Distributions will be made, at the option of the Reorganized Debtor or Trustee, by a check by first class mail, postage prepaid, or wire transfer.

### 10.9.6  **No Professional Fees or Expenses**

No professional fees or expenses incurred by a Claimant will be paid by the Debtor, the Reorganized Debtor, a Protected Party, Catholic Mutual or the Trustee with respect to any Claim except as specified in this Plan or the Trust Documents.

### 10.10   **Reservation of Rights to Object to Claims Other Than Tort Claims**

Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Plan, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor shall be deemed to have a reservation of any and all rights, interests and objections of the Debtor, or the Estate to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured or unsecured (but not Tort Claims), whether under the Bankruptcy Code, other applicable law or

contract. The Debtor's failure to object to any Claim in the Chapter 11 Case shall be without prejudice to the Reorganized Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

### 10.11    Service of Objections

An objection to a Claim shall be deemed properly served on the holder of such Claim if the objector effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Claimant is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such holder in the Chapter 11 Case.

### 10.12    Determination of Claims

From and after the Effective Date, any Claim (except for Tort Claims) as to which a proof of Claim or motion or request for payment was timely filed in the Chapter 11 Case or deemed timely filed by Order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an Order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties without the need for Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtor, the Reorganized Debtor, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Section 10.11 shall constitute or be deemed a waiver of any Claims, rights, interests or Causes of Action that the Debtor or the Reorganized Debtor may have against any Entity in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157.  Notwithstanding the foregoing, no party in interest other than the Trustee may object to a Tort Claim.

### 10.13    No Distributions Pending Allowance

No Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Reorganized Debtor may, in its discretion, make a Distribution on account of the portion of such Claim that is an Allowed Claim.

### 10.14   Claim Estimation

In order to effectuate Distributions and avoid undue delay in the administration of the Chapter 11 Case, the Reorganized Debtor, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court or the District Court, pursuant to § 502(c) of the Bankruptcy Code, estimating or limiting, on account of a Disputed Claim, the amount of (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine (i) whether such Claims are subject to estimation pursuant to § 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan.  Notwithstanding the foregoing, no party in interest except the Trustee may seek to estimate a Tort Claim.

### 10.15   Timing of Distributions S/A/P Claims

On the Effective Date, the Reorganized Debtor shall establish the S/A/P Claims Reserve for all Disputed S/A/P Claims and Allowed S/A/P Claims not paid prior to the Effective Date. As soon as practicable after (and to the extent) that a Disputed S/A/P Claim becomes an Allowed S/A/P Claim, the Reorganized Debtor shall make a payment from the S/A/P Claims Reserve to the holder of such Claim in the Allowed amount of such Claim. After (and to the extent) a Disputed S/A/P Claim is determined not to be an Allowed S/A/P Claim, the portion of the S/A/P Claims Reserve reserved for such Claim shall be released from the S/A/P Claims Reserve and distributed or retained by the Reorganized Debtor, as applicable, pursuant to the terms of the Plan.

### 10.16   No Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Claimant and approved by an Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no Claimant shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Plan Documents, Confirmation Order or Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.  Nothing herein affects the obligations of any co-obligor or guarantor with respect to such interest.

### 10.17   Withholding Taxes

The Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any Distribution, the Reorganized Debtor may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

Modified First Amended Plan of Reorganization  -40

### 10.18   Closing of the Case

As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Bankruptcy Court to close the Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, the Trustee, or any other party in interest to reopen the Case for any matter over which the Bankruptcy Court or the U.S. District Court for the District of Montana has retained jurisdiction under this Plan. Any order closing this Case will provide that the Bankruptcy Court or the U.S. District Court for the District of Montana, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in this Case, and the obligations created by this Plan and the Plan Documents; and (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents.

### 10.19   No De Minimis Distributions

Notwithstanding anything to the contrary in this Plan, no Distribution of less than $100 will be made by the Reorganized Debtor or the Trustee to any Holder of an Allowed Claim. No consideration will be provided in lieu of the unpaid amounts that are not made under this Section. Allowed Claims that are entitled to a Pro Rata Distribution of less than $100 shall continue to accrue until such time as the Pro Rata Distribution on account of such Claim will be $100 or more.

### 10.20   Manner of Payments

Payments to domestic Claimants will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Trustee or, at the Trustee's option, by wire transfer from a domestic bank. Payments to foreign Claimants may be paid, at the Trustee's option, either in the same manner as payments to domestic Entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

**SECTION XI**
**CONDITIONS PRECEDENT**

### 11.1   Conditions to Effectiveness

The Effective Date will occur when each of the following conditions have been satisfied or waived in accordance with Section 11.2 of this Plan:

(a)   The Bankruptcy Court shall have entered the Confirmation Order as a Final Order approving the Catholic Mutual Settlement, the Channeling Injunction and Supplemental Injunction, and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to each of those parties, and such order or orders shall have become Final Orders, and no stay of such Orders shall be in effect;

(b)     The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Reorganized Debtor, the Committee, Catholic Mutual, and the Confirmation Order shall have become and be a Final Order and not stayed;

(c)     The Trustee and Reorganized Debtor have signed the Trust Agreement;

(d)     Counsel for the Debtor and counsel for Catholic Mutual have notified each other, counsel for the Committee, and the Trust that their clients have made the payments described in Sections 9.2.1 and 9.2.2 of the Plan.

### 11.2    Waiver of Conditions

Any condition set forth in Section XI of this Plan may be waived by the mutual written consent of the Debtor, St. Labre Parties, the Committee, and Catholic Mutual.

### 11.3    Non-Occurrence of Effective Date

Unless the Bankruptcy Court orders otherwise, in the event that the Effective Date does not occur within ninety (90) days of entry of a Final Order or Final Orders confirming the Plan and approving all Catholic Mutual Settlements, the Plan shall become null and void.   A statement shall be filed with the Court within three (3) Business Days after either the Effective Date or the occurrence of any event that renders the Plan null and void.

## SECTION XII
## EFFECTS OF PLAN CONFIRMATION AND DISCHARGE

### 12.1    Discharge

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN OR THE DISCLOSURE STATEMENT, NOTHING CONTAINED IN THE PLAN SHALL CONSTITUTE A RELEASE OF ANY TORT CLAIM OR CONSTITUTE AN INJUNCTION AGAINST PROSECUTION OF A TORT CLAIM AGAINST (A)  AN ENTITY THAT BECOMES A SUCCESSOR OF THE DEBTOR AFTER THE EFFECTIVE DATE, TO THE EXTENT SUCH SUCCESSOR'S  LIABILITY FOR AN ACT OR ACTS OF ABUSE, IS INDEPENDENT OF THE DEBTOR'S LIABILITY AND SUCH ENTITY IS NOT A PROTECTED PARTY AND (B) A PERPETRATOR.  THE DISCHARGE AND INJUNCTION PROVISIONS OF THE PLAN DO NOT APPLY TO (A)  THE  OBLIGATIONS  ARISING  UNDER  THE  CATHOLIC  MUTUAL SETTLEMENT APPROVED BY THE BANKRUPTCY COURT, WHICH ARE NOT AND WILL NOT BE DISCHARGED; (B) AN ENTITY THAT BECOMES A SUCCESSOR TO THE DEBTOR AFTER THE EFFECTIVE DATE, TO THE EXTENT SUCH SUCCESSOR'S LIABILITY FOR AN ACT OR ACTS OF ABUSE IS INDEPENDENT OF THE DEBTOR'S LIABILITY AND SUCH ENTITY IS NOT A PROTECTED PARTY, WHICH ARE NOT AND WILL NOT BE DISCHARGED.  TORT CLAIMS BASED ON ABUSE THAT HAPPENED AFTER THE PETITION DATE WILL NOT BE DISCHARGED, RELEASED OR IMPAIRED, WITH THE EXCEPTION OF ANY SUCH CLAIMS AGAINST CATHOLIC MUTUAL.**

**On the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtor will be discharged from all liability for any and all Claims that arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of this Case, including all Tort Claims (except as provided in Section 12.1.1 of the Plan) and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such Claim is Allowed under this Plan; or (c) the holder of such Claim has accepted this Plan. Nothing contained in this paragraph shall affect, impair or diminish the Debtor's indemnification obligations under the Catholic Mutual Settlement, which obligations are excepted from the Debtor's discharge.**

### 12.1.1  Postpetition Tort Claims

Tort Claims against the Diocese Parties and Protected Parties based on Abuse that arose, occurred or happened after the Petition Date through and including the Effective Date shall constitute Channeled Claims and any such Claim against Catholic Mutual is enjoined pursuant to the Channeling Injunction and Supplemental Injunction.

### 12.2  Vesting of Assets

In accordance with §§ 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Revested Assets shall revest in the Reorganized Debtor on the Effective Date free and clear of all Interests of any Entity, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire and dispose of property without notice to any Entity, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

### 12.3  Continued Existence of Reorganized Debtor

The Debtor will, as the Reorganized Debtor, continue to exist after the Effective Date as A separate Entity in accordance with the applicable laws of the States of Montana, with all the powers of a not-for-profit, non-stock member corporation sole having tax-exempt status under 26 U.S.C. § 501I(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

### 12.4  Exculpation and Limitation of Liability

**Except as expressly provided in this Plan, none of the Exculpated Parties will have or incur any liability to, or be subject to any right of action by, any Claimant, any other party in interest, or any of their respective Representatives, financial advisors, or Affiliates, or any of their successors or assigns, for any act or omission in or relating to this Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the funding or administration of the Plan or the Trust, except liability for their willful misconduct or gross**

Modified First Amended Plan of Reorganization  -43

negligence (provided, however, the Diocese Parties and Reorganized Debtor will be discharged from any such liability for such acts or omissions occurring prior to the Effective Date) and in all respects, such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Case.  Without limiting the generality of the foregoing, the Debtor and its members, financial advisors, and other professionals shall be entitled to and granted the benefits of § 1125(e) of the Bankruptcy Code.

The Catholic Mutual Parties, the Reorganized Debtor, the Parishes, the Trust, the Trustee and professionals employed by the foregoing shall not have any liability to any Entity, including any governmental entity or insurer, on account of payments made to the Trust, a Tort Claimant, including any liability under the Medicare Secondary Payer Act.

### 12.5    Channeling Injunction

In consideration of the undertakings of the Protected Parties pursuant to their respective settlements with the Debtor, the funding of the Trust, Catholic Mutual's payment of the Catholic Mutual Settlement Amount, and other consideration, and to further preserve and promote the agreements between and among the Protected Parties and the protections afforded the Protected Parties and pursuant to Section 105 of the Bankruptcy Code:

(a)    any and all Channeled Claims, are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Documents as the sole and exclusive remedy for all holders of Channeled Claims; and

(b)    all Entities who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against any of the Protected Parties, including:

(i)    commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or against the property of any of the Protected Parties;

(ii)    enforcing, attaching, collecting or recovering, by any manner or means, from any Protected Parties, or from the property of any Protected Parties, with respect to any such Channeled Claim, any judgment, award, decree, or order against any Protected Parties;

(iii)    creating, perfecting or enforcing any lien of any kind against any Protected Parties, or the property of any Protected Parties with respect to any such Channeled Claim; and

(iv)    asserting, implementing or effectuating any Channeled Claim of any kind against:

(1)    any obligation due any Protected Parties;

(2)     **any Protected Parties; or**

(3)     **the property of any Protected Parties.**

(v)     **taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan; and**

(vi)    **asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or the property of the Protected Parties.**

**12.6     Supplemental Injunction Preventing Prosecution of Claims Against Catholic Mutual Parties**

**Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of Catholic Mutual pursuant to Catholic Mutual Settlement and this Plan, any and all Entities who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Unknown Tort Claimants, Diocese Parties, Perpetrators, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Catholic Mutual Settlement) against any of the Protected Parties, Covered Entity, or the Certificates, which, directly or indirectly, relate to, any of the Certificates, any Tort Claims or any Related Insurance Claims, other than Covered Non-Tort Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Catholic Mutual Parties, Covered Entity, and/or the Certificates, including:**

**(a)     Commencing or continuing in any manner any action or other proceeding against Catholic Mutual or the Covered Entity or the property of the Catholic Mutual Parties or the Covered Entity;**

**(b)     Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Catholic Mutual Parties or the Covered Entity or the property of the Catholic Mutual Parties or the Covered Entity;**

**(c)     Creating, perfecting, or enforcing any lien of any kind against the Catholic Mutual Parties or the Covered Entity or the property of the Catholic Mutual Parties or the Covered Entity**

**(d)     Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Catholic Mutual Parties or the Covered Entity or the property of the Catholic Mutual Parties or the Covered Entity; and,**

**(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.**

**12.7     Term of Injunctions or Stays and Confirmation of Settlement with Catholic Mutual**

On the Effective Date, the injunctions provided for in this Plan, including the Channeling Injunction and the Supplemental Injunction shall be deemed issued, entered, valid and enforceable according to their terms and shall be permanent and irrevocable.  All injunctions and/or stays provided for in this Plan, the injunctive provisions of Sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting Catholic Mutual, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified.

**12.8     Limitation of Injunction and Discharge**

Notwithstanding any provision of this Plan, the foregoing injunctions and discharge preventing prosecution of Tort Claims against Protected Parties provides absolutely no protection to a Perpetrator.

**12.9     Dismissal of Adversary Proceedings With Prejudice**

On confirmation, the post-petition litigation at Adversary Proceeding 17-00081 and 18-00014 will be dismissed against the Debtor and all named defendants, with prejudice.

**SECTION XIII**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**13.1     Assumed Employee and Retiree Benefit Plans**

To the extent not previously assumed, all employee and retiree benefit plans to which the Debtor is a party will be deemed assumed by the Reorganized Debtor on the Effective Date.

**13.2     General; Assumed if Not Rejected**

Subject to the requirements of Section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Debtor that have not been rejected by order of the Bankruptcy Court or are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtor on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court.  All payments to cure defaults that may be required under Section 365(b) (1) of the Bankruptcy Code will be made by the Reorganized Debtor.  In the event of a dispute regarding the amount of any such payments, or the ability of the Debtor to provide adequate assurance of future performance, the Reorganized Debtor will make any payments required by Section 365(b) (1) of the Bankruptcy Code after the entry of the Final Order resolving such dispute.

**13.3    Claims for Contract Rejection**

All proofs of Claim based on the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within 30 days after the Effective Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for the filing of Claims arising from such rejection, proofs of Claim with respect thereto must be filed within 30 days after the later to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date, the date such order becomes a Final Order, or such Claims will be forever barred.

**SECTION XIV**
**COMMITMENTS**

**14.1    Non-Monetary Commitments**

In order to further promote healing and reconciliation, and in order to continue the Debtor's efforts to prevent sexual abuse from occurring in the Diocese of Great Falls--Billings, the Debtor and Reorganized Debtor agree to the following Non-Monetary Commitments of Exhibit F hereto beginning thirty (30) days after the Effective Date (unless a different date is provided in Exhibit F).

**SECTION XV**
**MISCELLANEOUS PROVISIONS.**

**15.1    Retention of Jurisdiction**

Notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date:

15.1.1 Except as otherwise set forth in this Plan, Plan Documents or in the Confirmation Order, the Bankruptcy Court will retain jurisdiction over all matters arising under, in furtherance of, or in connection with this Plan, including the following:

a)  The determination of objections to Disputed Claims; the determination of requests for payment of Claims entitled to priority under Section 507 of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

b)  The resolution of controversies and disputes regarding interpretation and implementation of this Plan and the Plan Documents;

c)  The granting of relief in aid of this Plan and the Plan Documents including the entry of appropriate orders (which may include removal of actions in non-Bankruptcy Court forums to the Bankruptcy Court, contempt or other sanctions)

to protect the Protected Parties from actions prohibited under this Plan or the Plan Documents;

d)   Amendments to and modifications of this Plan;

e)   Subject to the limitations and exclusions described above, the determination of any and all applications, adversary proceedings, and contested or litigated matters pending on the Effective Date;

f)   Enforcement of the releases, Channeling Injunction and Supplemental Injunction issued under the Plan, and Confirmation Order, and Non-Monetary Commitments; and

h)   The closing of this Case.

On the Effective Date, all actions removed by the Debtor or any other Co-Defendant during this Case shall be remanded to the Court from which they were removed and can continue against the Debtor and any other Entity who is not Catholic Mutual, only to the extent set forth in the Plan. Any party to the removed action may submit an order, with notice only to the other parties to the removed action, providing for remand of the action. Nothing in this paragraph is intended to limit or modify the discharge of Claims against the Debtor.

### 15.2     Modification of Plan

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order, amend or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### 15.3     Severability

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted, except if such term or provision is inconsistent with the intent of the Debtor, in which case the Plan may be unilaterally withdrawn by the Debtor. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms. In the event of a successful collateral attack on any provision of this Plan (i.e., an attack other than through a direct appeal of the Confirmation Order), the remaining provisions of this Plan will remain binding on the Debtor, the Reorganized Debtor, the Trustee, the Committee, all Tort Claimants, all Claimants, and all other parties in interest.

**15.4      Section 1146 Exemption**

(a)      Pursuant to Bankruptcy Code Section 1146(c) any transfer of property pursuant to the Plan will not be subject to any document, recording tax, stamp tax, or similar tax, mortgage tax, real estate transfer tax, or other governmental assessment in the United States, and the Confirmation Order will direct the appropriate state or local governmental officials and/or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  The Bankruptcy Code Section 1146 exemption applies, to properties transferred within 5 years of the Effective Date.

**15.5      Headings**

The headings of the Sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

**15.6      Notices**

All notices or requests to the Reorganized Debtor in connection with this Plan shall be in writing and served either by (i) United States mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed given when received by the following parties:

If to the Debtor or Reorganized Debtor:

> Roman Catholic Bishop of Great Falls, Montana
> Attn:  Bishop Warfel
> P.O. Box 1399
> Great Falls, MT  59403-1399

With a copy to:

> ELSAESSER ANDERSON, CHTD
> Attn:  Ford Elsaesser, Esq.
> Attn:  Bruce A. Anderson, Esq.
> 320 East Neider Avenue, Suite 102
> Coeur d'Alene, ID  83815

If to the Trustee:

> Omni Management Group, LLC
> Attn:  Eric Schwarz
> 5955 DeSoto Avenue, Suite 100
> Woodland Hills, CA 91367

With a copy to:

James I. Stang, Esq.
Ilan D. Scharf, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067

### 15.7 Notices to Claimants

All notices and requests to an Entity holding any Claim will be sent to them at the last known address listed for such Entity with the Bankruptcy Court or to the last known address of their attorney of record. The Claimant may designate in writing any other address, which designation will be effective upon actual receipt by the Reorganized Debtor and the Trustee. Any Entity entitled to receive notice under this Plan will have the obligation to provide the Reorganized Debtor and the Trustee with such Entity's current address for notice purposes. The Reorganized Debtor and Trustee will have no obligation to attempt to locate a more current address in the event any notice proves to be undeliverable to the most recent address which has been provided to the Reorganized Debtor and the Trustee.

### 15.8 Post-Confirmation Court Approval

Any action requiring Bankruptcy Court, U.S. District Court or state court approval after the Effective Date will require the Entity seeking such approval to file an application, motion, or other request with the Bankruptcy Court, U.S. District Court, or state court, as applicable, and obtain a Final Order approving such action before the requested action may be taken. The Entity filing such application, motion, or other request shall serve such application, motion, or other request, together with a notice setting forth the time in which objections must be filed with the court, on the Reorganized Debtor, the Committee, and the Trustee by first-class mail, electronic mail, ECF, overnight courier, facsimile, or hand delivery.  Unless the court orders otherwise, all notices shall provide the recipients at least 21 days in which to file an objection to the application, motion, or other request.  If no objection is timely filed, the court may authorize the proposed action without further notice or a hearing.  If an objection is timely filed, the court will determine whether to conduct a hearing, or to require the submission of further documentation, prior to ruling on the application, motion, or other request.

### 15.9 Election Pursuant to Section 1129(b) of the Bankruptcy Code

If necessary, the Debtor hereby requests confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except Section (a) (8) thereof, are met with regard to the Plan.  In determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code have been met, any Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class.

Modified First Amended Plan of Reorganization  -50

### 15.10   Consummation of the Plan

The Debtor reserves the right to request that the Confirmation Order include a finding by the Bankruptcy Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order.

### 15.11   No Admission

Nothing contained in this Plan constitutes an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

### 15.12   Current Insurance Coverage

Except as set forth in the Catholic Mutual Settlement, the Plan and Confirmation Order have no effect on the coverage of a Diocese Party that is a Covered Entity under any claims-made Certificates issued by Catholic Mutual to such Diocese Parties for: (a) Claims that may occur after the Effective Date; and (b) Covered Non-Tort Claims.

### 15.13   Waivers

Except as otherwise provided in the Plan or in the Confirmation Order, any term of the Plan may be waived by the party benefited by the term to be waived.

### 15.14   Setoffs, Recoupments, and Defenses

Except with respect to Class 3 and Class 4 Claims, and except as otherwise provided in Section 10.5 of the Plan or the Confirmation Order, all Claims and defenses of any nature of the Debtor, Reorganized Debtor, and Trustee are explicitly reserved and protected.  The failure of any of the Debtor, Reorganized Debtor, or the Trustee to assert any such Claim or defense at any time shall not constitute the waiver, abandonment or other relinquishment of such Claim or defense.  Notwithstanding the foregoing, nothing in this Section 15.14 shall authorize or preserve any Claim, setoff, right of recoupment, or defense by any Entity against Catholic Mutual or in any way operate to impair or diminish, or have the effect of impairing or diminishing, Catholic Mutual's legal, equitable or contractual rights, if any, in any respect.

### 15.15   Withdrawal or Revocation of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such event nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Entity, or to prejudice in any other manner the rights of the Debtor, whether one or more, or any other Entity in further proceedings involving the Debtor and specifically shall not modify or affect the rights of the Debtor or any party under any prior orders of the Bankruptcy Court.

### 15.16    Default

Except as otherwise provided in the Plan or in the Confirmation Order, in the event the Reorganized Debtor, Catholic Mutual, or the Trustee shall default in the performance of any of their respective obligations under the Plan or under any of the Plan Documents and shall not have cured such a default within any applicable cure period (or, if no cure period is specified in the Plan or Plan Documents or in any instrument issued to or retained by a Claimant under the Plan, then within 30 days after receipt of written notice of default), then the Entity to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim.

### 15.17    Governing Law

Subject to the Catholic Mutual Settlement of this Plan, except to the extent that federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan or under the Plan Documents shall be governed by and construed and enforced in accordance with the laws of the State of Montana without giving effect to the principles of conflicts of laws thereof.

### 15.18    Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and the Effective Date does not occur, the rights of all parties in interest in the Case are and will be reserved in full.  Any concessions or settlement reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by any such concession or settlement.

### 15.19    Controlling Documents

Nothing in this Plan shall diminish the rights, or increase the obligations or burdens of Catholic Mutual under the Catholic Mutual Settlement.  To the extent this Plan affords less protection or benefits, or imposes different or greater obligations upon Catholic Mutual than the Catholic Mutual Settlement, the Catholic Mutual Settlement shall control.

### 15.20    Successors and Assigns

The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, Protected Parties, all Claimants, Catholic Mutual, and all other parties in interest affected thereby and their respective successors, heirs, Representatives and assigns.

### 15.21    Direction to a Party

On and after the Effective Date, the Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Entity to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform

any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### 15.22    Certain Actions

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtor or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtor.

### 15.23    Rounding of Fractional Numbers

All fractional numbers, including payments or Distributions under the Plan, Plan Documents, Confirmation Order and Trust Documents shall be rounded (up or down) to the nearest whole number.

### 15.24    Dissolution of the Committee

On the Effective Date, the Committee shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except that such Entities shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during the Case, which shall remain in full force and effect according to their terms, provided that such Entities shall continue to have a right to be heard with respect to any and all (i) applications for Professional Claims and (ii) requests for compensation and reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code for making a substantial contribution in the Case.

### 15.25    Saturday, Sunday or Legal Holiday

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### 15.26  Exhibits

All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.  The Exhibits are as follows:

Exhibit A – Allocation Protocol
Exhibit B – Pro-Forma Financial Statements
Exhibit C – Trust Agreement
Exhibit D – Pro Forma Unknown Tort Claim Proof of Claim Form
Exhibit E – Class 2 and Class 5 Claims
Exhibit F – Non-Monetary Commitments
Schedule 2.22 – Insurance Certificates
Schedule 2.44 – Diocese Parties

--Rest of Page Intentionally Left Blank--

## SECTION XVI
## RECOMMENDATIONS AND CONCLUSION

The Debtor strongly believes that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Claimants holding Claims with significantly greater recoveries than any available alternatives.

Dated: August _15_, 2018

**ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA, a Montana Religious Corporation Sole,**

**ELSAESSER ANDERSON, CHTD.**

*Debtor and Debtor-in-Possession*

Attorneys for Debtor and Debtor-in-Possession

By: Michael W Warfel

Most Reverend Bishop
Michael W. Warfel

Ford Elsaesser, Esq.
Bruce A. Anderson, Esq.
320 East Neider Avenue
Suite 102
Coeur d'Alene, ID 83815
(208) 667-2900